**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
 --------------------------------------------------------------------X
AITABDELLAH SALEM

                **Plaintiff,**                          **COMPLAINT**

                                                    **JURY TRIAL DEMANDED**.

       -    against –                              Case No.

CITY OF NEW YORK, NEW YORK CITY DEPARTMENT
OF CORRECTION, (The Department or "DOC"), JOSEPH PONTE,
COMMISSIONER OF THE NEW YORK CITY DEPARTMENT
OF CORRECTION, JOHN DOE NO.1, WARDEN, NEW YORK CITY
DEPARTMENT OF CORRECTION, JOHN DOE NO. 2, ASSISTANT WARDEN,
NEW YORK CITY DEPARTMENT OF CORRECTION,
JOHN DOE NO.3, TOUR COMMANDER NEW YORK CITY
DEPARTMENT OF CORRECTION, AMKC, RIKERS ISLAND,
JOHN DOE NO. 4, CAPTAIN, NEW YORK CITY DEPARTMENT
OF CORRECTION, AMKC, RIKERS ISLAND, LEGAL AID SOCIETYOF CITY OF NEW
YORK,STEPHEN POKART, ATTORNEY FOR THE LEGAL AID SOCIETY
IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, JEROME GRECO,
ATTORNEYLEGAL AID SOCIETY, IN HIS INDIVIDUAL AND
OFFICIAL CAPACITY, ERIC WILLIAMS, ATTORNEY
LEGAL AID SOCIETY, IN HIS INDIVIDUAL AND
OFFICIAL  CAPACITY.

                        Defendants,
_____X

        Plaintiff by his attorney, Welton K. Wisham, of The Law office of Welton K.

Wisham, alleges upon information and belief, as follows as his Complaint:

**PRELIMINARY STATEMENT**

    1.  This is a civil rights action in which Plaintiff Aitabdellah Salem seeks relief for

Defendants' violation of his rights secured by the Civil Rights Act of 1871, 42. U. S. C. Section

1983, and rights arising under the Fourth, Fourteenth, and Eight Amendment to the Constitution

of the United States.  Plaintiff also brings this action against the Legal Aid Society and it

employees arising under New York  State Common  Law grounded under Respondeat Superior

for the negligent acts of Defendant Legal Aid Society and its employees, Stephen Pokart, Jerome Greco, and Eric Williams, for their failure to inform Mr. Salem that his bail of $50,000.00  had been reduced to $ 1.00 and that the Court had ordered his release on November 28th, 2014, yet Plaintiff remained incarcerated at Rikers Island until April 15th, 2015, some one hundred and thirty eight (138) days after his mandatory release date.

Mr. Salem seeks compensatory and punitive damages, and an award of costs, and attorney fees and such other and further relief as this Court deems equitable and just.

## JURISDICTIONAL STATEMENTS

2.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331, 1343, and 28 U.S.C. Section 1367, and under 42 U.S.C Section 1983, and 28 U.S.C. Section 1988.

3.  This action arises under the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States.  This action is also grounded under the Constitution of the State of New York and under the common law of the State of New York.

4.  Plaintiff requests that this Court exercise Pendent jurisdiction over those State law claims arising out of the same common nucleus of operative facts as do plaintiffs' federal claims.

## VENUE

5.  Under 28 U.S.C. Sec. 1391(b), venue is proper in the Southern District of New York because the Defendants are located in this District.

6. Venue is proper in the Southern District of New York because the Defendants are all residents of the State of New York.

## PARTIES

    7.  Plaintiff Aitabdellah Salem is a resident of the United States and at all times relevant herein was a resident of the State of New York, County of Kings. Plaintiff Salem resided at Rikers Island at the time these events occurred. Mr. Salem suffers from diagnosed schizophrenia, which was known by the Defendants

    8.  The City of New York is at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.

    9.  The City of New York is authorized by law to maintain a Department of Correction, the employees of which act as its agents, and for which it is ultimately responsible.

    10.  The City of New York assumes the risks incidental to the maintenance of a Department of Correction and the employment of correction officers and other Department of Correction employees.

    11.  Defendant, New York City Department of Correction manages and operates the jails including the Anna M. Kross Center ("AMKC") where the Plaintiff, Aitabdellah Salem was unlawfully incarcerated from November 28th, 2014, through April 15th, 2015.

    12.  The New York City Department of Correction oversees one of the largest municipal jail complexes in the county.

    13.  Upon information and belief, The Department of Correction handles over 100,000 admissions per year, and manages an average daily population of approximately 14,000 inmates – the vast majority of whom are held in ten facilities located on over 400 acres on Rikers Island in the East River between Bronx and Queens, New York .

14.   The New York City Department of Corrections jails are overseen by nineteen (19) wardens, forty one (41) deputy wardens, over 100 assistant deputy wardens, and some seven hundred ninety (790) captains.

15.   The vast majority of the population on Rikers Island consists mainly of pre- trial detainees, most of whom, like the Plaintiff, are indigent and cannot afford to pay for legal representation.

16.   The New York City Department of Correction is also responsible for operating sixteen Court facilities.  The Court "pens" are located in the Criminal, Supreme and Family Court buildings in each borough.

17.   The Courthouse facilities hold inmates scheduled for the day's judicial proceedings.

18.   The Department of Correction, through its senior officials at the central office, in each facility, and in its specialized units, promulgates and implements policies, including those with respect to complying with Court orders to produce inmates in Court and Court orders to release pretrial detainees.

19.   Senior officials such as the municipal Defendants within the New York City Department of Correction are aware of, and tolerate, certain practices by subordinate employees in the jails, including those that are inconsistent with formal policy.

20.   These practices, because they are widespread, long-standing, and deeply embedded in the culture of the Department of Correction, constitute unwritten DOC policies or customs.

21.   The DOC is also responsible for the appointment, training, supervision, retention, discipline, and conduct of all Department of Correction personnel, including the municipal Defendants referenced herein.

22.   The City of New York and the New York City Department of Corrections are jointly responsible for the safety, care, custody, and control of the inmates and others incarcerated on Rikers Island.

23.   At all times relevant hereto, Defendant Joseph Ponte was the Commissioner of the New York City Department of Correction acting in the capacity of agent, servant, and employee of Defendant City of New York, within the scope of his employment as such, and acting under color of state law.

