Index No. 17-CV-4799 (JGK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AITABDELLAH SALEM,

Plaintiff,

-against-

CITY OF NEW YORK, JOSEPH PONTE,
COMMISSIONER OF THE NEW YORK CITY
DEPARMTENT OF CORRECTION, IN HIS
INDIVIDUAL AND OFFICIAL CAPACITY, JOHN DOE
NO.1, WARDEN, NEW YORK CITY DEPARTMENT OF
CORRECTION, JOHN DOE NO. 2, ASSISTANT
WARDEN, OF THE NEW YORK CITY DEPARTMENT
OF CORRETION, IN HIS INDIVIDUAL AND OFFICIAL
CAPACITY, JOHN DOE NO.3, TOUR COMMANDER
NEW YORK CITY DEPARTMENT OF CORRECTION,
AMKC, RIKERS ISLAND, IN HIS INDIVIDUAL AND
OFFICIAL CAPACITY, JOHN DOE NO. 4, CAPTAIN,
NEW YORK CITY DEPARTMENT OF CORRECTION,
AMKC, RIKERS ISLAND, IN HIS INDIVIDUAL AND
OFFICIAL CAPACITY.

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants City and Ponte*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Alexander Noble*
*Tel:  (212) 356-2357*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS .................................................................................... 1

STANDARD OF REVIEW ................................................................................... 6

          A.    F.R.C.P. 12(b)(6) Standard of Dismissal. ........................................ 6

          B.    Standard Regarding Consideration of Plaintiff
               and Defendants' Documentary Exhibits. .......................................... 7

ARGUMENT

     I.    PLAINTIFF FAILS TO STATE ANY
          ACTIONABLE FALSE ARREST/
          IMPRISONMENT CLAIM ARISING FROM HIS
          DETENTION IS DOC CUSTODY. .................................................. 9

          A.    Plaintiff's Pending and Indisputably Valid
               Criminal Charges Created Legal Justification
               for His Continued Pre-Trial Detention. .......................................... 10

                  1.    The Criminal Court's November 28,
                       2014 Order in Docket
                       No.2014NY088543 Did Not Require
                       Plaintiff's Release from Custody. ......................................... 11

                  2.    Plaintiff Was Justifiably Detained on
                       the Charges under Docket No.
                       2014NY088542 until his Bail Was Paid
                       on April 15, 2015. ................................................................. 12

          B.    Plaintiff's False Arrest/Imprisonment Claim is
               Barred by Heck v. Humphrey. .......................................................... 13

          C.    Plaintiff Should be Judicially Estopped from
               Pursuing the False Arrest/Imprisonment Claim. ............................. 15

II.     PLAINTIFF FAILS TO STATE ANY ACTIONABLE UNREASONABLE SEARCH AND SEIZURE CLAIM ARISING FROM HIS DETENTION IS DOC CUSTODY. ..............................17

     A.    Plaintiff's Return to DOC Custody Following Criminal Court Proceedings Was Not an Unconstitutional Seizure. ..................................17

     B.    Plaintiff's Return to DOC Custody Following Criminal Court Proceedings Did Not Violate his Right to Due Process. ...............................18

     C.    Plaintiff's Alleged Strip Searches Before and After Criminal Court Proceedings Were not Unconstitutional. .............................19

III.    PLAINTIFF FAILS TO STATE ANY ACTIONABLE DUE PROCESS CLAIM ARISING FROM HIS DETENTION IS DOC CUSTODY ...........................20

     A.    Plaintiff Fails to State an Actionable Substantive Due Process Claim.........................20

     B.    Plaintiff Fails to State an Actionable Procedural Due Process Claim. .............................21

IV.    PLAINTIFF FAILS TO STATE ANY ACTIONABLE MUNICIPAL LIABILITY CLAIM UNDER SECTION 1983 ARISING FROM HIS DETENTION IN DOC CUSTODY. ..........................23

V.     PLAINTIFF FAILS TO STATE ANY ACTIONABLE *RESPONDEAT SUPERIOR* CLAIM ARISING FROM HIS DETENTION IN DOC CUSTODY.........................30

CONCLUSION ...........................................................................................31

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u> <u>Pages</u>

Albright v. Oliver,
   510 U.S. 266 (1994) ............................................................................................. 20

Archer v. Fischer,
   325 F. App'x 9 (2d Cir. 2009) ............................................................................ 14

Ashcroft v. Iqbal,
   129 S. Ct. 1937 (May 19, 2009) ......................................................................... 7

Bell Atlantic Corp. v. Twombly,
   127 S. Ct. 1955 (2007) ......................................................................................... 7

Brogdon v. City of New Rochelle,
   200 F. Supp. 2d 411 (S.D.N.Y. 2002) .............................................................. 26

Carthew v. County of Suffolk,
   709 F. Supp. 2d 188 (E.D.N.Y. 2010) .............................................................. 30

City of Canton v. Harris,
   489 U.S. 378 (1989) ............................................................................................. 23

Collins v. City of N.Y.,
   923 F. Supp. 2d 462 (E.D.N.Y. 2013) .............................................................. 28

Connick v. Thompson,
   563 U.S. 51 (2011) .......................................................................... 24, 25, 27, 29

Daniels v. Comm'r of Soc. Sec.,
   10-4219, 2012 U.S. App. LEXIS 1075 (2d Cir. 2012) ................................... 7

DeRosa v. Nat'l Envelope Corp.,
   595 F.3d 99 (2d Cir. 2010) ................................................................................. 16

DiFolco v. MSNBC Cable L.L.C.,
   622 F.3d 104 (2d Cir. 2010) ............................................................................... 7

Donohue v. Manetti,
   15-CV-636 (JFB) (GRB),
   2016 U.S. Dist. LEXIS 22565 (E.D.N.Y. Feb. 24, 2016) ............................. 26

**Cases**                                                  **Pages**

Duboys v. Bomba,
01-Civ-5448, 2002 U.S. Dist. LEXIS 1540,
2002 WL 146843 (S.D.N.Y. Jan. 31, 2002) .............................................................................. 26

In Re Elevator Antitrust Litig.,
502 F.3d 47 (2d Cir. 2007) ................................................................................................ 7

Escalera v. Lunn,
361 F.3d 737 (2d Cir. 2004) ........................................................................................ 10, 14

Florence v. Bd. of Chosen Freeholders,
566 U.S. 318 (2012) .......................................................................................................... 19

Genia v. Parker,
03-CV-0870 (JFB) (AKT),
2007 U.S. Dist. LEXIS 19700 (E.D.N.Y. Mar. 20, 2007) ........................................... 10

Gilbeau v. Pallito,
11-CV-0232 (JMC),
2012 U.S. Dist. LEXIS 88309 (D. Vt. May 22, 2012) ............................................... 8, 9

Gordon v. City of New York,
10-CV-5148 (CBA) (LB),
2012 U.S. Dist. LEXIS 44251 (E.D.N.Y. Mar. 29, 2012) ........................................... 10

Graham v. Connor,
490 U.S. 386 (1989) .......................................................................................................... 21

Grillo v. New York City Transit Auth.,
291 F.3d 231 (2d Cir. 2002) ............................................................................................ 22

Harper v. City of N.Y.,
11-CV-4333 (CM),
2013 U.S. Dist. LEXIS 14951 (S.D.N.Y. Jan. 30, 2013) ........................................... 24

Harris v. Queens Cty. Dist. Atty's. Office,
08-CV-1703 (CBA)(LB),
2009 U.S. Dist. LEXIS 105912 (E.D.N.Y. Sep. 15, 2009) ........................................ 26

Hayes v. Annucci,
14-CV-8845 (NSR),
2016 U.S. Dist. LEXIS 57228 (S.D.N.Y. Apr. 28, 2016) .................................... 21, 22

Heck v. Humphrey,
512 U.S. 477 (1994) .................................................................................................. 13, 14

**Cases**                                                                 **Pages**

Hellenic Am. Neighborhood Action Comm. v. City of N.Y.,
    101 F.3d 877 (2d Cir. 1996) ................................................................... 22

Hope v. City of New York,
    08-CV-5022 (BMC),
    2010 U.S. Dist. LEXIS 145684 (E.D.N.Y. Jan. 22, 2010) ...................... 10

Jenkins v. City of New York,
    478 F.3d 76 (2d Cir. 2007) ..................................................................... 24

Johnson v. City of N.Y.,
    551 F. App'x 14 (2d Cir. 2014) .............................................................. 23

Johnson v. City of New York,
    15-CV-8195 (GHW),
    2017 U.S. Dist. LEXIS 81359 (May 26, 2017) ........................................ 7

Johnson v. N.Y.C. Police Dep't,
    651 F. App'x 58 (2d Cir. 2016) .............................................................. 14

Kramer v. Time Warner, Inc.,
    937 F.2d 767 (2d Cir. 1991) ..................................................................... 7

Kuar v. Mawn,
    08-CV-4401 (JFB) (ETB),
    2011 U.S. Dist. LEXIS 22209 (E.D.N.Y. Mar. 4, 2011) ....................... 15