24.   Upon information and belief, Commissioner Ponte, as Commissioner of the Department of Correction was responsible for the policies, practices, supervision, implementation, and conduct of all DOC matters, and was responsible for the training, supervision, retention, discipline and conduct of all DOC personnel, including the municipal Defendants referenced herein.

25.   As Commissioner, Ponte was also responsible for the care, custody, and control of Plaintiff Salem housed in the AMKC jail at Rikers Island from November 28th, 2014, through April 15th, 2015.

26.   In addition, at all relevant times, Ponte was responsible for enforcing the rules of the New York City Department of Correction and for ensuring that Department's personnel obeyed the laws of the United States and of the State of New York.

27.   At all times relevant hereto, Defendant John Doe No.1, upon information and belief, was the Warden at the New York City Department of Correction responsible for the oversight of the Anna M. Kross Center ("AMKC") at Rikers Island from November 22nd, 2014, through April 15th, 2015.

28.  At all times relevant hereto John Doe No. 1 acting as Warden of the AMKC, whose name by which Plaintiff has currently been unable to ascertain notwithstanding reasonable efforts to do so by way of a Freedom of Information request (FOIL), but who is sued herein by the fictitious designation "John Doe No. 1, was a Warden acting in the capacity of agent, servant, and employee of the Defendant City of New York and the New York City Department of Correction within the scope of his employment, as such and acting under color of state law.

29.  Upon information and belief, the Warden at the Anna M. Kross Center jail in Rikers Island, is ultimately responsible for the proper administration of the Anna M. Kross Center where Plaintiff Salem was housed from November 22nd, 2014 through April 15th, 2015.

30.  Upon information and belief, the Warden is responsible for the policies and practices instituted by the New York City Department of Correction in 1) producing inmates to their Court ordered appearances and 2) ensuring compliance with Court Orders directing the release of inmates from incarceration.

31.  At all times relevant hereto, Defendant John Doe No.2, upon information and belief, was the Assistant Warden at the New York City Department of Correction who was also responsible for the oversight of the Anna M. Kross Center ("AMKC") at Rikers Island from November 22nd, 2014, through April 15th, 2015.

32.  At all-times relevant hereto, John Doe No. 2, acting as the Assistant Warden of the AMKC whose name by which Plaintiff is currently been unable to ascertain, notwithstanding reasonable efforts to do so by way of a Freedom of Information request (FOIL), but who is sued herein by the fictitious designation "John Doe No. 2, was an Assistant Warden acting in the capacity of agent, servant, and employee of the Defendant City of New York and the New York

City Department of Correction within the scope of his employment as such and acting under color of state law.

33.    Upon information and belief, the assistant Warden has the responsibility for ensuring that the directives initiated by the New York City Department of Correction are complied with regarding:  1) Producing inmates to their Court ordered appearances and, 2) Complying with Court Orders releasing inmates from incarceration.

34.    At all-times relevant hereto, Defendant John Doe No. 3, upon information and belief, was the Tour Commander at the New York City Department of Correction responsible for the oversight of the Anna M. Kross Center ("AMKC") at Rikers Island from November 22nd, 2014, through April 15th, 2015.

35.    At all-times relevant hereto, John Doe No. 3 acting as the Tour Commander of the AMKC, whose name by which Plaintiff is currently been unable to ascertain notwithstanding reasonable efforts to do so by way of a Freedom of Information request (FOIL), but who is sued herein by the fictitious designation "John Doe No. 3, was the Tour Commander at the Anna M. Kross Center at Rikers Island acting in the capacity of agent, servant, and employee of the Defendant City of New York and the New York City Department of Correction within the scope of his employment, as such and acting under color of state law.

36.   Upon information and belief, it is the Tour Commander who is responsible for the supervision of the Captains working in the AMKC and are responsible for ensuring that the policies and practices relating to the processing of inmates for discharge, and the processing of Court Orders releasing inmates from incarceration and the Production of Inmates to their Court ordered appearances, are fully in compliance with the directives set forth by the City of New York Department of Correction.

37.    At all-times relevant hereto, Defendant John Doe No. 4, upon information and belief was  Captain at the New York City Department of Correction responsible for the oversight of the Anna M. Kross Center ("AMKC") at Rikers Island from November 22nd, 2014, through April 15th, 2015.

38.    At all-time relevant hereto John Doe No. 4, acting as the Captain of the AMKC whose name by which Plaintiff is currently unable to ascertain, notwithstanding reasonable efforts to do so by way of a Freedom of Information request (FOIL), but who is sued herein by the fictitious designation "John Doe No. 4, was a supervising officer at the Anna M. Kross Center at Rikers Island acting in the capacity of agent, servant, and employee of the Defendant City of New York and the New York City Department of Correction within the scope of his employment, as such and acting under color of state law.

39.    Upon information and belief, Defendant John Doe No. 4, Captain, was employed by the New York City Department of Correction at the Anna M. Kross Center at Rikers Island jail from November 22nd, 2014, through April 15th, 2015.

40.    Upon information and belief, the Captain was ultimately responsible for verifying Mr. Salem's Court ordered discharged on November 28th, 2014, and verifying that the Court had reduced Mr. Salem's bail from $25,000.00 to $1.00 on November 26th, 2014.

41.    Upon information and belief John Doe No. 4, as Captain of the Anna M. Kross Center was aware, or should have been aware of the facts set forth herein, that the Court had reduced Mr. Salem's bail to $1.00 on November 26th, 2014, and that the Court ordered Mr. Salem released from incarceration on November 28th, 2014.

42.    That Defendant John Doe No. 4, as Captain of the Anna M. Kross Center during Plaintiff's incarnation November 22nd, 2014, through April 15th, 2015, was  deliberately

indifferent to Plaintiff's Constitutional rights under the Constitution of the United States forbidding unlawful incarceration.

43.     At all-time relevant hereto, Defendant Legal Aid Society of the City of New York, is a domestic not-for-profit domestic organization providing legal services to indigent individuals throughout the State of New York with an office located at 199 Waters Street, New York, New York 10038.

44.     The Legal Aid Society serves as the primary provider of indigent legal defense services in New York City.  It is estimated that the Legal Aid Society handles approximately 230,000 criminal defense cases each year providing approximately sixty percent of all legal representation in criminal cases to poor defendants, such as the Plaintiff, each year.

45.     Upon information and belief, Legal Aid Lawyers are personally responsible for handling approximately eighty five to one hundred twenty criminal defense cases per lawyer.