Lee v. N.Y. Dep't of Corr. Servs.,
    97-CV-7112 (DAB),
    1999 U.S. Dist. LEXIS 13214 (S.D.N.Y. Aug. 27, 1999) ........................ 8

Leeds v. Meltz,
    85 F.3d 51 (2d Cir. 1996) ......................................................................... 7

Lynch v. City of New York,
    17-CV-7577 (WHP) ......................................................................... 28, 29

Mangiafico v. Blumenthal,
    471 F.3d 391 (2d Cir. 2006) ..................................................................... 7

Marcel v. City of New York,
    88-CV-7017 (LLS), 1990 WL 47689 (S.D.N.Y. Apr. 11, 1990) .............. 28

Monell v. Department of Social Services,
    436 U.S. 658 (1978) ................................................................................ 23

**Cases**                                                                **Pages**

Montayne v. Haymes,
   427 U.S. 236 (1976)..................................................................................... 18

Moore v. Newton,
   14-CV-6473 (MKB) (CLP),
   2016 U.S. Dist. LEXIS 121839 (E.D.N.Y. Sep. 7, 2016)........................................... 22

Muller v. TIAA,
   446 F.Supp.2d 221 (S.D.N.Y.2006)...................................................................... 8

Myers v. City of New York,
   11-CV-8525 (PAE),
   2012 U.S. Dist. LEXIS 123994 (S.D.N.Y. Aug. 29, 2012) ....................................... 19

New Hampshire v. Maine,
   532 U.S. 742 (2001)..................................................................................... 15

New Page at 63 Main, LLC v. The Inc. Vill. of Sag Harbor,
   15-CV-2433 (ADS) (AKT),
   2016 U.S. Dist. LEXIS 189158 (E.D.N.Y. Mar. 19, 2016) ....................................... 22

Patel v. Contemporary Classics of Beverly Hills,
   259 F.3d 123 (2d Cir. 2001)......................................................................... 6-7

Perlleshi v. Cty. of Westchester,
   98-CV-6927 (CM), 2000 U.S. Dist. LEXIS 6054 (S.D.N.Y. Apr. 24, 2000)........................ 15-16

Posr v. Doherty,
   944 F.2d 91 (2d Cir. 1991)........................................................................... 10

Reynolds v. Giuliani,
   506 F.3d 183 (2d Cir. 2007).................................................................... 24, 30

Rodal v. Anesthesia Grp. of Onondaga, P.C.,
   369 F.3d 113 (2d Cir. 2004)........................................................................ 15

Rodriguez v. City of New York,
   11-CV-0515 (ALC) (GWG), ECF No. 44 ............................................................ 28

Rosario v. New York City,
   12-CV-4795 (PAE), 2013 U.S. Dist. LEXIS 69410 (S.D.N.Y. May 15, 2013) ................... 8, 9

Russo v. City of Bridgeport,
   479 F.3d 196 (2d Cir. 2007)........................................................................ 21

**Cases**                                                                                                         **Pages**

Schultz v. Egan,
    103 F. App'x 437 (2d Cir. 2004) ...................................................................... 21, 22

Smith v. City of N.Y.,
    14-CV-5934 (JCF), 2015 U.S. Dist. LEXIS 81337 (S.D.N.Y. June 17, 2015) .................... 19, 20

Soto v. City of N.Y.,
    04-CV-4559 (DC), 2005 U.S. Dist. LEXIS 465 (S.D.N.Y. Jan. 10, 2005) ................................ 10

Southerland v. City of N.Y.,
    680 F.3d 127 (2d Cir. 2011).............................................................................. 20

Tieman v. City of Newburgh,
    13-CV-4178 (KMK), 2015 U.S. Dist. LEXIS 38703 (S.D.N.Y. Mar. 26, 2015) ................. 24, 28

Tyson v. Tilghman,
    764 F. Supp. 251 (Dist. Conn. 1991) .................................................................. 18

United States v. Alexander,
    123 Fed. Appx. 444 (2d Cir. 2005) ...................................................................... 8, 9

United States v. Lanier,
    520 U.S. 259, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997) .................................... 20, 24

Vippolis v. Village of Haverstraw,
    768 F.2d 40 (2d Cir. 1985)................................................................................ 24

Walker v. Ponte,
    14-CV-8507 (ER), 2016 U.S. Dist. LEXIS 110062 (S.D.N.Y. Aug. 18, 2016) ........................ 19

Weyant v. Okst,
    101 F.3d 845 (2d Cir. 1996).............................................................................. 10

Wims v. New York City Police Dep't.,
    10-CV-6128 (PKC), 2011 U.S. Dist. LEXIS 78641 (S.D.N.Y. July 20, 2011)........................ 8, 9

Ying Li v. City of N.Y.,
    246 F. Supp. 3d 578 (E.D.N.Y. 2017) .................................................................. 20

**Statutes**

28 U.S.C. § 2254..................................................................................................... 14

42 U.S.C. § 1983................................................................... 1, 10, 14, 21, 22, 23, 30

F.R.C.P. 12(b)(6) ......................................................................................... 6, 7, 8, 14

**Statutes**                                                      **Pages**

Fed. R. Civ. P. 8(a)(2) ........................................................................................ 7

N.Y. Civ. Prac. L & R 7801, et seq. ................................................................... 22

N.Y.P.L. § 120.05(3) ...................................................................................... 1, 6

N.Y.P.L. § 155.25 ........................................................................................... 1, 6

N.Y.P.L. § 180.80 ..................................................................................... 3, 11, 12

## PRELIMINARY STATEMENT

Plaintiff Aitabdellah Salem (hereinafter "plaintiff") brings this action pursuant to 42 U.S.C. § 1983 alleging that he was unlawfully detained from November 28, 2014 to April 15, 2015 in the custody of the New York City Department of Correction (hereinafter "DOC"). Defendants City of New York and DOC Commissioner Joseph Ponte (hereinafter "defendants") now move to dismiss plaintiff's Amended Complaint in its entirety on the ground that plaintiff's detention was legally justified. The facts alleged in the Amended Complaint demonstrate that: (i) plaintiff's false arrest/imprisonment fails because plaintiff's detention was legally justified; (ii) plaintiff was not unconstitutionally searched and seized while in DOC custody; (iii) plaintiff was not denied the right to substantive or procedural due process by defendants; (iv) plaintiff's Monell claim fails because no municipal policy or practice caused a deprivation of his constitutional rights; and (v) there is no *respondeat superior* liability under § 1983.

## STATEMENT OF FACTS[1]

On November 21, 2014, plaintiff was arrested in New York, New York and on November 22, 2014, he was arraigned on charges of Assault in the Second Degree under N.Y. P.L. § 120.05(3) and Petit Larceny under N.Y. P.L. § 155.25. See Plaintiff's Amended Complaint, annexed as Exhibit "1" to the Noble Decl. (hereinafter "Amended Complaint"), ¶¶ 46-47. Plaintiff was arraigned in the Criminal Court of the City of New York arrest on charges arising from his November 21, 2014 arrest under Docket No. 2014NY088542. See Amended Complaint, Exhibit 1, ¶ 49. Plaintiff was additionally arraigned on criminal charges arising from two other arrests under Docket Nos. 2014NY017648 and 2014NY088543. See Amended Complaint, Exhibit 1, ¶ 50. The

---

[1] The facts herein are drawn from plaintiff's Amended Complaint, the documents annexed thereto, and additional documentation of plaintiff's detention annexed to defendants' motion papers. The Court may consider these documents in deciding the instant motion for the reasons set forth below in section entitled "Standard of Review."

criminal court disposed of the charges arising under Docket No. 2014NY017648 by sentencing plaintiff to time-served at arraignment. See Amended Complaint, Exhibit 1, ¶ 51. The criminal court did not dispose of plaintiff's charges under Docket No. 2014NY088542 and Docket No. 2014NY088543 at arraignment. The criminal court adjourned the cases against plaintiff under Docket No. 2014NY088542 and Docket No. 2014NY088543 to November 26, 2014 and set bail in the amount of $25,000 for each matter. See Amended Complaint, Exhibit 1, ¶¶ 50, 52. Beginning on November 23, 2014, plaintiff was held in DOC custody as a pre-trial detainee at Anna M. Kross Center (hereinafter "AMKC") on Rikers Island. See Amended Complaint, Exhibit 1, ¶ 48; DOC Prisoner Movement Log, annexed to Noble Decl. as Exhibit "2," p. 1.

On November 26, 2014, DOC produced plaintiff from AMKC to the criminal court for plaintiff's scheduled court proceeding. See DOC Prisoner Movement Log, Exhibit 2, p. 1. The criminal court reduced plaintiff's bail under Docket No. 2014NY088542 from $25,000 to $1.00 and adjourned the next proceeding to February 11, 2015. See Amended Complaint, Exhibit 1, ¶ 54. Plaintiff was not present in the courtroom during the November 26, 2014 proceeding. See Amended Complaint, Exhibit 1, ¶ 55.[2] Plaintiff's criminal defense attorneys did not inform plaintiff that his bail had been reduced to $1.00 in connection with Docket No. 2014NY088542. See Amended Complaint, Exhibit 1, ¶ 55.