46.     According to a March 27th, 2015, report prepared by the Council of The City of New York, The Legal Aid Society received approximately $90,000,000.00 from the City of New York during fiscal year 2015, for legal services provided for representing indigent criminal defendants.

47.     The legal aid society hired Defendant Stephen Pokart, Jerome Greco, and Eric Williams, as criminal defense attorneys, all of whom appeared on behalf on Mr. Salem.

48.     Defendants Pokart, Greco, and Williams, are being sued in their individual and official capacity as employees of the Legal Aid Society.

## STATEMENT OF FACTS

49.   Plaintiff was arrested on November 21st, 2014, for stealing a coat from Zara clothing store located on 101 5th Avenue, New York, New York.

50.   Mr. Salem was arraigned on November 22nd, 2014, where he was charged with Assault in the Second Degree per Penal Law Section 120.05(3), and Petit Larceny, per Penal Law Section 155.25.

51.   Plaintiff was transferred to and held as a pretrial detainee at the Anna M. Kross Center ("AMKC") at Rikers Island on November 22nd, 2014.

52.   On November 22nd, 2014, Mr. Salem was arraigned in the Criminal Court City of New York, by the Honorable Neill Ross, Acting Supreme Court Justice on the charges stemming from his November 21st, 2014, arrest. The docket number assigned to that case was Docket No. 2014NY088542.  Mr. Salem was represented by Stephen Pokart of The Legal Aid Society. **Exhibit "A"**".   (Stephen Pokart's Criminal Court Notice of Appearance: November 22nd, 2014.)

53.   Mr. Salem also had two other companion cases which were called before the Court on November 22nd, 2014.  The docket numbers pertaining to those cases were; docket numbers 2014NY088543, and 2014NY017648.   See **Exhibit "B"** (Transcript of Criminal Court proceeding November 22nd, 2014.)

54.   Judge Ross set bail of $25,000.00, on docket number 2014NY088542, and $25,000.00 on docket number 2014NY088543 during the course of Plaintiff's arraignment on November 22nd, 2014.  See **Exhibit "B".**  Mr. Salem was sentenced to time served under docket number 2014NY017648. **Exhibit "B".**

55.   Judge Ross adjourned both cases under docket numbers 2014NY088542, and 2014 NY088543, to November 26th, 2014, in Part F of the Criminal Court.  **Exhibit "B"**

56.   On November 26th, 2014, the Honorable Gilbert Hong presided over docket numbers 2014NY088542, and 2014NY088543.   See **Exhibit "C"**. (Criminal transcript of Court proceedings, November 26, 2014.)   Mr. Salem was not produced in court.

57.   Mr. Eric Williams of the Legal Aid Society appeared for Stephen Pokart on behalf of Aitabdellah Salem. **Exhibit "C".**

58.   Judge Hong reduced Salem's $25,000.00 bail under this docket number to $1.00. **Exhibit "C".**   Salem's case under docket number 2014NY088542 was adjourned to February 11th, 2015, in Part F.   The charges assigned under docket number **2014NY088543** were adjourned to **Part F, November 28th, 2014,** for grand jury action in accordance with New York Criminal Procedure Law Section 180.80. The same bail condition in the amount of $25,000.00 was ordered by Judge Hong.  See **Exhibit "C".**

59.   Plaintiff was not produced in Court on November 26th, 2014, and was not aware that Judge Hong had reduced his bail from $25,000.00 to $ 1.00 under docket number **2014NY088542.**   None of the Defendants informed Mr. Salem of the results of the criminal Court proceedings held on November 26th, 2014.

60.   On November 28th, 2014, the Honorable Justice Melissa Crane presided over the proceeding under docket number **2014NY088543**.   Again, **Mr. Salem was not produced in Court** – his appearance was waived. See **Exhibit "D"**, (Transcript taken by Denise Johnson, Official Court Reporter November 28th, 2014.)

61.   Judge Crane ordered the immediate release of Mr. Salem in accordance with Criminal Procedure Law Section 180.80 which requires the Defendant's release from incarceration in the event the grand jury has not convened within one hundred forty four hours.

62.    New York Consolidated Laws, Criminal Procedure Law - CPL § 180.80 Proceedings upon felony complaint; Release of defendant from custody upon failure of timely disposition, states in relevant part that :

"Upon application of a defendant against whom a felony complaint has been filed with a local criminal court, and who, since the time of his arrest or subsequent thereto, has been held in custody pending disposition of such felony complaint, and who has been confined in such custody for a period of more than one hundred twenty hours or, in the event that a Saturday, Sunday or legal holiday occurs during such custody, one hundred forty-four hours, without either a disposition of the felony complaint or commencement of a hearing thereon, the local criminal court must release him on his own recognizance…"

63.    The District Attorney's office failed to convene the grand jury within the prescribed time and thus, Mr. Salem was ordered released on his own recognizance by Judge Crane on November 28th, 2014.  **Exhibit" D".**

64.    Stephen Pokart failed to appear in Court on November 28th, 2014. Mr. Salem was represented by the Legal Aid Society by Mr. Jerome Greco. Again, Mr. Salem's appearance was waived without knowledge or consent of Mr. Salem. See **Exhibit "D".**

65.    Michael Frantel, Assistant District Attorney for the Office of the District Attorney, New York County, conceded the procedures set forth under Section 180.80 of the Criminal Procedure Law and consented to release Mr. Salem from custody. See **Exhibit "D".   None of the Defendants informed Mr. Salem of his right to be released from incarceration.**

66.    Docket number 2014NY088543 was adjourned to February 11th, 2015, in Criminal Court Part F.

67.     The attorneys from the Legal Aid Society, Stephen Pokart, Eric Williams, and Jerome Greco all failed to inform  Mr. Salem that Mr. Salem's case under docket number 2014NY088542 which bail was originally set the amount of $25,000.00, had  been reduced to $1.00 and that Salem was ordered released from Rikers Island on November 28th, 2014.

68.    The Defendant attorneys failed to inform Mr. Salem who was not present in Court, that his bail of $ 25,000 under docket number **2014NY088543**, had been reduce to zero dollars and that the Court Ordered his immediate released from custody on November 28th, 2014.

69.    Mr. Salem remained in the custody of the New York City Department of Correction in Rikers Island unaware that bail in the amount of $ 1.00 would free him from custody.

70.    The Defendants City of New York and the New York City Department of Correction and Commissioner Ponte were all aware of the Court Order to Release Mr. Salem.