On November 28, 2014, DOC produced plaintiff from AMKC to the criminal court for his scheduled court proceeding in Docket No. 2014NY088543. See DOC Prisoner Movement Log, p. 1. Plaintiff was not present in the courtroom during the November 28, 2014 proceeding, and

---

[2] The Amended Complaint alleges that, "plaintiff was not produced in Court on November 26, 2014." See Exhibit 1, ¶ 55. However, plaintiff's DOC Prisoner Movement Log confirms that he was transferred from AMKC to the criminal court on November 26, 2014. See DOC Prisoner Movement Log, Exhibit 2, p. 1. Further, the court officer at the November 26, 2014 proceeding stated on the record, "Defendant is produced, not before the Court." See Transcript of November 26, 2014 Proceeding, Exhibit B to Amended Complaint, p. 2:01-03.

plaintiff's criminal defense attorneys waived his appearance on the record. See Amended Complaint, Exhibit 1, ¶ 56. At the November 28, 2014 proceeding, the criminal court determined that the New York County District Attorney's Office failed to secure an indictment against plaintiff under Docket No. 2014NY088543 in the time required under N.Y. Crim. Pro. L. § 180.80. See Amended Complaint, Exhibit 1, ¶¶ 56-59. The criminal court determined that plaintiff could no longer be detained on the charges arising under Docket No. 2014NY088543 and issued an order dated November 28, 2014. See Amended Complaint, Exhibit 1, ¶ 57. The November 28, 2014 Order, annexed to plaintiff's Amended Complaint as Exhibit "D," states:

> Judge M. Crane of the Criminal Court of the City of New York, has ordered that defendant Salem, Aitabdellah, NYSID No. 8386091H be released from custody in connection with Docket No. 2014NY088543. You are commanded to perform all required procedures to effect the defendant's immediate release in connection with this matter.

See November 28, 2014 Order, Exhibit D to Amended Complaint. The criminal court did not make any change to plaintiff's $25,000 bail under Docket No. 2014NY088543. See generally Transcript of November 28, 2014 Proceeding, annexed as Exhibit C to Amended Complaint. Plaintiff's criminal matter under Docket No. 2014NY088543 was adjourned to February 11, 2015. See Amended Complaint, Exhibit 1, ¶ 62. Plaintiff's criminal defense attorneys did not inform plaintiff the criminal court issued the November 28, 2014 Order in connection with his prosecution under Docket No. 2014NY088543. See Amended Complaint, Exhibit 1, ¶ 60. Plaintiff was strip searched before leaving AMKC and after returning to AMKC from criminal court on November 28, 2014. See Amended Complaint, Exhibit 1, ¶ 226. Officials at DOC received the Court's November 28, 2014 Order by fax on November 28, 2014. See Amended Complaint, Exhibit 1, ¶ 66.

3

On January 15, 2015, the criminal court issued an order directing DOC to produce plaintiff for a proceeding in Docket No. 2014NY088543 scheduled for January 21, 2015. See January 15, 2015 Order, annexed to Exhibit E to Amended Complaint. The January 15, 2015 Order states that, "[plaintiff's] attendance will be necessary in the Criminal Court of the State of New York to set a one dollar bail." See January 15, 2015 Order, annexed to Exhibit E to Amended Complaint. On January 21, 2015, DOC produced plaintiff from AMKC to the criminal court. See DOC Prisoner Movement Log, Exhibit 2, p. 2. Plaintiff was not present in the courtroom at the January 21, 2015 proceeding, and plaintiff's criminal defense attorney waived his appearance. See Amended Complaint, Exhibit 1, ¶ 74. At the January 21, 2015 proceeding, plaintiff's criminal defense attorney summarized the status of plaintiff's two pending criminal matters as follows: "It was after [plaintiff] was released somebody caught on to the fact that there was an immigration hold. The judge recalled one case but didn't recall both cases, so there is a dollar bail set on the other case. I need a dollar bail set on this case." See Transcript of January 21, 2014 Proceeding, Exhibit F to Amended Complaint, p. 2:09-14. The criminal court judge set plaintiff's bail in the amount of $1.00 bail in Docket No. 2014NY088543. See Transcript of January 21, 2014 Proceeding, Exhibit F to Amended Complaint, p. 2:15. Plaintiff was strip searched before leaving AMKC and after returning to AMKC from criminal court on January 15, 2015. See Amended Complaint, Exhibit 1, ¶ 226.

On February 11, 2015, the criminal court held a proceeding in Docket No. 2014NY088542. See Amended Complaint, Exhibit 1, ¶ 75. On February 11, 2015, DOC produced plaintiff from AMKC to the criminal court, but plaintiff was not present in the courtroom at the February 11, 2015 proceeding. See DOC Prisoner Movement Log, Exhibit 2, p. 3; Amended Complaint, Exhibit 1, ¶ 77. Plaintiff's criminal defense attorney waived his appearance at the February 11, 2015 proceeding. See Amended Complaint, Exhibit 1, Exhibit 1, ¶ 79. Plaintiff's

criminal defense attorney noted, on the record, that plaintiff was being held on a bail amount of two dollars in connection with his pending criminal cases. See Amended Complaint, Exhibit 1, ¶ 81; Transcript of February 11, 2015 Proceeding, Exhibit G to Amended Complaint, p. 3:03-06. The Court maintained the same bail conditions on plaintiff's pending criminal cases and adjourned Docket No. 2014NY088542 to May 28, 2015. See Amended Complaint, Exhibit 1, ¶ 81. Plaintiff was strip searched and returned to AMKC following the February 11, 2015 court proceeding. See Amended Complaint, Exhibit 1, ¶¶ 78 and 226.

Plaintiff repeatedly called his criminal defense attorney Stephen Pokart to ascertain the status of his pending criminal cases.  See Amended Complaint, Exhibit 1, ¶ 83. Mr. Pokart refused to return any of plaintiff's numerous phone calls. See Amended Complaint, Exhibit 1, ¶ 83. None of plaintiff's criminal defense attorneys attempted to visit or call plaintiff while he was detained in DOC custody. See Amended Complaint, Exhibit 1, ¶ 84. Plaintiff's criminal defense attorneys did not inform plaintiff of any of the criminal court's orders and did not inform plaintiff his bail had been reduced to $1.00 in Docket No. 2014NY088542 and $1.00 in Docket No. 2014NY088543. See Amended Complaint, Exhibit 1, ¶ 84. Plaintiff asked correction officers working within AMKC to tell him what happened at his court proceedings on November 26, 2014, November 28, 2014, and February 11, 2015. See Amended Complaint, ¶ 84. None of the corrections officers informed plaintiff about the criminal courts' orders or plaintiff's bail reductions. See Amended Complaint, Exhibit 1, ¶ 82.

On April 15, 2015, plaintiff's bail was paid by an individual at AMKC named "Reverend Cato." See Amended Complaint, Exhibit 1 ¶ 86. Plaintiff's bail was paid at approximately 12:00 p.m. on April 15, 2015. See Bail Receipt, Exhibit H to Amended Complaint. Plaintiff was discharged at 4:11 p.m. on April 15, 2015. See Amended Complaint, Exhibit 1, ¶ 191.

On August 9, 2016, plaintiff was convicted by trial of the charge of Assault in the Second Degree under N.Y. P.L. § 120.05(3) and Petit Larceny under N.Y. P.L. § 155.25 under Docket No. 2014NY088542. See Certificate of Disposition in Docket No. 2014NY088542, annexed to Noble Decl. as Exhibit "3." Plaintiff was sentenced to a term of imprisonment of five years followed by a period of five years post-release supervision on the assault charge, and a term of imprisonment of one year on the petit larceny charge. See Certificate of Disposition in Docket No. 2014NY088542, Exhibit 3. The criminal court ordered plaintiff's periods of incarceration to run concurrently in the custody of the New York State Department of Correction and Community Supervision (hereinafter "NYSDOCCS"). See DOC Jail Time Certification, annexed to Noble Decl. as Exhibit "4," p. 1. In calculating plaintiff's jail time, plaintiff was credited with the time he had served in DOC custody prior to his conviction on the charges under Docket No. 2014NY088542. See DOC Jail Time Certification, Exhibit 4, p. 2. Plaintiff was credited with a total of 470 days spent in DOC custody, including the 145 days he spent in DOC custody between November 22, 2014 and April 15, 2015. See DOC Jail Time Certification, Exhibit 4, p. 2-3. Plaintiff is currently incarcerated in NYSDOCCS custody serving his sentence on the charges under Docket No. 2014NY088542. See NYSDOCCS Inmate Lookup Sheet, annexed as Exhibit "5" to Noble Decl. Plaintiff does not allege that his conviction or sentence on the charges under Docket No. 2014NY088542 has been challenged, overturned, or otherwise called into question.

## STANDARD OF REVIEW

### A.    F.R.C.P. 12(b)(6) Standard of Dismissal.

Rule 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the allegations contained in the complaint as true and draw all inferences in favor of the non-moving party. Patel v. Contemporary Classics of

Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001). To survive a motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).      Under this standard, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (May 19, 2009) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). In other words, "bald assertions and conclusions of law will not suffice." Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996). A party's "obligation to provide the grounds of his entitled to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. In order to state a claim, the factual allegations contained in the pleading "must be enough to raise a right to relief above the speculative level." Id.; see also In Re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007).