71.    Judge Crane's Order to Release Mr. Salem from custody was sent to the Commissioner of Corrections of the City of New York on November 28, 2014. See **Exhibit "E".** The order contained the following language: "To the Commissioner of Correction of the City of New York, Judge M. Crane of the Criminal Court of the City of New York has **ORDERED** that the Defendant Salem, Aitabdellah, NYSID No. 08386091H be **RELEASED FROM CUSTODY** in connection with Docket No. **201NY088543**. You are commanded to perform all required procedures to affect the defendant's **IMMEDIATE RELEASE** in connection with this matter. You are further directed to advise the defendant that he/she must appear in Part F of the Criminal Court, County of NY on 2/11/15 to answer the charges contained in the above mentioned Docket". Dated: 11-28-14."

72.    The Court's Order to release Mr. Salem was received and acknowledged by the Department of Correction on November 28th, 2014. See **Exhibit "E"**. However, Mr. Salem was not released and remained incarcerated without knowledge of the status of his criminal case.

73.    On February 11th, 2015, the Honorable Lisa Sokoloff, Judge of the Criminal Court of the City of New York, presided over calendar no. 21 and 22, Mr. Salem's cases under Docket No. 2014NY088542 in Part F of the Criminal Court.    Stephen Pokart appeared on behalf of

Aitabdellah Salem.   See **Exhibit "F"**. (Transcript Dianne Cooke, Official Court Reporter February 11, 2015)

74.   Mr. Salem, however, was not produced in front of Judge Sokoloff. See **Exhibit "F".**

75.   Salem was brought from Rikers Island and kept in the Court's holding pen and was not produced inside the courtroom.

76.   Mr. Pokart waived Mr. Salem's appearance allowing the proceeding to continue without Mr. Salem's presence and without knowledge or consent of Plaintiff Salem.

77.   Mr. Salem was present inside the Court's pen or holding area, however, he was not presented in front of Court.

78.   Defendant Pokart acknowledged during the February 11th, 2015, that Mr. Salem had $ 1.00 bail set on both cases pending.  Judge Sokoloff adjourned Mr. Salem's case to May 28th, 2015, continuing the same bail conditions. See **Exhibit "F".**

79.   Neither Mr. Pokart, Mr. Greco, nor Mr. Williams, attorneys for the Legal Aid Society, informed Mr. Salem of the fact that his bail had been reduced to $ 1.00 allowing Salem to be free from the wretched conditions known to exist throughout Rikers Island Correctional Facility, also commonly known as one of the most notorious prison complexes in the United States.

80.   Mr. Salem implored corrections officers within the AMKC jail to tell him what happened on his respective Court dates:   November 26th, 2014, November 28th, 2014, and February 11th, 2015.  None of the corrections officers told him that he was ordered to be free on November 28th, 2014, because his bail had been reduced from $50,000.00 to $1.00. In fact, they all ignored his unrelenting pleas for information regarding his freedom.

81.    Mr. Salem repeatedly attempted to call Stephen Pokart to ascertain the status of his case.  Mr. Pokart ignored Plaintiff's pleas by refusing to return Salem's numerous phone calls.

82.    The Defendants, attorneys Pokart, Greco, and Williams, made no attempt to visit Mr. Salem at the Rikers Island jail, nor did any one of the attorneys who appeared on behalf of Mr. Salem attempt to call him or visit him via video conference to inform him of the Court order for his release and the reduction of bail from $50,000.00 to just $1.00.

83.    The Defendants City of New York, and the New York City Department of Corrections, The Legal Aid Society, Stephen Pokart, Jerome Greco and Eric Williams, all failed to inform Aitabdellah Salem that his freedom from custody and the horrid conditions found throughout Rikers Island, had been granted by the Honorable Justice Melissa Crane on November 28th, 2014.

84.    On April 15th, 2015, one hundred thirty eight days after Mr. Salem mandatory release date, bail in the amount of $ 1.00 was paid by a Rev. Cato, Chaplin at the Anna K, Kross Center on Rikers Island.  See **Exhibit "G"**. (bail receipt for $1.00)

85.    Plaintiff was told by a female Department of Correction officer or Captain, whose name is believed to be a St. Floeur, badge No. 106, to say "that if anyone ever asks you, say that a reverend paid your $ 2.00 bail."

86.    Plaintiff has never heard of nor has he ever met Rev. Cato.

87.    Mr. Salem was informed on April 15th, 2015, that his next court appearance date was **May 28, 2015**, Criminal Court City of New York in Part F. **See Exhibit "G".**

88.    Mr. Salem appeared in Court on May 28th, 2015, however his case was not on the Court's calendar.

89.    Mr. Salem saw Mr. Stephen Pokart in Court the day of May 28th, 2015, and repeatedly asked him what was happening with his case.  Mr. Pokart, according to Mr. Salem, stated that he "didn't know".

90.    That unbeknownst to Mr. Salem, the Court changed the date Plaintiff was to appear from May 28th, 2015, to May 13th, 2015.

91.    The Court had mailed a notice to Mr. Salem at an address where Mr. Salem no longer resided.  The mail to Mr. Salem came back to the Court as undeliverable.

92.    The Court did however, mailed notice to the Legal Aid Society that the Court had changed Mr. Salem's appearance from May 28th, 2015, to May 13th, 2015.

93.    The Court also notified the Legal Aid Society that the May 28th, 2015 date was changed to May 13th, 2015, via a drop box labeled "Legal Aid:, which was placed inside the Court.

94.    Mr. Salem while out on $1.00 bail, was arrested on July 27th, 2015, and charged with bail jumping for failing to appear in Court on May 13th, 2015.  He was wholly unaware that the May 28th, 2015 date had been changed to May 13th, 2015. His bail in the amount of $ 1.00 was revoked causing the Court to reset bail at an amount for which Mr. Salem could not post – believed to be $25,000.00.

95.    Mr. Pokart was made aware that Mr. Salem had been indicted by the grand jury and that the May 28th, 2015 date was changed to May 13th, 2015, which required his client Mr. Aitabdellah Salem to appear.  Again Mr. Pokart failed to reach out to contact Plaintiff Salem or Mr. Salem's family.