**B.      Standard Regarding Consideration of Plaintiff and Defendants' Documentary Exhibits.**

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010); Daniels v. Comm'r of Soc. Sec., 10-4219, 2012 U.S. App. LEXIS 1075, at *2 (2d Cir. 2012). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." DiFolco, 622 F.3d at 111 (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)). Courts may consider "matters of which judicial notice may be taken." Johnson v. City of New York, 15-CV-8195 (GHW), 2017 U.S. Dist. LEXIS 81359, *14-*15 (May 26, 2017). "[C]ourts routinely take judicial notice of documents filed in other courts ... to establish the fact of such litigation and related filings." Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991). Additionally, courts may

also consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Muller v. TIAA, 446 F.Supp.2d 221, 226-227 (S.D.N.Y.2006).

"[A] district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including arrest reports, criminal complaints, indictments and criminal disposition data." See Wims v. New York City Police Dep't., 10-CV-6128 (PKC), 2011 U.S. Dist. LEXIS 78641, at *4-*5 (S.D.N.Y. July 20, 2011).   Federal courts may take judicial notice of hearing transcripts from state criminal court proceedings. See Lee v. N.Y. Dep't of Corr. Servs., 97-CV-7112 (DAB), 1999 U.S. Dist. LEXIS 13214, *4, n.4 (S.D.N.Y. Aug. 27, 1999) (taking judicial notice of hearing transcript). A federal court may take judicial notice of a state criminal conviction. See, e.g., United States v. Alexander, 123 Fed. Appx. 444, 445 (2d Cir. 2005). Courts may take judicial notice of a detainee's NYCDOCCS inmate lookup information. See Rosario v. New York City, 12-CV-4795 (PAE), 2013 U.S. Dist. LEXIS 69410, *1 n.1 (S.D.N.Y. May 15, 2013) (taking judicial notice of information obtained via the DOCCS Lookup Service). "A printout of an inmate's movement history has been held to qualify as a public document that is eligible for judicial notice." Gilbeau v. Pallito, 11-CV-0232 (JMC), 2012 U.S. Dist. LEXIS 88309, *19 (D. Vt. May 22, 2012) (collecting cases).

In accordance with the above line of cases, defendants submit that the Court may consider the following documents annexed as Exhibits A through J to plaintiff's Amended Complaint in deciding the instant motion: Transcript of November 22, 2014 Proceeding, Exhibit A; Transcript of November 26, 2014 Proceeding, Exhibit B; Transcript of November 28, 2014 Proceeding, Exhibit C; November 28, 2014 Order, Exhibit D; January 15, 2015 Order, Exhibit E; Transcript of January 21, 2015 Proceeding, Exhibit F; Transcript of February 11, 2015 Proceeding, Exhibit G; Bail Receipt, Exhibit H; Center for Court Innovation Report, Exhibit I; and Department Investigation Report on DOC Hiring Practices, Exhibit J.

Additionally, the Court may consider the following documents annexed as Exhibits 2 through 5 to defendants' motion papers: plaintiff's DOC Prisoner Movement Log, Exhibit 2; Certificate of Disposition in Docket No. 2014NY088542, Exhibit 3; Plaintiff's DOC Jail time Certification, Exhibit 4; and Plaintiff's DOCCS Inmate Lookup Sheet, Exhibit 5. The Court may consider plaintiff's DOCCS Inmate Lookup Sheet because the Court may take judicial notice of information obtained via the DOCCS Inmate Lookup Service. See Rosario, U.S. Dist. LEXIS 69410, *1 n.1. The Court may take judicial notice of the Certificate of Disposition in Docket No. 2014NY088542 because it is a public document of plaintiff's criminal conviction in state court. See Alexander, 123 Fed. Appx. at 445. The Court may consider plaintiff's DOC Jail Time Certification because it is a public record of criminal disposition data, of which the Court may take judicial notice. See Wims, U.S. Dist. LEXIS 78641, at *4-*5. Additionally, plaintiff's DOC Jail Time Certification is integral to the Amended Complaint because it provides a definitive record of how many days plaintiff spent in custody during the period of detention at issue. The Court may consider plaintiff's DOC Prisoner Movement Log because the Court may take judicial notice of an inmate's movement history while in custody. See Gilbeau, 2012 U.S. Dist. LEXIS 88309, *19. Additionally, the DOC Prisoner Movement Log documenting his transfer to criminal court is integral to plaintiff's allegation that he was unlawfully strip searched each he was transported to and from criminal court. See, e.g., Amended Complaint, Exhibit 1, ¶ 226. Thus, the Court may consider the DOC Prisoner Movement Log, Certificate of Disposition in Docket No. 2014NY088542, DOC Jail Time Certification, and Inmate Lookup Sheet in deciding the instant motion.

## **ARGUMENT**

**I.   PLAINTIFF FAILS TO STATE ANY ACTIONABLE FALSE ARREST/ IMPRISONMENT CLAIM ARISING FROM HIS DETENTION IS DOC CUSTODY.**

Plaintiff alleges that he was unlawfully detained in DOC custody between the dates of November 28, 2014 and April 15, 2015. See Amended Complaint, Exhibit 1, ¶ 287. However, the

allegations in the Amended Complaint and annexed documents show that plaintiff's pending criminal charges provided legal justification for his detention until the date of April 15, 2015, when plaintiff's bail was paid and plaintiff was released from custody in a matter of four hours.

> ### A.   Plaintiff's Pending and Indisputably Valid Criminal Charges Created Legal Justification for His Continued Pre-Trial Detention.

"False arrest and false imprisonment are considered synonymous causes of action." See Soto v. City of N.Y., 04-CV-4559 (DC), 2005 U.S. Dist. LEXIS 465, *9 (S.D.N.Y. Jan. 10, 2005). An action for false arrest/imprisonment arises from the Fourth Amendment right against unreasonable seizures. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). To state a claim for false arrest/imprisonment under New York law, a plaintiff must show that: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Posr v. Doherty, 944 F.2d 91, 97 (2d Cir. 1991). To establish a claim for false arrest/imprisonment under § 1983, "a plaintiff must show that the defendant intentionally confined him without his consent *and without justification*." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (emphasis added).

"The Second Circuit has established that the existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." Genia v. Parker, 03-CV-0870 (JFB) (AKT), 2007 U.S. Dist. LEXIS 19700, *14 (E.D.N.Y. Mar. 20, 2007) (internal quotations omitted). A valid prosecution resulting in a conviction is conclusive evidence that probable cause existed for an arrest. Hope v. City of New York, 08-CV-5022 (BMC), 2010 U.S. Dist. LEXIS 145684, at *5-*8 (E.D.N.Y. Jan. 22, 2010). "In an action for false arrest, the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested, because the conviction is treated as conclusive evidence of probable cause to arrest." See Gordon v. City of New York, 10-CV-5148 (CBA) (LB), 2012 U.S. Dist. LEXIS 44251, at *13-*14 (E.D.N.Y. Mar. 29, 2012).

Plaintiff does not challenge the validity of his November 21, 2014 arrest that gave rise to his prosecution on the charges under Docket No. 2014NY088542. See generally, Amended Complaint, Exhibit 1. Indeed, plaintiff *cannot* challenge the validity of the charges on which he was arrested and prosecuted under Docket No. 2014NY088542 given that the prosecution ultimately resulted in his conviction. See Certificate of Disposition in Docket No. 2014NY088542, Exhibit 3. Further, plaintiff does not dispute that he was lawfully remanded into DOC custody on November 22, 2014 based on the charges arising under in Docket No. 2014NY088542 and in Docket No. 2014NY088543. See Amended Complaint, Exhibit 1, ¶ 52.

Plaintiff alleges that his detention became unlawful on November 28, 2014, when the criminal court issued the November 28, 2014 Order that, according to plaintiff, mandated his release from custody. See Amended Complaint, Exhibit 1, ¶ 287. However, plaintiff fails to establish that he was imprisoned without justification as of November 28, 2014 because: (i) the November 28, 2014 Order did not mandate plaintiff's release from custody; and (ii) plaintiff's criminal charges under Docket No. 2014NY088542 justified his detention until his bail was paid on April 15, 2015.