96.    On May 26th, 2016, Mr. Salem was acquitted of the bail jumping charge filed against him.

## FIRST CLAIM FOR RELIEF

**FOR MUNICIPAL LIABILITY AGAINST DEFENDANTS CITY OF NEW YORK, AND THE NEW YORK CITY DEPARTMENT OF CORRECTION, JOSPEH PONTE, JOHN DOE NO.1, JOHN DOE NO. 2,  JOHN DOE NO. 3, AND JOHN DOE NO. 4, FOR THE DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSITUTION AND UNDER 42 U.S.C. SECTION 1983**

97.    That the plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs Numbered"1 through "96" with the same force and effect as though more fully set forth at length herein.

98.    That the acts, omissions, and practices alleged in paragraph 1-96, constitute a pattern or practice of conduct that violates the rights privileges and immunities of the Plaintiff which are secured or protected by the Constitution of the United States.

99.    Defendants are, have been, or should have been aware of the deficiencies alleged throughout paragraphs 1- 98, and that the New York City Department of Correction's failure to produce Plaintiff in Court, and the failure to release Plaintiff upon Court order on November 28th, 2014, in addition to the Department of Corrections and it officers failure to communicate to Plaintiff when he was not present in Court that his bail had been reduced to $ 1.00, amounts to deliberate indifference to the Plaintiff's Constitutional rights protected under the Fourth, Eighth and Fourteenth Amendments.

100.    The Defendants had a duty to review Plaintiff's status during the period of his incarceration and the authority to release him. The Defendants' deliberate indifference caused the violations of the Constitutional rights alleged herein.

101.    Defendants' practice of failing to produce pretrial detainees to Court is a practice that, upon information and belief, is widespread and results in the inmates inability to be

informed of decisions rendered by the Court that violated fundamental principles of fairness that incarcerated inmates be present to participate in their own defense.

103.   That upon information and belief, the Department of Correction, and the City of New York, had prior notice of the failures by the Department of Corrections to produce pretrial detainees in Court, including Aitabdellah Salem. The custom and practice was so widespread that the New York City Council introduced legislation to address this problem.

104.   The New York City Council proposed Legislation No. 1260, which amends the Administrative Code of the City of New York in relation to Transporting Inmates in Custody of the department of correction to all criminal court appearances.

105.   The acts and omissions set forth herein were carried out by the aforementioned individual Defendants, and subordinates in their official capacity as officials of the New York City Department of Correction pursuant to the customs, policies and practices, within the New York City Department of Correction at the Rikers Island jail facility, under the supervision of Commissioner Joseph Ponte.

106.   The foregoing customs, polices and practices were the moving force behind the constitutional violations suffered by Plaintiff Salem.

107.   As a direct and proximate result of the foregoing practices and customs, Plaintiff was held in custody one hundred thirty eight days beyond his mandatory release date of November 28th, 2014, without legal justification.

108.   The Defendants knew or should have known that Mr. Salem was entitled to his freedom on November 28th, 2014, after the Criminal Court ordered Plaintiff's release.

109.   That the Municipal Defendants knew or should have known that Plaintiff bail was reduced from $50,000.00 to $1.00.

18

110.   That the New York City Department of Corrections policy and practice, or the lack thereof, of failing to inform pretrial detainees of Court decisions rendered in the absence of defendants, authorizing the detainees release from incarceration, and change of bail status from the failure by the Department of Correction to produce inmate to their Court ordered appearances, was the moving force behind the constitutional violation set forth herein.

111.   As consequence thereof, Plaintiff has been greatly injured.

### SECOND CLAIM FOR RELIEF

**ON BEHALF OF THE PLAINTIFF FOR NEGLIGENCE AGAINST
THE CITY OF NEW YORK UNDER 42 U.S.C. SECTION 1983, DUE TO
DEFENDANTS' FAILURE TO SUPERVISE, TRAIN, OR DISCIPLINE
THE DEPARTMENT OF CORRECTION EMPLOYEES.**

112   That the plaintiffs repeats, reiterates and realleges each and every allegation contained in Paragraphs Numbered"1 through 111", with the same force and effect as though more fully set forth at length herein.

113.   That at all times herein mentioned the Defendant Department of Correction employees involved in the incident complained of herein, were negligently hired, trained, supervised, disciplined and retained by the defendant, City of New York.

114.   That the acts complained of herein resulted from the Defendants City of New York, and the New York City Department of Correction, through their agents, servants and employees, breaching its duty to properly assign, train, supervise, discipline and retained its employees within the Department of Correction.

115.   That the City of New York failed to train, supervise, or discipline the municipal Defendants named herein who unlawfully held, and detained Plaintiff Salem one hundred eight days beyond his court ordered release date, without probable cause or legal justification.

116.    This action is brought pursuant to 42 U.S.C.A. Section 1983.

117.   That the defendant City of New York's failure to properly assign, train, supervise or discipline its Department of Correction employees including the named Defendants involved in this incident herein, constitutes acquiescence, and a tolerance of ongoing unconstitutional detentions, and seizures, which allowed the defendants to believe that they could violate plaintiffs' constitutional rights with impunity.

118.   By reason of the foregoing, the individual defendants individually, and through defendant's agents, servants and employees, failed, and refused to use such care in the performance of their duties as a reasonably prudent correction enforcement employees would have used under similar circumstances, thus resulting in significant emotional injuries to the plaintiff including his loss of liberty for one hundred thirty eight days.

119.   As a consequence thereof, the Plaintiff has been severely injured.

120.   That the failure of the Mayor of the City of New York, and the New York City Department of Correction Commissioner Joseph Ponte to adequately train, supervise or discipline or in any other way control the behavior of the municipal defendants identified herein in the exercise of their official functions and their failure to enforce the laws of the State of New York, and the regulations of the City of  New York Department of Correction, is evidence of the reckless lack of cautious disregard for the rights of the plaintiff, Aitabdellah Salem.

121.   That such conduct, or lack thereof exhibited a lack of the degree of due care which a reasonable and prudent individual would have shown in executing the duties of the Mayor and the Commissioner of the New York City Department of Correction.

122.    That the failure of the Mayor of the City of  New York and the Commissioner of the New York City Department of Correction to adequately  train, supervise, discipline or in any other way to control the defendants in the exercise of their official functions, including the

expeditious compliance with Court orders to immediate release pretrial detainees, and to produce such detainees in Court as order by such Court, including and extending to the failure to communicate to such detainees decisions of the Court made in the detainees absence, and their failure to enforce the laws of the State of New York, and the regulations of the City of New York Department of Correction, was the proximate cause of the plaintiff's injuries.