1.   **The Criminal Court's November 28, 2014 Order in Docket No. 2014NY088543 Did Not Require Plaintiff's Release from Custody.**

On November 28, 2014, the criminal court held a proceeding in one of plaintiff's pending cases, Docket No. 2014NY088543, during which prosecutors from the New York County District Attorney's conceded that the time to convene a grand jury in that matter had exceeded the time permitted under § 180.80. See Amended Complaint, Exhibit 1, ¶¶ 56-59. The criminal court determined that plaintiff could no longer be detained based on the charges under Docket No. 2014NY088543, as reflected in the November 28, 2014 Order. See November 28, 2014 Order, Exhibit D to Amended Complaint. A close examination of the November 28, 2014 Order demonstrates that it applies only to the charges under Docket No. 2014NY088543, and had no

effect on DOC's ability to continue detaining plaintiff on the charges under Docket No. 2014NY088542. For example, the text of the November 28, 2014 Order states that plaintiff must "be released from custody in connection *with Docket No. 2014NY088543*." <u>See</u> November 28, 2014 Order, Exhibit D to Amended Complaint (emphasis added). Additionally, the November 28, 2014 states, "[y]ou are commanded to perform all required procedures to effect the defendant's immediate release in connection *with this matter*. <u>Id.</u>

The text of the criminal court's subsequent January 15, 2015 Order further undermines plaintiff's contention that the Court's November 28, 2014 Order required his immediate release from custody. On January 15, 2015, the criminal court issued an order in Docket No. 2014NY088543 directing DOC to produce plaintiff in criminal court on January 21, 2015 because "[plaintiff's] attendance will be necessary ... to set a one dollar bail." <u>See</u> January 15, 2015 Order, Exhibit E to Amended Complaint. If plaintiff's reading of the November 28, 2014 Order were accurate, it is implausible that the criminal court would issue a subsequent order in the same matter ordering that bail be set. In fact, the transcript of the January 15, 2015 proceeding confirms that the criminal court set plaintiff's bail at $1.00 in Docket No. 2014NY088543, demonstrating that, prior to January 15, 2015, plaintiff was not entitled to release from custody, even solely in connection with Docket No. 2014NY088543.

      **2.**    **Plaintiff Was Justifiably Detained on the Charges under Docket No. 2014NY088542 until his Bail Was Paid on April 15, 2015.**

Plaintiff makes no allegation that the criminal court ordered his release in connection with the charges under Docket No. 2014NY088542. In contrast to Docket No. 2014NY088543, prosecutors did not exceed their time to indict plaintiff under § 180.80, and plaintiff's Certificate of Disposition reflects that plaintiff was indicted on the charges under Docket No. 2014NY088542. <u>See</u> Certificate of Disposition in Docket No. 2014NY088542 (showing plaintiff was assigned

indictment number 1341N-2015). Plaintiff acknowledges that his bail – albeit set at $1.00 – remained unpaid until April 15, 2015. See Amended Complaint, Exhibit 1, ¶ 86. Until plaintiff's bail was paid on April 15, 2015, in the absence of any determination from the criminal court that plaintiff could not continue to be detained on the charges under Docket No. 2014NY088542, DOC had sufficient legal justification to continue detaining plaintiff. In fact, plaintiff acknowledges in the Amended Complaint that he could not be released from custody until his bail was paid. See Amended Complaint, Exhibit 1, ¶¶ 192-193. The established facts contradict plaintiff's conclusory allegation that his release from custody was unreasonably delayed. The Amended Complaint and annexed exhibits demonstrate that plaintiff was promptly released within a mere four hours after his bail was paid on April 15, 2015. See Amended Complaint, Exhibit 1, ¶ 191.

Plaintiff's charges under Docket No. 2014NY088542 provided sufficient legal authority for his continued detention after November 28, 2014, even assuming the truth of plaintiff's allegation that he could no longer be validly detained on the charges under Docket No. 2014NY088543. Plaintiff's allegations of fact and annexed exhibits fail to plausibly establish that he was detained without legal justification between November 28, 2014 and April 15, 2015. In fact, they establish the exact opposite. Thus, plaintiff fails to state an actionable false arrest/imprisonment under the facts alleged, and defendants motion to dismiss should be granted at to this claim.

      **B.**    **Plaintiff's False Arrest/Imprisonment Claim is Barred by <u>Heck v. Humphrey</u>.**

Additionally, plaintiff's alleged false arrest/imprisonment claim fails because its success would invalidate the length of the prison sentence he is currently serving on the charges under Docket No. 2014NY088542.

In <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87 (1994), the U.S. Supreme Court held that:

> To recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

"[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Heck, 512 U.S. at 487. The Heck bar is applicable to § 1983 claims that would imply the invalidity of the plaintiff's criminal sentence. See Heck, 512 U.S. at 486 ("whose unlawfulness would render a conviction *or sentence* invalid") (emphasis added); Archer v. Fischer, 325 F. App'x 9 (2d Cir. 2009) (noting the applicability of Heck to § 1983 claims challenging denial of a prisoner's good-time credits where success of claims would necessarily invalidate the length of prisoner's sentence). Once a showing is made that success of a plaintiff's would necessarily imply the invalidity of a sentence or conviction, the claim is Heck-barred, and the plaintiff bears the burden of pleading and proving that the conviction or sentence has been overturned. See, e.g., Johnson v. N.Y.C. Police Dep't, 651 F. App'x 58, *60 (2d Cir. 2016) (affirming dismissal under F.R.C.P. 12(b)(6) based on Heck-bar).

In order to prevail on the false arrest/imprisonment claim, plaintiff must demonstrate that his detention between November 28, 2014 and April 15, 2015 was unlawful. See Escalera, 361 F.3d at 743 (requiring plaintiff to show "defendant intentionally confined him . . . without justification."). If successful, this claim would necessarily imply that plaintiff's time in custody between November 28, 2014 and April 15, 2015 was unlawful. However, the length of plaintiff's

current prison sentence was calculated based on plaintiff receiving time-served for the days he spent in custody between November 28, 2014 and April 15, 2015. See DOC Jail Time Certification, Exhibit 4, p. 2. The length of plaintiff's current sentence is predicated upon the lawfulness of the time plaintiff spent in DOC custody between November 28, 2014 and April 15, 2015. Thus, plaintiff's false arrest claim, if successful, would necessarily imply that his current sentence is invalid.

Given that plaintiff's false arrest/imprisonment claim would necessarily imply the invalidity of his sentence, plaintiff's false arrest/imprisonment claim is subject to the Heck-bar. Plaintiff makes no allegation that the length of plaintiff's sentence has been challenged, overturned, or otherwise called into question. See generally, Amended Complaint, Exhibit 1. The Amended Complaint contains no averments of fact from which the Court may plausibly infer that plaintiff's false arrest/imprisonment claim can overcome the Heck-bar. Plaintiff's false arrest/imprisonment claim fails as a matter of law, and defendants' motion to dismiss should be granted as to this claim.

### C.  Plaintiff Should be Judicially Estopped from Pursuing the False Arrest/Imprisonment Claim.

"Judicial estoppel is an equitable doctrine that prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding." Kuar v. Mawn, 08-CV-4401 (JFB) (ETB), 2011 U.S. Dist. LEXIS 22209, *42-*43 (E.D.N.Y. Mar. 4, 2011) (citing Rodal v. Anesthesia Grp. of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004)). "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." Kuar, 2011 U.S. Dist. LEXIS 22209 at *43 (citing New Hampshire v. Maine, 532 U.S. 742, 749 (2001)). The purpose of judicial estoppel is to "protect judicial integrity by avoiding the risk of inconsistent results in two proceedings." Perlleshi v. Cty. of

15

Westchester, 98-CV-6927 (CM), 2000 U.S. Dist. LEXIS 6054, *15 (S.D.N.Y. Apr. 24, 2000). "Typically, judicial estoppel will apply if: 1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 103 (2d Cir. 2010).

Plaintiff should be judicially estopped from alleging that his detention from November 28, 2014 to April 15, 2015 was unlawful because plaintiff accepted time-served for this detention period toward his current prison sentence.  As to the first requirement of judicial estoppel, plaintiff's current factual allegation that his detention between November 28, 2014 and April 15, 2015 was unlawful is "clearly inconsistent" with his position that he was entitled to time-served served for the same period in the earlier criminal proceeding. As to the second requirement, the criminal court and DOCCS adopted plaintiff's earlier position that he should receive time-served toward his five year prison sentence. See DOC Jail Time Certification, Exhibit 4. As to the third requirement, the criminal court and DOCCS' adoption of the sentence calculation benefited plaintiff by reducing the amount of time he would have to spend in prison serving his sentence under Docket No. 2014NY088542. See DOC Jail Time Certification, Exhibit 4. Plaintiff conceded the lawfulness of his detention between November 28, 2014 and April 15, 2015 when he accepted time served for that period to reduce his prison sentence. Plaintiff's current reversal of course denying the legitimacy of the time he spent in custody November 28, 2014 and April 15, 2015 in the pursuit of money damages would enable plaintiff to derive precisely the type of unfair advantage that judicial estoppel is designed to prevent.

## II.   PLAINTIFF FAILS TO STATE ANY ACTIONABLE UNREASONABLE SEARCH AND SEIZURE CLAIM ARISING FROM HIS DETENTION IS DOC CUSTODY.

Plaintiff advances two theories in support of his claim that he was unreasonably searched and seized while he was detained in DOC custody. First, plaintiff alleges that he was unreasonably seized "despite being entitled to release, Plaintiff was taken back into custody and transported to the Department of Correction on February 11, 2014.[3] Thus, Salem was re seized [sic] without legal justification." See Amended Complaint, Exhibit 1, ¶ 296. Second, plaintiff claims that he was unreasonably searched because he was "forced to submit to a strip search each time he was being prepared to go to and from court." Amended Complaint, ¶¶ 302, 226.  Plaintiff fails to state an actionable unreasonable search and seizure claim under either theory.