123.     The need for more or better supervision, or training to protect against the constitutional violation was patently obvious.

124.     As consequence thereof, Plaintiff has been greatly injured.

## THIRD CLAIM FOR RELIEF

### ON BEHALF OF THE PLAINTIFF FOR FALSE IMPRISONMENT UNDER 42. U. S. C. SECTION 1983.

125.     That Plaintiff repeats, reiterates, and realleges each and every allegation contained in Paragraphs "1 through "124", with the same force and effect as though more fully set forth at length herein.

126.     Defendants maintain a policy, practice or custom of detaining, holding in custody and imprisoning inmates beyond their court ordered release dates in an unreasonable manner with deliberate indifference to their constitutional rights to be released from incarceration upon Court order.

127.     The aforementioned policy, practice, or custom by the New York City Department of Correction lead by Commissioner Joseph Ponte, who is the person ultimately held responsible for the policies and procedures pertaining to the release of inmates in accordance with Court orders, Production of Detainees to Court, deprived Plaintiff Salem of his liberty without due process of law in violation of Plaintiff's constitutional rights under both the Fourth and Fourteenth  Amendments to the Constitution of the United States.

128.    That the practice of ignoring Court orders to release detainees in a timely manner was the proximate cause of Plaintiff Aitabdellah Salem prolong detention and that such practice or custom was carried out under color law.

129.    The Defendants conduct as alleged herein was intentional, deliberate, willful and conducted with the total disregard for the rights of the Plaintiff Salem.

130.    Upon information and belief, the municipal Defendants had notice of Judge Mellissa Crane's Court Order issued November 28th, 2014, ordering the Commissioner of the Department of Correction to immediately institute procedures to affect Mr. Salem's immediate release. However, the Municipal Defendants ignored the Court order and released Plaintiff Salem on April 15th, 2015, one hundred thirty eight days later upon receipt of $ 1.00 bail.

131.    Despite being put on notice of its unconstitutional policies and practices Defendants Department of Correction continues to adhere to the same unlawful practices.

132.    As a direct and proximate cause of Defendants policies and practice, Plaintiff was caused to have suffered harm and sever emotional stress and loss of liberty.

133.    Plaintiffs' prolonged detention lacked probable cause or any other such legal justification.

134.    Plaintiff did not consent to his unlawful confinement.

135.    That the plaintiff was conscious at all times of his confinement.

136.    As a consequence thereof, Plaintiffs were substantially harmed and injured.

137.    That by reason of the foregoing, the Plaintiff  was  intentionally confined by the defendants, for an extended period of time and held in a jail cell under the custody and control of the City of York, and the New York City Department of Correction, without reasonable, or probable cause, or legal justification.

## FOURTH  CLAIM  FOR RELIEF

**ON BEHALF OF PLAINTIFF AGAINST  THE CITY OF NEW YORK, THE NEW YORK CITY DEPARTMENT OF CORRECTIONS, COMMISSIONER JOSEPH PONTE,  UNDER THE DUE PROCESS CLAUSE OF THE  FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES**

138.   That Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1 through 137", with the same force and effect as though more fully set forth at length here herein.

139.   That the Defendants have employed a gross abuse of power, unfair procedures, and unfair practice of failing to produce pretrial detainees to Court on their Court ordered date of appearances,  and  the  omission  of  such  procedures  to  inform  a  pretrial  detainee  of  judicial decisions  rendered  in  the  absence  of  the  detainee's  presence  in  Court,  constitutes  a  gross violation of plaintiffs' right to be free from the depravation of liberty without due process of law.

140.   As a direct and  proximate result of the  municipal Defendants' conduct in its failure to release Plaintiff Salem on November 28th, 2014, upon Order of the Court, Plaintiff was greatly humiliated, embarrassed, and injured, and has been caused to suffer great pain and suffering and mental anguish.

141.   Plaintiff, as a pretrial detainee, has a Fourteenth Amendment liberty interest and a Due process interest in being released from incarceration on time and upon Court Order.

142.   Excessive confinement of an inmate constitutes cruel and unusual punishment.

143.   The municipal Defendants, Joseph, Ponte, John Doe No. 1, Warden, John Doe No. 2, Assistant Warden, John Doe No. 3, Tour Commander, John Doe No. 4, Captain, all of whom are or were employed at the New York City Department of Correction at Rikers Island Anna M. Kross  Center  between  November  28th,  2014,  and  April  15th,  2015,  were  on  notice  of  their obligation to the Plaintiff to release him in a timely manner.

23

144.   The municipal defendants were aware or should have been aware that their failure to release Plaintiff in a timely manner constituted a violation of Mr. Salem's right to due process as a pretrial detainee.

145.   Upon information and belief, the municipal defendants and other supervisory employees at the Rikers Island facility whose names are presently unknown, were aware that inmates and pretrial detainees have not been released from the Department of Correction in a timely manner.

146.   The excessive detention abuses have been widespread and well known as to constitute a custom and practice.

147.   Despite the known risks that inmates such as the Plaintiff were subject to unlawful prolonged incarceration due to the failures of the Department of Correction to comply with Court orders for the release of inmates, the municipal Defendants were deliberately indifferent to the Plaintiff's constitutional right to be free from unlawful confinement of one hundred thirty eight days beyond his Court ordered release date.

148.   Joseph Ponte, and the other municipal Defendants and agents of the jail not presently known, recklessly and deliberately ignored the Plaintiff's Constitutional rights.

149.   Mr. Salem suffered injury, emotional distress, anxiety and frustration as a result of his excessive and unlawful confinement.

**FIFTH CLAIM FOR RELIEF**

**VIOLATION OF CIVIL RIGHTS UNDER THE EIGHTH AMEMDMENT TO THE UNITED STATES CONSTITUTION FOR CRUEL AND UNSUAL PUNISHMENT**

150.   That Plaintiffs repeats, reiterates and realleges each and every allegation contained in Paragraphs "1 through 149", with the same force and effect as though more fully set forth at length here herein.

151.    As alleged herein and above, Plaintiff has alleged that he was unlawfully detained and incarcerated at the New York City Department of Correction's Anna M. Kross Center at Rikers Island form November 28th, 2014, through April 15th, 2015.

152.    Plaintiff was ordered released from custody of the Department of Correction on November 28th, 2014 by the Honorable Judge Melissa Crane.