### A.   Plaintiff's Return to DOC Custody Following Criminal Court Proceedings Was Not an Unconstitutional Seizure.

Plaintiff's unreasonable seizure claim alleged in his Fourth Claim of the Amended Complaint is merely a restatement of his false arrest/imprisonment claim in his Third Claim of the Amended Complaint. See Amended Complaint, Exhibit 1, ¶¶ 295-308; c.f. ¶¶ 282-294. In fact, plaintiff specifically recites the elements of a false arrest/imprisonment claim in support of his unreasonable seizure claim alleged in his Fourth Claim. See Amended Complaint, Exhibit 1, ¶ 298. As set forth above in Point I, plaintiff fails to state an actionable false/arrest imprisonment claim arising under the Fourth Amendment because the pending criminal charges under Docket No. 2014NY088542 provided justification for his continued detention until bail was paid on April 15, 2015. As further set forth above, the criminal court's determination that there was no probable cause

---

[3] Plaintiff's reference in paragraph 296 to being remanded into DOC custody on the date of February 11, 2014 appears to be a typographical error. Plaintiff was remanded into DOC custody following a criminal court appearance on February 11, 2015. See Transcript of February 11, 2015 Proceeding, Exhibit G to Amended Complaint; DOC Prisoner Movement Log, Exhibit 2, p. 3.

to detain plaintiff on the charges under Docket No. 2014NY088543 beyond November 28, 2014 does not alter this conclusion.

Moreover, the alleged facts and exhibits to the Amended Complaint demonstrate that there *was* legal justification for plaintiff's return to DOC custody following the February 11, 2015 criminal court appearance. The transcript of the February 11, 2015 proceeding contains no indication plaintiff was supposed to be released from custody on that date. See Transcript of February 11, 2015 Proceeding, Exhibit G to Amended Complaint, p. 1. As of February 11, 2015, plaintiff's bail in Docket No. 2014NY088542 remained unpaid, and thus plaintiff was ineligible for release. See Amended Complaint, Exhibit 1, ¶¶ 192-193. The criminal court judge even stated on the record that, pending the next court proceeding, plaintiff was subject to the "same bail conditions." See Transcript of February 11, 2015 Proceeding, Exhibit G to Amended Complaint, p. 3:10-12. Thus, plaintiff fails to plausibly allege that his return to DOC custody following the February 11, 2015 criminal court appearance constituted an unreasonable seizure.

**B.      Plaintiff's Return to DOC Custody Following Criminal Court Proceedings Did Not Violate his Right to Due Process.**

To the extent plaintiff alleges that his return to DOC custody following the February 11, 2015 criminal court appearance violated his constitutional right to due process, such a claim fails as a matter of law. "It is settled law that prison transfers do not implicate due process protections unless some right or justifiable expectation exists in state law that the prisoner will not be transferred except upon misbehavior or some other specific event." Tyson v. Tilghman, 764 F. Supp. 251, 253 (Dist. Conn. 1991) (citing Montayne v. Haymes, 427 U.S. 236, 242 (1976)). If a prison transfer would not implicate a constitutional violation, then certainly neither would the transportation of a prisoner to a courthouse for pre-trial proceedings. Plaintiff provides no averments of facts or documentation showing that his transfer from DOC custody on Rikers Island to the criminal court implicated his right to due process. Thus, should the Court be inclined to

construe plaintiff's unreasonable seizure claim as an alleged violation of his due process rights, such a claim must fail and defendants' motion to dismiss should be granted as to this claim.

### C.    Plaintiff's Alleged Strip Searches Before and After Criminal Court Proceedings Were not Unconstitutional.

"Visual strip searches of pretrial detainees are permissible provided that the search is tied to 'legitimate security interests,' a determination that is 'peculiarly within the province and professional expertise of correctional officers.'" Walker v. Ponte, 14-CV-8507 (ER), 2016 U.S. Dist. LEXIS 110062, *10 (S.D.N.Y. Aug. 18, 2016) (quoting Florence v. Bd. of Chosen Freeholders, 566 U.S. 318, 328 (2012). "The Supreme Court has held that visual strip searches of all detainees at intake or after contact visits, with or without reasonable suspicion, are reasonably related to legitimate security concerns." Walker, 2016 U.S. Dist. LEXIS 110062 at *10 (dismissing DOC pre-trial detainee's unreasonable search and seizure claim regarding strip searches). In particular, "[c]ourts in this district ... find that strip searches of inmates upon departure and return from court appearance are constitutional given the interest in preventing contraband from being moved into or out of jail facilities." Smith v. City of N.Y., 14-CV-5934 (JCF), 2015 U.S. Dist. LEXIS 81337, at *5 (S.D.N.Y. June 17, 2015) (dismissing DOC pre-trial detainee's unreasonable search and seizure claim regarding  strip searches); Myers v. City of New York, 11-CV-8525 (PAE), 2012 U.S. Dist. LEXIS 123994, *27-*28 (S.D.N.Y. Aug. 29, 2012) (finding that strip searches prior to court appearances did not violate the Fourth Amendment because they were reasonably related to a legitimate security interest).

Plaintiff alleges that, each time he was transferred to and from criminal court, he was "strip searched and forced to take off all his clothes, bend over and spread his buttocks to allow correction officers to conduct a visual cavity search." See Amended Complaint, Exhibit 1, ¶ 300. Plaintiff alleges that he "was forced to submit to a strip search each time he was being prepared to go to and from court," and that these searches were conducted "without an individualized

19

reasonable suspicion that plaintiff was armed and dangerous ...” <u>See</u> Amended Complaint, Exhibit 1, ¶¶ 301-302. DOC's alleged policy of strip searching pre-trial detainees before and after court appearances without individualized reasonable suspicion has been repeatedly found constitutional. <u>See</u> <u>Smith v. City of N.Y.</u>, 14-CV-5934 (JCF), 2015 U.S. Dist. LEXIS 81337, at *5. Consistent with the line of cases cited above, the strip searches plaintiff allegedly underwent were justified by “the interest in preventing contraband from being moved into or out of jail facilities.” <u>Id.</u> Plaintiff fails to allege any facts from which the Court may plausibly infer that the strip searches alleged in the Amended Complaint violated plaintiff's right against unreasonable searches and seizures. Thus, plaintiff's alleged unreasonable search and seizure claim regarding strip searches is not actionable, and defendants' motion to dismiss this claim should be granted.

## III.   PLAINTIFF FAILS TO STATE ANY ACTIONABLE DUE PROCESS CLAIM ARISING FROM HIS DETENTION IS DOC CUSTODY.

### A.   Plaintiff Fails to State an Actionable Substantive Due Process Claim.

“As a general matter, [the U.S. Supreme Court] has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.” <u>Ying Li v. City of N.Y.</u>, 246 F. Supp. 3d 578, 633 (E.D.N.Y. 2017) (quoting <u>Albright v. Oliver</u>, 510 U.S. 266, 273 (1994)). “Where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process.” <u>Southerland v. City of N.Y.</u>, 680 F.3d 127, 142-143 (2d Cir. 2011); <u>United States v. Lanier</u>, 520 U.S. 259, 272 n.7, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997) (“[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.”). Allegations that a pre-trial detainee has been unlawfully detained following arraignment are analyzed in the false arrest/imprisonment framework

of the Fourth Amendment and not the substantive due process clause. See Russo v. City of Bridgeport, 479 F.3d 196 (2d Cir. 2007) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)).

Plaintiff's alleged substantive due process claim rests on the allegation that he was unlawfully detained beyond November 28, 2014, when plaintiff claims he was entitled to be released. See Amended Complaint, Exhibit 1, ¶¶ 327-328. Plaintiff's allegations regarding substantive due process merely restate the false arrest/imprisonment claim set forth in his Third Claim of the Amended Complaint. See Amended Complaint, Exhibit 1, ¶¶ 282-294. In light of the above case law, the Fourth Amendment provides the appropriate framework to analyze plaintiff's allegations regarding substantive due process because it provides an explicit textual source of protection against false arrest/imprisonment. As set forth above in Section I, the alleged facts and related documents establish that plaintiff was validly detained on the charges under Docket No. 2014NY088542. Thus, plaintiff's substantive due process claim alleging unlawful detention fails as a matter of law, and defendants' motion to dismiss should be granted as to this claim.

**B.      Plaintiff Fails to State an Actionable Procedural Due Process Claim.**

"To award damages under 42 U.S.C. § 1983 for an alleged violation of procedural due process, a court must find that, as the result of conduct performed under color of state law, the plaintiff was deprived of life, liberty, or property without due process of law." Schultz v. Egan, 103 F. App'x 437, 440 (2d Cir. 2004). "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." Hayes v. Annucci, 14-CV-8845 (NSR), 2016 U.S. Dist. LEXIS 57228, *10-*11 (S.D.N.Y. Apr. 28, 2016) (dismissing procedural due process claim alleged by parolee held beyond maximum release date). Courts routinely hold that a correctional official's conduct of detaining an inmate or detainee beyond their legally-mandated release dates constitutes a "random and unauthorized" act for purposes of procedural due

process. See, e.g., Moore v. Newton, 14-CV-6473 (MKB) (CLP), 2016 U.S. Dist. LEXIS 121839, *58-*59 (E.D.N.Y. Sep. 7, 2016) (citing Hayes, 2016 U.S. Dist. LEXIS 57228 at *12.