153.    That it is undeniable that the Department of Correction received notification of Mr. Salem's immediate release on November 28, 2014, which was ignored by the Commission Ponte and the Defendants Warden, Captain and Tour Commanders and others within the Department of Correction.

154.    Plaintiff was held one hundred thirty eight days beyond his mandatory release date without justification.

155.    The failure by the Department of Correction including the officers presently unknown to inform the Plaintiff of a Court decision reducing his bail from $50,000.00 to $1.00, which would have freed Plaintiff form the horrors indicative of incarceration, and the failure of the Defendants to release Plaintiff upon order by the Court on November 28th, 2014, constitutes cruel and unusual punishment.

## SIXTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS STEPHEN POKART, ERIC WILLIAMS AND JEROME GRECO FOR GROSS NEGLIGENCE IN REPRESENTING PLAINTIFF AITEBDELLAH SALEM

156.    That Plaintiffs repeats, reiterates and realleges each and every allegation contained in Paragraphs "1 through 155", with the same force and effect as though more fully set forth at length here herein.

157.   That the Defendants are believed to be attorneys at law admitted to practice law in the State of New York who are employed with the Legal Aid Society.

158.   That the Defendant attorneys are bound by the New York State Rules of Professional Conduct.

159.   That Stephen Pokart, Jerome Greco and Eric Williams as attorneys for the Legal Aid Society were grossly negligent in their representation of the Plaintiff in that Defendants had a duty of care in their representation of Plaintiff for which each of the Defendant attorneys breached by failing to inform Mr. Salem that his bail of $25,000.00 set on November 22nd, 2014, had been reduced to $1.00 on November 26th, 2014 and that the Criminal Court ordered Mr. Salem released from Rikers Island on November 28th, 2014.

160.   That the Defendant attorneys failed to inform Plaintiff Salem that the Honorable Melissa Crane ordered Mr. Salem released from incarceration on November 28th, 2014, as a result of the District Attorney failing to convene a grand jury within the required time set under C.P.L. Section 180.80.

161.   That the Defendants made no attempt to contact Mr. Salem at the Rikers Island facility to inform him that he was ordered released on November 28th, 2014 and that there were no other holds or warrants preventing his release from incarceration.

162.   That each of the attorneys who appeared on behalf of Mr. Salem during his criminal court proceeding under the docket numbers set forth above, had a duty to communicate material developments in Mr. Salem's criminal proceedings to their client Aitebdellah Salem.

163.   That each of the Defendant attorneys, individually and collectively, breached their duty to keep their client, Aitabdellah Salem reasonably informed about the status of the matters

of his criminal cases for which they appeared as required by the New York Rules of Professional

Conduct.

164.   That the New York Rules of Professional Conduct's Preamble establishes the basis

for the attorney's responsibilities as follows"

"A lawyer, as a member of the legal profession, is a representative of clients and an officer of the legal system with special responsibility for the quality of justice. As a representative of clients, a lawyer assumes many roles, including advisor, advocate, negotiator, and evaluator. As an officer of the legal system, each lawyer has a duty to uphold the legal process; to demonstrate respect for the legal system; to seek improvement of the law; and to promote access to the legal system and the administration of justice. In addition, a lawyer should further the public's understanding of and confidence in the rule of law and the justice system because, in a constitutional democracy, legal institutions depend on popular participation and support to maintain their authority.

[2] The touchstone of the client-lawyer relationship is the lawyer's obligation to assert the client's position under the rules of the adversary system, to maintain the client's confidential information except in limited circumstances, and to act with loyalty during the period of the representation.

[3] A lawyer's responsibilities in fulfilling these many roles and obligations are usually harmonious. In the course of law practice, however, conflicts may arise among the lawyer's responsibilities to clients, to the legal system and to the lawyer's own interests. The Rules of Professional Conduct often prescribe terms for resolving such conflicts. Nevertheless, within the framework of the Rules, many difficult issues of professional discretion can arise. The lawyer must resolve such issues through the exercise of sensitive professional and moral judgment, guided by the basic principles underlying the Rules.

[4] The legal profession is largely self-governing. An independent legal profession is an important force in preserving government under law, because abuse of legal authority is more readily challenged by a profession whose members are not dependent on government for the right to practice law.  To the extent that lawyers meet these professional obligations, the occasion for government regulation is obviated.

[5] The relative autonomy of the legal profession carries with it special responsibilities of self-governance.

Every lawyer is responsible for observance of the Rules of Professional Conduct and also should aid in securing their observance by other lawyers. Neglect of these responsibilities compromises the independence of the profession and the public interest that it serves. Compliance with the Rules depends primarily upon the lawyer's understanding of the Rules and desire to comply with the professional norms they embody for the benefit of clients and the legal system, and, secondarily, upon reinforcement by peer and public opinion. So long as its

practitioners are guided by these principles, the law will continue to be a noble profession."**New York Rules of Professional Conduct "Lawyers Responsibilities, Preamble**

165.   The New York Rules of Professional Conduct states in relevant part:

"A lawyer shall :

(1)  promptly inform the client of:

(iii)  **material developments in the matter including…**

(3)  keep the client reasonably informed about the status of the matter;

(4)  promptly comply with a client's reasonable requests for information:

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." **New York Rules of Professional Conduct Rule 1.4 "COMMUNICATION**. (Emphasis added)

166.   Based on the foregoing, the Defendant attorneys had a duty to communicate material developments in the underlying criminal case for which each lawyer appeared and held responsible therefore was subject to the New York Rules of Professional Conduct.

167.   That the Defendant Attorneys breached their legal duty to Plaintiff Salem.

168.   That by failing to take steps for which an ordinary prudent attorney would have taken to inform Salem that he was ordered released on November 28th, 2014, and that his bail of $50,000.00 had been reduced to $1.00, that such failure resulted in the Plaintiff continued and unlawful incarnation at the Anna M. Kross Center in Rikers Island, was the direct and proximate cause of Plaintiff injuries.

169.   Defendant Pokart aware of his gross negligence in representing Mr. Salem, for some inexplicable reason prepared an "**Affirmation" under penalty of perjury that he was " an associate with Irwin Shaw, Esq,** attorney or recorded for Aitabdellah Salem ". See **Exhibit "H"**

28

170.   Mr. Pokart further stated in his affirmation that he is requesting Order Producing defendant, Salem to court on January 21st, 2015, in Part F and that Mr. Salem's appearance was necessary to SET A DOLLAR BAIL under docket number 2014NY088543. See **Exhibit "H".** **(emphasis)**

171.   Mr. Pokart appeared to be requesting the presence of the Plaintiff on January 15th, 2015, to set bail in the amount of $1.00. However the $1.00 bail was set under docket number 2014NY088542 on November 26th, 2014.