The availability of an adequate post-deprivation remedy will defeat a procedural due process claim brought pursuant to Section 1983. See Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d 877, 881 (2d Cir. 1996). "Where a deprivation at the hands of a government actor is 'random and unauthorized,' hence rendering it impossible for the government to provide a pre-deprivation hearing, due process requires only a post-deprivation proceeding." New Page at 63 Main, LLC v. The Inc. Vill. of Sag Harbor, 15-CV-2433 (ADS) (AKT), 2016 U.S. Dist. LEXIS 189158, *49 (E.D.N.Y. Mar. 19, 2016). The Second Circuit has held that the availability of an Article 78 or habeas proceeding under New York State law constitutes a meaningful post-deprivation remedy for individuals detained beyond their legally-mandated release date. See Schultz v. Egan, 103 F. App'x. 437, 440 (2d Cir. 2004); Grillo v. New York City Transit Auth., 291 F.3d 231, 234 (2d Cir. 2002) (describing an Article 78 proceeding as "a perfectly adequate postdeprivation remedy."); N.Y. Civ. Prac. L. & R. 7801, et seq. (authorizing proceedings in state court against state or local bodies and officers).

Plaintiff alleges that DOC has enacted extensive procedures to ensure that criminal court orders regarding the detention status of inmates are processed and satisfied in a timely manner. See Amended Complaint, Exhibit 1, ¶¶ 92-173. Plaintiff further alleges that, in violation of these established procedures, DOC officials "deliberately failed to followed [sic] the procedures set forth herein which caused Salem to be held in custody beyond his Court ordered release date on November 28, 2014, and again on January 21, 2015." See Amended Complaint, Exhibit 1, ¶ 174. DOC officials' alleged deviation from established procedures constitutes "a random and unauthorized" act for procedural due process purposes. See Moore, 2016 U.S. Dist. LEXIS 121839,

*58-*59. Thus, the availability of an adequate post-deprivation remedy will defeat plaintiff's alleged procedural due process claim.

The Amended Complaint is devoid of any allegation that Article 78 and habeas proceedings were unavailable to plaintiff while he was detained between November 28, 2014 and April 15, 2015. See generally, Amended Complaint, Exhibit 1. Even assuming the truth of plaintiff's allegation that he was unlawfully detained as of November 28, 2014, an Article 78 or habeas proceeding would have provided plaintiff with a post-deprivation means to challenge the basis of his continued detention. Plaintiff fails to even allege the unavailability of an Article 78 or habeas proceeding and therefore fails to satisfy his burden of pleading that there were no adequate post-deprivation remedies available.  Thus, plaintiff fails to plausibly allege that his right to procedural due process was violated, and defendants' motion to dismiss should be granted as to this claim.

## IV.   PLAINTIFF FAILS TO STATE ANY ACTIONABLE MUNICIPAL LIABILITY CLAIM UNDER SECTION 1983 ARISING FROM HIS DETENTION IN DOC CUSTODY.

There can be no municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978) where the plaintiff fails to allege a valid underlying constitutional deprivation. See Johnson v. City of N.Y., 551 F. App'x 14, 15 (2d Cir. 2014) ("Because [plaintiff] has not alleged a valid underlying constitutional deprivation, his claim against New York City pursuant to [Monell] must also fail.") As set forth above, plaintiff fails to plausibly allege that he was deprived of his rights against false arrest/imprisonment, unreasonable search and seizure, or substantive and procedural due process. This alone is fatal to his alleged Monell claim.

Additionally, in order to state a Monell claim, a plaintiff must allege that the municipality itself caused the alleged constitutional deprivation. City of Canton v. Harris, 489 U.S. 378, 385 (1989). To prevail, "[t]he plaintiff must first prove the existence of a municipal policy or

23

custom in order to show that the municipality took some action that caused his injuries . . . Second, the plaintiff must establish a casual connection – an 'affirmative link' – between the policy and deprivation of his constitutional rights." <u>Vippolis v. Village of Haverstraw</u>, 768 F.2d 40, 44 (2d Cir. 1985). In regard to the first requirement, a plaintiff may assert the existence of a municipal policy in one of four ways:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by the government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policy makers to train or supervise subordinates.

<u>Harper v. City of N.Y.</u>, 11-CV-4333 (CM), 2013 U.S. Dist. LEXIS 14951, *9-10 (S.D.N.Y. Jan. 30, 2013).

"A failure to act, train, or supervise can constitute a municipal custom 'only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need.'" <u>Tieman v. City of Newburgh</u>, 13-CV-4178 (KMK), 2015 U.S. Dist. LEXIS 38703, *15 (S.D.N.Y. Mar. 26, 2015) (quoting <u>Reynolds v. Giuliani</u>, 506 F.3d 183, 192 (2d Cir. 2007)). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." <u>Bryan Cty.</u>, 520 U.S., at 410, 117 S. Ct. 1382, 137 L. Ed. 2d 626. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." <u>Connick</u>, 563 U.S. 51 at 62.

Before a municipality can be held liable on a failure to train theory, plaintiff must satisfy a three-prong test to demonstrate that the City's alleged failure to train or supervise amounted to "deliberate indifference." <u>Jenkins v. City of New York</u>, 478 F.3d 76, 94 (2d Cir. 2007). A plaintiff must establish that there was "[a] pattern of *similar* constitutional violations by untrained

employees" in order to demonstrate that "city policymakers are on actual or constructive notice that a *particular* omission in their training program causes city employees to violate citizens' constitutional rights." Connick, 563 U.S. at 62 (emphasis added).

Plaintiff does not allege that his constitutional rights were violated pursuant to a formal municipal policy or an express action by a municipal official at the policy-making level. See Amended Complaint, Exhibit 1, ¶¶ 234-235. Plaintiff alleges Monell liability on the theory that (i) DOC was on notice of a widespread unconstitutional practice of failing to produce detainees in criminal court, release detainees pursuant to criminal court orders, and timely process bail payments, see Amended Complaint, Exhibit 1, ¶¶ 229-265; and (ii) DOC failed to train, supervise, or discipline DOC employees despite an obvious need for additional training and supervision. See Amended Complaint, Exhibit 1, ¶¶ 266-281. The U.S. Supreme Court clarified in Connick v. Thompson, 563 U.S. 51, 62 (2011), that a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of a failure to train."

The Amended Complaint provides insufficient factual support for plaintiff's conclusory allegation his allegedly unlawful detention was part of a widespread pattern of DOC failing to produce inmates for criminal court appearances. Plaintiff argues that the New York City Council's introduction of proposed Legislation No. 1260 demonstrates that City Defendants were on notice of a widespread pattern or practice that caused his rights to be violated. See Amended Complaint, Exhibit 1, ¶¶ 239-240. However, there is no indication, either in the Amended Complaint or the legislative history of proposed Legislation No. 1260, that this legislation was proposed due to a widespread DOC practice of failing to produce detainees at court appearances. See New York City

25

Council Website, Proposed Legislation No. 1260.[4]

"A custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." Donohue v. Manetti, 15-CV-636 (JFB) (GRB), 2016 U.S. Dist. LEXIS 22565, *18 (E.D.N.Y. Feb. 24, 2016); Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation."). Plaintiff has provided no examples of other instances where DOC's alleged failure to produce a detainee for a criminal court appearance resulted in a deprivation of constitutional rights, let alone a widespread practice sufficient to alert DOC officials of the need for additional procedures or training.

Moreover, plaintiff's DOC Prisoner Movement Log shows that DOC transported plaintiff from Rikers Island to the criminal court on each date he was scheduled for an appearance. See DOC Prisoner Movement Log, annexed to Noble Decl. as Exhibit 2. The criminal courts are administered by the Office of Court Administration (hereinafter "OCA"), a New York State agency, not DOC or any other City agency. See Harris v. Queens Cty. Dist. Atty's. Office, 08-CV-1703 (CBA)(LB), 2009 U.S. Dist. LEXIS 105912, *9 (E.D.N.Y. Sep. 15, 2009) (citing Duboys v. Bomba, 01-Civ-5448, 2002 U.S. Dist. LEXIS 1540, 2002 WL 146843 at *1 (S.D.N.Y. Jan. 31, 2002)). The alleged failure of New York State courthouse personnel to produce plaintiff inside the courtroom once DOC transported plaintiff to the criminal court is not attributable to City officials. Thus, even if plaintiff demonstrated a widespread practice of DOC failing to produce detainees for

---

[4]   The text and details of proposed Legislation No. 1260 are available at: http://legistar.council.nyc.gov/LegislationDetail.aspx?ID=2834700&GUID=B36D13E6-0E1D-4DE8-B6B3-E72AF370F1FA.

court appearances, it would not have the requisite causal connection to the failure of OCA officials to bring plaintiff into the courtroom.