172.   Mr. Salem was ordered released from custody under docket number 2014NY088543, on November 28th, 2014.  See **Exhibit " E"**

173.   An order was allegedly signed by Hon Felicia A. Mennin on January 15th, 2015, ordering the Department of Correction to produced Aitabdellah Salem on January 21st, 2015. See **Exhibit "I"**

174.    Mr. Pokart was in Court on February 11th, 2015, whereby he waived the appearance of Mr. Salem who was in the Court's pen waiting to find out information about his case.

175.    Mr. Pokart never mentioned to the Court on February 15, 2015, that Mr. Salem was still incarcerated in Rikers Island on a $1.00 bail.

176.   Mr. Pokart allowed the correction officers to return Salem back to Rikers Island knowing that he had a $ 1.00 bail.

177.    Plaintiff was not released from incarceration until April 15th, 2015.

178.   Mr. Pokart knew that Salem should have been released from custody of the Department of Correction, yet he took no affirmative steps to obtain Mr. Salem's release.

177.  Stephen Pokart's reckless, wanton and malicious lack of concern for his client Aitabdellah Salem caused needless suffering by Mr. Salem for which the Plaintiff now seeks to hold the Defendant attorneys liable for the pain and suffering cause by Mr. Pokart and Williams and Greco.

178.  At all relevant times, the Defendant attorneys were employees of the Legal Aid Society acting for, upon, and in furtherance of the business of their employer and within the scope of their employment

179.  As a consequence thereof Plaintiff has suffered great emotional stress and harm.

## SIXTH CLAIM FOR RELIEF

### AGAINST LEGAL AID SOCIETY FOR RESPONDEANT SUPERIOR

180.  That Plaintiffs repeats, reiterates and realleges each and every allegation contained in Paragraphs "1 through 179", with the same force and effect as though more fully set forth at length here herein.

181.  At all relevant times, all defendant attorneys were employees of the Legal Aid Society and were acting for, upon, and in furtherance of the business of their employer, Legal Aid Society and within the scope of their employment.

182.  Consequently, the Legal Aid Society is liable under the doctrine of respondeat superior for the tortious actions of the employees Stephan Pokart, Jerome Greco and Eric Williams.

## SEVENTH CLAIM

### AGAINST THE LEGAL AID SOCIETY FOR FAILURE TO SUPERVISE AND DISCIPLINE DEFENDANTS STEPHEN POKART, ERIC WILLIAMS AND JEROME GRECO.

183.   That Plaintiffs repeats, reiterates and realleges each and every allegation contained in Paragraphs "1 through 182", with the same force and effect as though more fully set forth at length here herein.

184.   That at all times herein mentioned the Defendant attorneys were employees of the Legal Aid Society involved in the incident complained of herein, were negligently hired, trained, supervised, and or retained by the defendant, Legal Aid Society.

185.   That the acts complained of herein resulted from the defendant Legal Aid Society' negligence  through their agents, servants and employees, breaching its duty to properly assign, train, supervise or discipline its employees within the Legal Aid Society.

186.   That the Legal Aid Society failed to supervise, and failed to discipline Defendant attorneys. Pokart, Greco and Williams named herein who unlawfully failed to inform Plaintiff that on November 26th, 2014, his bail on one of his cases had been reduced to one dollar and that on November 28th, 2014, Plaintiff was ordered release on his other case docket number 2014NY088543.

187.   That the Legal Aid Society was or should have been aware that the Court had reduced Salem's bail and had ordered his release form incarceration yet, the Defendants took no action to obtain Plaintiff's release.

188.   That Plaintiff suffered the loss of his liberty for one hundred thirty eight days due to the gross negligence of Stephen Pokart Jerome Greco and Eric Williams.

189.   That the defendant Legal Aid Society's failure to properly  train, supervise or discipline its employees including the named Defendants involved in this incident herein, constitutes acquiescence, and tolerance, of ongoing unconstitutional detentions, negligence and

legal malpractice which allowed the defendants to believe that they could violate plaintiffs' rights with impunity.

190.   By reason of the foregoing, the individual defendants individually and through defendant's agents, servants and employees, failed, and refused to use such care in the performance of their duties as reasonably prudent attorneys would have used under similar circumstances thus resulting in significant emotional injuries to the plaintiff as well as plaintiffs' loss of liberty for one hundred thirty eight days.

191.   As a consequence thereof, the Plaintiff has been severely injured.

192.   That the failure of the Legal Aid Society to adequately  train, supervise, discipline or in any other way to control the defendant attorneys in the exercise of their official functions, including the expeditious compliance with The New York Rules of Professional Conduct in keeping the client reasonably informed about the status of the matter, and their failure to promptly comply with a client's reasonable requests for information regarding the statues of his case, especially when the client, Mr. Salem was not present in Court to have known of his status served as the proximate cause of the plaintiff's injuries.

193.   The need for more or better supervision, or training to protect against the attorneys gross negligence which led to Mr. Salem continued incarceration was patently obvious.

194.   As consequence thereof, Plaintiff has been greatly injured.

**WHEREFORE,** Plaintiff request that this Court grant the following relief jointly and severally against the Defendants:

A.   Compensatory damages in the amount this Court shall consider to be fair, reasonable and just to be determined at trial for the unlawful incarceration and restraint of liberty as well as

the pain, suffering and psychological injuries sustained by Mr. Salem as s result of the events alleged herein.

B. Punitive damages against the Individual Defendants and Supervisory Defendants in an amount to be determined at trial.

C. An order awarding Plaintiff reasonable attorneys' fees under 42.U.S.C Section 1988, together with the costs of this action.

D. Such other and further relief as the Court may deem just and proper.

Dated: June 21st, 2017
      New York, New York


By _____
Welton K. Wisham, Esq, (WW8674)
The Law Office of Welton K. Wisham
43 West 43rd Street, Suite 95
New York, New York 10036:7424
(212) 709-8183 Office
(718) 678-8062   Fax
Attorney for the Plaintiff
Email:  wkwisham@optonline.net