Plaintiff cites a 2017 New York Daily News article that he claims demonstrates a widespread practice of DOC unconstitutionally detaining criminal defendants beyond their legally-mandated release date. See Amended Complaint, Exhibit 1, ¶ 261. The article states that five DOC detainees were held beyond their release dates "due to technical sentencing errors." See "Jail Staff Error Forces Bronx Man to Spend More Time Behind Bars," *New York Daily News Website*, November 6, 2017.[5] There is no indication, either in the Amended Complaint or the cited article, that these five detainees were wrongly detained due to an error by DOC officials. In fact, the article specifically states that, "the primary culprit is New York's arcane sentencing laws that have different rules for violent crimes, drug offenses, and burglary and robbery cases." Id. The only information alleged regarding the cause of these five instances of wrongful detention specifically attributes them to causes other than DOC's policies and practices regarding production of detainees to court, implementation of court orders, and processing of bail payments. Thus, the wrongful detentions referenced in the Daily News article are not sufficiently similar to plaintiff's alleged constitutional violation to establish the pattern required for deliberate indifference under Connick.

Moreover, plaintiff acknowledges in the Amended Complaint that DOC "handles over 100,000 admissions per year, and manages an average daily population of approximately 14,000 inmates." See Amended Complaint, Exhibit 1, ¶ 16. Even assuming five individuals were unconstitutionally detained in a manner similar to plaintiff, it would be insufficient to plausibly establish the existence of a "widespread" pattern or practice demonstrating deliberate indifference.

---

[5] Available at: http://www.nydailynews.com/new-york/jail-staff-error-forces-bronx-man-spend-time-behind-bars-article-1.3613730.

Thus, plaintiff provides insufficient facts from which the Court may plausibly infer <u>Monell</u> liability based on the Daily News article.

   Plaintiff's citation to the unsubstantiated allegations in another pending Southern District matter, <u>Lynch v. City of New York</u>, 17-CV-7577 (WHP), is insufficient to demonstrate the existence of a widespread unconstitutional pattern or practice. <u>See</u> Amended Complaint, Exhibit 1, ¶ 195. As an initial matter, courts generally hold that citations to unproven allegations in other civil lawsuits are insufficient to demonstrate a pattern or practice of constitutional violations for <u>Monell</u> liability. <u>See</u> <u>Collins v. City of N.Y.</u>, 923 F. Supp. 2d 462, 479 (E.D.N.Y. 2013) (rejecting <u>Monell</u> claim based on civil cases that were either dissimilar to plaintiff's allegations, post-dated the plaintiff's alleged incident, or resulted in no judicial finding of unconstitutional conduct); <u>Tieman v. City of Newburgh</u>, 13-CV-4178 (KMK), 2015 U.S. Dist. LEXIS 38703, *48-*49 (S.D.N.Y. Mar. 26, 2015) (collecting cases). Citations to pending civil lawsuits are tantamount to unsubstantiated accusations, which are wholly insufficient to support an inference of a widespread pattern or practice of unconstitutional conduct. <u>See</u> <u>Rodriguez v. City of New York</u>, 11-CV-0515 (ALC) (GWG), ECF No. 44, p. 10 (citing <u>Marcel v. City of New York</u>, 88-CV-7017 (LLS), 1990 WL 47689, at *9 (S.D.N.Y. Apr. 11, 1990)) (finding unsubstantiated complaints do not establish a policy or custom for municipal liability).

   Plaintiff does not allege any of the allegations in <u>Lynch</u> have been substantiated or found credible. Moreover, the constitutional violations alleged in <u>Lynch</u> are not sufficiently similar to plaintiff's allegations or widespread to establish <u>Monell</u> liability here. In <u>Lynch</u>, the three plaintiffs had already paid their bail, and were held in DOC custody for an additional 22 hours, 18 hours, and 8 hours. <u>See</u> <u>Lynch</u>, 17-CV-7577 (WHP), ECF No. 1, ¶¶ 69-81, ¶¶ 108-113, ¶¶ 85-101. Here, by contrast, plaintiff's bail was paid at 12:00 p.m. on April 15, 2015, and plaintiff was released from custody at 4:11 p.m. on the same date. <u>See</u> Amended Complaint, Exhibit 1, ¶ 191. It

is doubtful whether the alleged over-detentions in <u>Lynch</u> even constitute constitutional violations, and, assuming they are, three instances of unconstitutional conduct are hardly sufficient to establish a "widespread" pattern given the 100,000 detainee admissions to DOC custody per year. Finally, two of the plaintiffs in <u>Lynch</u> were allegedly overdetained in 2017, and the other in 2015. <u>See</u> <u>Lynch</u>, 17-CV-7577 (WHP), ECF No. 1, ¶ 69, ¶ 85, ¶ 108. At the time of plaintiff's alleged overdetention, the <u>Lynch</u> lawsuit had not been filed – the alleged constitutional violations had not even occurred yet – and thus could not constitute a pattern sufficient to put the City on notice at the time of plaintiff's alleged incident. <u>See</u> <u>Connick</u>, 563 U.S. at 63 n.7 ("[C]ontemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice to the city and the opportunity to conform to constitutional dictates...").

Plaintiff cites a 2015 report by the Center for Court Innovation ("CCI Report") that identifies a number of administrative difficulties that prisoners encounter making bail payments. <u>See</u> Amended Complaint, Exhibit 1, ¶ 199. As an initial matter, the CCI Report was not published until December of 2015, nearly 8 months after plaintiff had already been released from his allegedly unlawful detention. <u>See</u> CCI Report, Exhibit I to Amended Complaint, p. 2. Thus, the CCI Report could not have provided the notice to the City required under <u>Connick</u> to establish liability for plaintiff's alleged injury. Further, the CCI Report identifies "inefficiencies" in the bail system employed by the New York State court system and offers "recommendations that might lead to better outcomes." <u>See</u> CCI Report, Exhibit I to Amended Complaint, p. 6. Nowhere in the CCI Report does it reach the conclusion that there is a widespread problem of a constitutional magnitude with the bail system. There is no indication that the aspects of the bail system controlled by DOC are so deficient that they demonstrate deliberate indifference to constitutional rights. Moreover, plaintiff does not allege that he was unable to make a bail payment due to an administrative difficulty– plaintiff explicitly alleges that his criminal defense attorneys breached their ethical and

legal responsibility to inform that his bail had been set at $1.00. <u>See</u> Amended Complaint, Exhibit 1, ¶ 199. The alleged cause of plaintiff's continued detention has no connection to the purported deficiencies in the bail system identified in the CCI Report, and therefore plaintiff fails to allege the "affirmative link" between the CCI Report and his alleged injury needed for <u>Monell</u> liability.

Plaintiff's citation to the Department of Investigation's 2015 report on DOC's hiring practices (hereinafter "DOI Report") is even further attenuated from the allegations in the Amended Complaint. <u>See</u> DOI Report, Exhibit J to Amended Complaint.  The DOI Report identifies a number of deficiencies in DOC's hiring processes, which it claims result in the employment of underqualified correction officers.  <u>See</u> Amended Complaint, Exhibit 1, ¶ 207. However, plaintiff fails to allege any causal connection between the generalized criticisms of DOC's hiring practices and his allegedly unlawful detention between November 28, 2014 and April 15, 2015. The DOI Report does not posit any connection between the purported defects in DOC's hiring practices and the policy areas that plaintiff claims caused his unlawful detention, namely, DOC's production of detainees in court, DOC's implementation of court orders, and DOC's processing of bail payments. The DOI Report does not contain sufficient factual material from which the Court may plausibly infer a widespread pattern of prior, similar constitutional violations exhibiting deliberate indifference to plaintiff's rights. Plaintiff's alleged municipal liability claim is not actionable, and defendants' motion to dismiss should be granted as to this claim.

## V.   PLAINTIFF FAILS TO STATE ANY ACTIONABLE *RESPONDEAT SUPERIOR* CLAIM ARISING FROM HIS DETENTION IN DOC CUSTODY.

Municipal governments, "may be sued only for unconstitutional or illegal policies, not for the illegal acts of their employees." <u>Carthew v. County of Suffolk</u>, 709 F. Supp. 2d 188, 195 (E.D.N.Y. 2010). It is well-established that there is no *respondeat superior* liability under § 1983. <u>See</u> <u>Reynolds v. Giuliani</u>, 506 F.3d 183, 190-191 (2d Cir. 2007). Thus, plaintiff's purported *respondeat superior* claim fails, and defendants' motion should be granted at to this claim.

## CONCLUSION

For the foregoing reasons, defendants City of New York, and Commissioner Ponte respectfully request that the Amended Complaint be dismissed with prejudice in its entirety, that the relief requested therein be denied, and that they be awarded such other and further relief as the Court deems just and proper.

Dated: New York, New York
       January 23, 2018

                              ZACHARY W. CARTER
                              Corporation Counsel for the  City of New York
                              *Attorney for Defendants City and Ponte*
                              100 Church Street, Room 3-168
                              New York, New York  10007
                              (212) 356-2357

                              By:    */s/*
                              _____
                                  Alexander Noble
                                  Assistant Corporation Counsel
                                  Special Federal Litigation Division

           **VIA ECF & FIRST CLASS MAIL**
TO:      Welton K. Wisham, Esq.
         *Counsel for Plaintiff*

31