**Case No. 17 CV 4799(JGK)**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

AITABDELLAH SALEM

        **Plaintiff,**


   -   against –

CITY OF NEW YORK, JOSEPH PONTE, COMMISSIONER
OF THE NEW YORK CITY DEPARTMENT OF CORRECTION,
IN HIS INDIVIDUAL AND OFFICIAL CAPACITY,
JOHN DOE NO.1, WARDEN, NEW YORK CITY DEPARTMENT
OF CORRECTION, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY,
JOHN DOE NO. 2, ASSISTANT WARDEN, OF THE NEW YORK CITY
DEPARTMENT OF CORRECTION, IN HIS INDIVIDUAL AND OFFICIAL
CAPACITY, JOHN DOE NO.3, TOUR COMMANDER NEW YORK CITY
DEPARTMENT OF CORRECTION, AMKC, RIKERS ISLAND,
IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, AND
JOHN DOE NO. 4, CAPTAIN, NEW YORK CITY DEPARTMENT
OF CORRECTION, AMKC, RIKERS ISLAND, IN HIS INDIVIDUAL
AND OFFICIAL CAPACITY.

          Defendants,
_____

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO F. R. C. P. 12. (b)(6)**
_____




**WELTON K. WISHAM**
**Attorney for Plaintiff**

.

The Law Offices of Welton K. Wisham
43 West 43rd Street, Suite 95
New York, New York 10036-7424
(212) - 709-8183 Office
(718) - 678-8062  Fax

i

**TABLE OF CONTENTS**

Page No.

INTRODUCTION …………………………………………………………….. 1- 2

STATEMENT OF FACTS …...……………………………………… …………… 2

STANDARDS OF REVIEW FOR MOTION TO DISMISS PURSUANT TO
F. R. C. P 12 (b) (6) ……………………………… …………………………….. 3, 4, 5

ARGUMENT …………………………………………………………………… . 5

I.    PLAINTIFF HAS ADEQUATELY PLED CLAIMS AGAINST THE DEFENDANTS FOR
VIOLATING HIS RIGHTS GUARANTEED TO HIM UNDER THE DUE PROCESS CLAUSE OF
THE OF THE FOURTEENTH AMENDMENT TO THE CONSITUTION OF THE UNITED STATES
BASED UPON  DEFENDANTS DELIBERATE INDIFFERENCE TO PLAINTIFF'S RIGHT TO BE
FREE FROM UNLAWFUL INCARCERATION OF ONE HUNDRED THIRTY EIGHT DAYS
BEYOND HIS COURT ORDERED RELEASE DATE.

    1. Substantive due process………………………………………………… 5- 7
    2. Procedural Due Process ……………………………………………… 8-18

II.  PLAINTIFF HAS ADEQUATELY PLED CLAIMS AGAINST THE CITY OF NEW YORK
BASED ON MUNICIPAL LIABILITY UNDER 42 U.S.C SECTION 1983, FOR FAILURE TO
TRAIN, SUPERVISE OR DISCIPLINE ITS MUNICIPAL EMPLOYEES………………… 19-23

III.  PLAINTIFF WAS SUBJECTED TO UNLAWFUL POST RELEASE STRIP SEARCHES AT RIKERS
ISLAND…………………………………………… ………………………………… 23-26

III.  PLAINTIFF WAS FALSELY IMPRISONED BY THE NEW YORK CITY DEPARTMENT OF
CORRECTION FOR ITS FAILURE TO RELEASE PLAINTIFF FROM CUSTODY UPON COURT
ORDER ON NOVEMBER 28, 2014, AND AGAIN ON JANUARY 21, 2015, WHEN THE DOC
FAILED TO PRODUCE SALEM TO COURT IN CIVILIAN CLOTHES.
    .. ...............……………………………………………………………………… 26- 27

IV.  PLAINTIFF IS NOT JUDICIALLY ESTOPPED FROM PURSUING HIS FALSE
ARREST/FALSE IMPRISONMENT CLAIM…………………………………………….. 27- 29.

V. PLAINTIFF'S RETURN TO RIKERS ISLAND ON JANAURY 21, 2015, AND ON FEBRUARY
11, 2015, WAS AN UNLAWFUL SEIZURE UNDER THE FOURTH AMENDMENT…….30-31

VI.  PLAINTIFF'S FALSE ARREST, FALSE IMPRISONMENT CLAIM IS NOT BARRED UNDER
HECK V. HUMPHREY……………………………………………………………… 32

CONCLUSION…………………………………………………………………..33

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page**

**Allen v. McCurry**,
449 U.S. 90, 102, 101 S. Ct. 411, 419, 66 L.Ed.2d 308 (1980)…………………………………  28

**Anthony v. City of N.Y.,**
339 F.3d 129, 142–43 (2d Cir.2003)………………………………………………………..10

**Ashcroft v. Iqbal** ,
556 U.S 662 (2009),……………………………………………………………………3, 4, 33

**Barnes v. District of Columbia**,
793, F. Supp 2d 260, 275 (.D.D.C. 2011)……………………………………… 8, 9, 24, 25, 26.

**Bell v. Wolfish**,
441 U.S. 520 (1979)………………………………………………………………………  8, 25

**Bell Atlantic Corporation v. Twombly**,
 55 U.S. 544 (2007).  ……………………………………………………………………3, 4, 5, 33

**Benjamin v. Fraser**,
343 E.3d, 49 (2nd Cir. 2003)………………………………………………………  2

**Berry v. Baca**,
379 F.3d 764, 773 (9th Cir. 2004) ……………………………………………………..  9

**B.D. v. DeBuono** ,
130 F. Supp. 2d 401, 432-33 (S.D.N.Y. 2000)……………………………………………  8

**Bolmer v. Oliveira**,
594, F. 3d 134, 142(2nd Cir. 2010) ……………………………………………………  7

**Brandon v. Interfirst Corp.,**
558 F2d. 266, 268 (5th Cir. 1988) ……………………………………………………    28

**Bruker v. City of N.Y**.,
92 F.Supp.2d 257, 266–67 (S.D.N.Y.2000)……………………………………………… 11

**Burtnieks v. City of New York**,
716 F.2d 982, 988 (2nd Cir. 1983)……………………………………………………..  18

**Bynum v. District of Columbia**,
257 F. Supp 2d 1(D.D.C 20020 ……………………………………………………………  23

**Cannon v. Macon Cnty.**,
1 F.3d,1558, 1563 (11th Cir. 1993)……………………………………………… …. 8

**Cnty. Of Sacramento v. Lewis,**
523 U.S. 833, 845 (1998)………………………………………………………….. 7

**Conley v. Gibson,**
355 U.S. 41 (1957), ………………………………………………… …  3, 4, 33

**Conn v. Gabbert**,
526 U.S. 286, 293, 119 S. Ct. 1292, 143 L.Ed.2d 399 (1999)…………………………… 11

**Cox v. Warwick Valley Cent. Sch. Dist**.
654, F.3d 267, 275 (2nd Cir. 2011) …………………………………………………..7

**Daniels v. Williams**,
474 U.S. 327, 331, (1986)…………………………………………………. ……..5

**Davis v. Hall**,
375 F.3d 703, 713 (8th Cir. 2003)…………………………………………….... 9

**DeRosa v. Nat'l Envelope Corp.,**
595 F. 3d 99, 103 (2nd Cir. 2010.) ………………………………………………27, 28

**DiBlasio v. Novello**,
344 F.3d 292, , 302-03, (2nd Cir. 20030 ……………………………………… 18

**Enesco Corp. v. Price/Costco, Inc.,**
146 F. 3d 1083, 1085 (9th Cir.1998)……………………………………           4

**Floyd v. City of Kenner**,
08-30637 (FED5)…………………………………………………………           4

**Fowler v. UPMC Shadyside**,
 578 F.3d 203 (3rd Cir. 2009) ……………………………………………….   4

**Foucha v. Louisiana**,
504 U.S. 71, 80 (1992)…………………………………………………… 8

**Gilligan v. Jamico Dev. Corp,**
 108  F.3d 246, 249 (9th Cir. 1997), …………………………………………   4

**Gossage v. Roberts**,
904 S.W.2d 246, 248 (Ky.Ct.App.1995) …………………………………………… 28

**Grullon v. City of New Haven**,
**720 F**.3d 133,. 139 (2nd Cir. 2013) ……………………………………   14

**Heck v. Humphrey**,
512 U.S. 477, 486-87 (1994) ……………………………………………………………… 32

**Hellenic Am. Neighborhood Action Comm. v. City of New York**,
101 F.3d 877, 880 (2nd Cir. 1996)…………………………………………………….  18

**Hines v. Albany Police Dep't,**
520 F. App'x 5, 7 (2nd Cir. 2013) ……………………………………………………..  19

**Horvath v. Westport Library Ass'n**,
362 F. 3d. 147, 151 (2nd Cir. 2004). ……………………………….………………………….  5

**Hudson v. Palmer,**
468 U.S 517, 534 (1984)……………………………………………………………… 12, 18

**Hurtado v. California**,
110 U.S. 516, 527 (1884)……………………………………………………………….. 5

**In Re Coastal Plains, Inc**.
179 F.3d 197, 205 (5th Cir. 1999) ……………………………………………………..   28

**Jones v. Town of E. Haven**,
691 F. 3d 72, 80 (2nd Cir, 2012). ……………………………………………… ……19

**Kaluczky  v. City of White Plains**,
57 F.3d 202, 211(2nd Cir. 1995) ……………………………………………….. …. 7

**Kerry v. Din,**
135 S. Ct. 2128 (2015)……………………………………………………….. …6

**Logan v. Shealy**,
660 F. 2d 1007, 1013 (4th Cir. 1981) …………………………………………… ……24

**New Hampshire v. Maine**,
532, U.S 742, 749 (2001). ………………………………………………… ….. 28, 29

**Matusick v. Erie Cnty. Water Auth.,**
757 F 3d 31, 62 (2nd Cir. 2014) …………………………………………………..… 19

**McClary v. O'Hare,**
786 F 2d 83, 88 (2nd Cir. 1986)……………………………………………………..5

**Monell v. Dep't of Soc. Servs, of N.Y.** ,
436 U.S. 658, 690-91 (1978)……………………………………………………….... 19

**Moore v. Newton,**
14 CV 6473, 2016 U. S. Dist. Lexis 121839 58-59, (E.D.N.Y. Sept 7, 2016)…………. 11, 12, 13, 14, 18

**Moran v. Cnty. of Suffolk**,
No 11 Civ. 3704, 2015 WL 1321685 (E.D.N.Y. Mar 24, 2015)……………………………….. …. 19

**Morrissey v. Brewer**,
408 U.S. 471(1972). …………………………………………………………………… 8

**Norton v. Town of Islip**,
97 F. Supp. 3d 241, 266 (E.D.N.Y. 2015)……………………………………………… 8

**Parker v. City of Long Beach**,
563 App'x 39 (2nd Cir. 2014) …………………………………………………….. ….19

**Parratt v. Taylor**,
451, U.S. 527 541 (1981)…………………………………………………… ….. 12

**Phillips v. County of Allegheny**,
515 F. 3d at 234 ( 3rd Cir. 2009) ……………………………………… ….. 5, 33

**Plair v. City of New York**,
789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011). ……………………………… …….. 19

**Schultea v. Wood**,
47 F.3d 1427, 1433-34 (5th Cir. 1995) ……………………………………………… 4

**Schnitter v, City of Rochester**,
556 F. App'x 5, 8 (2nd Cir. 2014)…………………………………………………… 19

**Schultz v. Egan**,
103 F. App'x 437 440 (2nd Cir. 2004)…………………………………… …….. 12

**Sosa v. Coleman**,
 F.2d 991, 993 (5th Cir. 1981)…………………………………………………… 4

**Southerland v. City of N.Y**,
680 F. 3d 127, 142-143 (2nd Cir. 2011)………………………………… 5, 9, 10, 11

**Warda v. Comm'r**,
15 F.3d 533, 538, (6th Cir. 1994). …………………………………………… 29

**Ying Li v. City of N.Y**,
246 F. Supp. 3d 578, (E.D.N.Y. 2017) …………………………………… 5, 19

## Statutes

U.S Const. amend. IV…………………………………………………2, 5, 6, 9, 10, 11, 13, 14, 18, 23

U.S. Const. amend. XIV ……………………………………………2, 5, 6, 9, 10,11,13,14,18 ,23

F. R. C. P 12 (b) (6)…………………………………………………………… 3, 4, 19

New York Penal Law Section 180.80…………………………………………… 1, 24, 31

## <u>INTRODUCTION</u>

Aitabdellah Salem (hereinafter "Plaintiff ") was arrested on November 21, 2014.  Plaintiff was charged with assault on a police officer during the course of his arrest when, in his attempt to flee, he knocked down a police officer.   Plaintiff was also charged with petit larceny.  Bail of $ 25,000, was set during Plaintiff's arraignment on November 22, 2014, under docket number 2014 NY 088542.  Plaintiff also had a companion case under docket number 2014 NY088543, for which bail was also set in the amount of $ 25,000. Mr. Salem was represented by the Legal Aid Society City of New York, agent of the City of New York and was remanded into the custody of the New York City Department of Correction ,(hereinafter, "DOC"), Rikers Island, as  pre trail detainee.

On November 26, 2014, the criminal court reduced bail of $25,000, to $1, under docket number 2014NY088542.  Docket number 2014 NY088543, was adjourned to November 28, 2014, for grand jury action per penal law section 180.80.  Plaintiff was not present in court on November 26, 2014.     On November 28, 2014, Plaintiff was ordered released from custody on his own recognizance under docket number **2014NY088543**, pursuant to P.L.180.80 bail of $25,000 **was no longer pending** under this docket. Plaintiff's not present in court and again was not aware that his bail which on November 22, 2014, in the amount of $ 50,000, had now been reduced to $ 1.00.   None of the municipal Defendants notified Plaintiff that he was free to leave Rikers Island because his bail status on November 28, 2014 had been reduced to one dollar.  On January of 2015, Salem's former criminal attorney, Stephen Pokart, applied to the court to have bail set in the amount of $ 1.00 on docket number 2014NY088543.   On January 15, 2015, **Judge Mennin ordered the  Commissioner of the Department of Correction and the Warden at the Anna M. Kross correctional facility**, a DOC facility at Rikers Island, to produce Plaintiff in **civilian clothes on January 21, 2015**.  The order **was received by the Anna M. Kross facility at Rikers Island**. (Am. Compl, **Exhibit E").** Plaintiff was not produced in court in civilian

1

clothes, in fact Plaintiff was brought to sit in the court's holding cell, in prison garbs and upon his return to Rikers Island, he was stripped searched and placed in his cell where he remained until his release, on April 15, 2015, when a dollar bail was paid. There were no holds or warrants which precluded Mr. Salem's release on November 28, 2015, or on January 21, 2015 that would have precluded Salem's release.   Mr. Salem kept begging the correction officers in court and on Rikers Island every day, including the captains, wardens, assistant wardens and anyone that passed his cell as to the status of his case.   They all ignored the Plaintiff's pleads.   Plaintiff's next appearance in criminal court was on February 11, 2015; again, he was not produced in open court. Again he was held in the court's jail cell. His case under docket number 2014NY088542 was adjourned to May 28, 2015.  Same bail conditions applied,$ 1.00. The correction officers of the DOC failed to inform Salem he should have been released on January 21, 2015 upon court order. Salem was finally released from custody on April 15, 2015, after spending one hundred thirty eight days inside Rikers Island when some unknown individual paid $1.00 bail.

The DOC and its municipal employees defied court orders on November 28, 2014, and again on January 15, 2015, to release Plaintiff from incarceration. Plaintiff filed a civil rights complaint under 42 U.S.C. Section 1983 against the City of New York, DOC Commissioner Joseph Ponte, The Warden of the Anna M. Kross facility whose name is presently unknown, Tour Commander of the AMKC and other defendants who knew or should have known that the City of New York through the DOC had deprived the Plaintiff of his constitutional rights by holding him beyond his court ordered released dates on November 28, 2014, and on January 21, 2015.  This case implicates the Due Process Clause of the Fourteenth Amendment because it involves a state pretrial detainee who is seeking to vindicate his constitutional rights. **Benjamin v. Fraser**, 343 E.3d, 49 (2nd Cir. 2003)

2

## STATEMENT OF FACTS

Plaintiff respectfully refers the Court to Plaintiff Statement of Facts stated in his Amended Complaint ("**Am. Compl**.") annexed hereto as Exhibit 1, ¶¶ 46- 228. Please also refer to Plaintiff's **Exhibits A-J,** attached to his amended complaint and incorporated herein.

### STANDARD OF REVIEW FOR MOTION TO DISMISS PURSUANT TO F. R. C. P 12 (b) (6)

Rule 12 (b)(6) provides that parties may assert by motion a defense based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  The test for dismissing a complaint has been limited to those actions whereby the Plaintiff can prove not set of facts in support of his claim for which relief can be provided.

**In Conley v. Gibson,** 355 U.S. 41 (1957), the Supreme Court recognized the interplay between Fed. R. Civ. P. (8) and (12)(b)(6), by holding that "[T]he accepted rule [is] that **a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt** that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S at 45-46. (Emphasis added).  The Court addressed questions related to the no set of facts test in **Bell Atlantic Corporation v. Twombly**, 55 U.S. 544 (2007).

The **Bell** Court held that "once a claim has been stated adequately, it may be supported by showing **any set of facts consisted with the allegations** in the complaint." **Id** at 563. (Emphasis added). The Bell Court further stated that "**Conley**, then described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's' survival." **Id**.  In **Ashcroft v. Iqbal** , 556 U.S 662 (2009), the Supreme Court continued to expand on the test of no set of facts analysis by holding that "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to" state a claim to relief that is plausible on its face." **Id**.at 1949 (citation omitted).  "Determining whether a complaint states a plausible claim for relief will… be a

context-specific task that **requires the reviewing court to draw on its judicial experience and common sense."**. Id. at 1950.  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." **Ashcroft v. Iqbal**, 129 S. Ct. 1949 (2009)(quoting **Bell Atlantic Corp.  v. Twombly**, 550 U.S. 554, (2007)   Thus, if a complaint contains factual allegations describing" **how, when, and where**" the Plaintiff suffered injury, he will have nudged his claims" across the line from **conceivable to plausible**" and the complaint will satisfy the pleading standard detailed in **Iqbal.  Fowler v. UPMC Shadyside**, 578 F.3d 203 (3rd Cir. 2009)(citing **Twombly,** 550 U.S at 570).(Emphasis added)

In deciding whether or not to grant a dismissal of a complaint, the court must conduct a two part test analysis.  The court must first separate the factual and legal elements of a claim. **Id.**   The District Court then must accept all the Plaintiff's well pleaded facts as true, but may disregard legal conclusions. **Fowler v. UPMC Shadyside**, 578 F.3d at 210 (3rd Cir. 2009). Moreover, "[The] pleadings must have sufficient precision and **factual detail to reveal that more than guesswork is behind the allegation.**" **Floyd v. City of Kenner**, 08-30637 (FED5). See also **Schultea v. Wood**, 47 F.3d 1427, 1433-34 (5th Cir. 1995)(en banc). (Emphasis added) Secondly, the Court must then determine whether the factual allegations are sufficient to show that the plaintiff has a plausible claim for relief.  **Ashcroft v. Iqbal**, 129 S. Ct. at 1950 (2009).

**A Rule 12(b)(6) motion is disfavored** and is rarely granted. **Sosa v. Coleman**, F.2d 991, 993 (5th Cir. 1981). (emphasis) See also **Gilligan v. Jamico Dev. Corp**., 108 F.3d 246, 249 (9th Cir. 1997).(citation omitted). Inquiry into the adequacy of the evidence is improper. **Enesco Corp. v. Price/Costco, Inc.**, 146 F. 3d 1083, 1085 (9th Cir.1998). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." **Bell Atlantic Corp.  v. Twombly**, 550 U.S. 554, (2007). This " does not impose a probability requirement at the pleading stage,

but instead **simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence** of the necessary elements." **Phillips v. County of Allegheny**, 515 F. 3d at 234 (quoting **Twombly**, 550 U.S. at 556.(Emphasis added)

## ARGUMENT

**PLAINTIFF HAS ADEQUATELY PLED CLAIMS AGAINST THE DEFENDANTS FOR VIOLATING HIS RIGHTS GUARANTEED TO HIM UNDER THE DUE PROCESS CLAUSE OF THE OF THE FOURTEENTH AMENDMENT TO THE CONSITUTION OF THE UNITED STATES BASED UPON  DEFENDANTS DELIBERATE INDIFFERENCE TO PLAINTIFF'S RIGHT TO BE FREE FROM UNLAWFUL INCARCERATION OF ONE HUNDRED THIRTY EIGHT DAYS BEYOND HIS COURT ORDERED RELEASE DATE.**

1. **Substantive due process**.

The Due Process Clause of the Fourteenth Amendment states that," no State shall deprive any person of life, liberty, or property without due process of law." **U.S. Const. amend. XIV, Section 1.** The clause applies to municipalities. See **Horvath v. Westport Library Ass'n**, 362 F.3d. 147, 151(2nd Cir. 2004).  The Due Process Clause was intended to secure the individual from the **arbitrary excise of the powers of government**." **Daniels v. Williams**, 474 U.S. 327, 331, (1986)(quoting **Hurtado v. California**, 110 U.S. 516, 527 (1884) (emphasis added)  " Substantive Due Process , as recognized by the Supreme Court, **bars** " certain government actions regardless of the fairness of the procedure used to implement them," in order to' prevent governmental powers from being used for purposes of oppression "**Ying Li v. City of N.Y**. 246 F. Supp. 3d 578, (E.D.N.Y2017(quoting **Daniel v. Williams**, 474 U.S. At 331, **McClary v. O'Hare,** 786 F 2d 83,88 (2nd Cir. 1986).  As expressed in **Ying Li**" In other words, while a procedural due process claim challenges the procedure by which [deprivation of liberty ] is effected; **a substantive due process claim challenges the fact of the [deprivation] itself**" **Southerland v. City of New York**, 680 F.3d 127,142 (2nd Cir. 2011).(emphasis added)

5

The Supreme Court distinguishes between the two clauses by stating that " [T]here are two categories of implied rights protected by the Due Process Clause: really fundamental rights , which cannot be taken away at all absent a compelling state interest, and not-so fundamental rights which can be taken away so long as procedural due process is observed. **Kerry v. Din, 135 S. Ct. 2128** (2015).

Mr. Salem's amended complaint set forth a violation of his rights under the due process clause of the 14th amendment when he was held in custody from November 28, 2014, through April 15, 2015. Plaintiff's bail was reduced from $ 50,000 to $1.00 as of November 28, 2014, (**Am. Compl**. Exhibits "B", 'C', and 'I'). Salam was never produced in court to have obtained knowledge that he was eligible to be released from incarceration by paying $1 in bail. The New York City Department of Correction had procedures in place for their employees to follow when an inmate such as Salam, had bail reduced that would allow for his immediate discharge. (Am. Compl,) ¶¶ 92-206, as set forth in the DOC General Office Manual (GOM) which provides guidance for " Processing Court Orders to Produce, ". **GOM Chapt. 6.4.4(5)**, ( Am. Compl ¶¶ 103-118) Processing Court Orders that Change Detention Status, **GMO, Chapt 6.5**, (Am. Compl ¶¶ 119-121),  Processing Court Orders to Change Detention Status at the Courthouse, **GOM Chapt 6.5**,(Am. Compl. ¶¶122-129, Processing  Court Orders the Change Detention Status at the Housing Facility (AMKC), **GOM Chapt. 6.5.1** (Am. Compl. ¶¶130-131, Processing An Order Discharging Defendant, **GOM, Chapt 6.5.3** (Am. Compl. ¶¶131-139, Processing a Criminal Court Discharge Order, **GOM, Chapt. 6.5.6** (Am. Compl. ¶¶ 140-152,   and procedures required for " Court Production, **GOM, Chapt. 7**,  (Am. Compl ¶¶ 153- 190.

The Defendants failed to ensure that these provisions were followed by their municipal employees at the DOC which caused Plaintiff to remained incarcerated 138 days beyond his court ordered release date on November 28, 2014, and again on January 21, 2015, when the DOC was ordered by the court to produce Salem in civilian clothes for his release from prison. Instead, the Defendants chose to willfully

and deliberately ignore the orders to release the Plaintiff without justification. (Am. Compl.) **Exhibits, "C, D, E, and F".**

"D]ue process protection in the substantive sense, limits what the government may do in both its legislative and its executive capacities…"**Cnty. Of Sacramento v. Lewis,** 523 U.S. 833, 845 (1998). "[C] riteria to identify what is fatally arbitrary differs depending on whether it is legislation or a specific act of a governmental officer that is at issue." **Id.** at 845. [F] or executive action to violate substantive due process, it must be so **egregious, so outrageous**, that it may fairy be said to shock the contemporary conscience." **Bolmer v. Oliveira**, 594, F. 3d 134, 142(2nd Cir. 2010)." It is not enough that the government act [was] incorrect or ill-advised[.]" **Cox v. Warwick Valley Cent. Sch. Dist**., 654, F.3d 267, 275 (2nd Cir. 2011)(quoting **Kaluczky  v. City of White Plains**, 57 F.3d 202, 211(2nd Cir. 1995). "Only the most egregious official conduct can be said to be arbitrary in the constitutional sense and therefore unconstitutional." **Id**.

Mr. Salem's continued incarceration in violation of court orders issued to release him, violated his right to due process of law. The refusal of the Defendants to release the Plaintiff in civilian clothes on January 21, 2015, and his return to Rikers Island by the Defendants, was so egregious and so outrageous that it did indeed shock the conscience of a contemporary society. (**Am. Compl.**) at ¶¶ 326-327. Holding Salem, a pre-trial detainee, on bail of $1 for one hundred thirty eight days ,without informing his that his bail had been reduced from $ 50,000 to $ 1, and without obeying a court orders to produce Plaintiff to court in civilian clothes to be released and instead returning him to prison in total disregard of court orders demanding his release January 21, 2015, to obtain his  released from custody and returning him to Rikers Island, is more than troubling, it is "  so outrageous  and outrageous that it may fairly be said to shock the contemporary conscience standard of violation set forth in **Bolmer v. Oliveira**, 594,F. 3d 134, 142 (2nd Cir. 2010). Thus, the Defendants are liable for violating Plaintiff's constitutional rights.

**B. Procedural Due Process of Law**

A procedural due process violation occurs when the government deprives a person of a protected life, liberty, or property interest without first providing notice, and an opportunity to be heard. See **B.D. v. DeBuono** , 130 F. Supp. 2d 401, 432-33 (S.D.N.Y. 2000). " To determine whether a Section 1983, due process claim is plausibly alleged, the Court evaluates the sufficiency of the allegations with respect to the liberty…interest alleged and the process due before deprivation of that interest." **Norton v. Town of Islip**, 97 F. Supp. 3d 241, 266 (E.D.N.Y. 2015).    "Under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt" **Bell v. Wolfish,** 441 U.S. 520 (1979). Moreover the Court held that ""if a restriction or condition [of pretrial detention] is not reasonably related to a legitimate goal- if it is arbitrary or purposeless-, **a court permissibly may infer that the purpose of the government action is punishment that may not be constitutionally be inflicted upon detainees**" **Id** at 535.  (Emphasis).

The DOC practice of holding pretrial detainees incarcerated on $1 bail without informing the inmates that their bail had been reduced is a condition that is nor reasonably related to a legitimate penological interest.  Defendants' DOC and its municipal employees incarceration of Salem for 138 days on $1bail was not and cannot be said to have been related to a legitimate governmental purpose.

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action" **Foucha v. Louisiana**, 504 U.S. 71, 80 (1992).  The Due Process Clause is broadly construed.  **"[D]ue process is flexible and calls for such procedural protections as the particular situation demands**" **Morrissey v. Brewer,** 408 U.S. 471(1972).

Plaintiff was held one hundred thirty eight days without legal basis. ( **Am. Compl**.) ¶¶ 46-118.  " Even if an inmate's initial confinement was justified by a constitutionally adequate basis, that confinement cannot constitutionally continue once that basis no longer exists" **Barnes v. District of Columbia**, 793, F. Supp 2d 260, 275 (.D.D.C. 2011) **Cannon v. Macon Cnty**., 1 F.3d,1558, 1563 (11th

Cir. 1993)(recognizing"[t]he constitutional right to be fee from continued detention after it was or **should have been known that the detainee was entitled to release"**(Emphasis added).  The criminal court ordered Mr. Salem released on November 28, 2014. (**Am. Compl. Exhibit "D")** under docket no. 2014NY0178543, because the district attorney failed to indict Mr. Salem.  Plaintiff had bail of $ 1 on his other companion case and was not released until five months later, April 15, 2015, when an unknown person, referred to as Rev Cato, paid bail of one dollar.  Salem never met with a Rev. Cato. He was instructed by a Captain St. Fleour to say in anybody asked, that a Rev Cato paid your bail of $ 1.(**Am. Compl.**) ¶¶ 87,88).  Captain Floeur was aware that Salem had been incarcerated 138 days on bail of $1 and that the captains, wardens, assistant wardens in the AMKC were deliberately indifferent to Salem's right to be released from incarceration .   "[T]he great weight of precedent suggest that release must occur within a matter of hours after the **right to it accrues**, and that after some period of hours-not days- a presumption of unreasonableness, and thus unconstitutionality, will set in." **Barnes v. District of Columbia**, 242 F.R.D. 113,117 (D.D.C.2007) (Emphasis) See also **Berry v. Baca**, 379 F.3d 764, 773 (9th Cir. 2004) (**Reversing summary judgment granted in favor of county sheriff where plaintiffs contended they were detained twenty-six to twenty- nine hours after a court ordered their release**.") and see **Davis v. Hall**, 375 F.3d 703, 713 (8th Cir. 2003)( noting that "**even a thirty- minute detention after being ordered released could work a violation of a prisoner's constitutional rights under the Fourteenth Amendment")** (Emphasis added).   Defendant's in their motion to dismiss argue that Plaintiff Salem failed to state a " Substantive Due Process claim arising from his detention in the custody of the DOC. ( **Def's memorandum of law at pg. 20-21.**) Counsel for the Defendant argues that "allegations that   a pre- trial detainee has been **unlawfully detained following arraignment are analyzed in the false arrest/false imprisonment framework of the Fourth Amendment and not the substantive due process clause. Southerland v. City of N.Y**. 680 F. 3d 127, 142-143 (2nd Cir 2011).

9

Defendant also state that Plaintiff's substantive due process claim must fail because the Fourth amendment provides an explicit textual source of protection against false arrest/imprisonment and that Plaintiff' allegations through his amended complaint and the attached exhibits, A-J, established that Mr. Salem was validly detained on the charges under Docket no 2014NY088542, and thus his cause of action should be dismissed.

Defendant's reliance on **Southerland**, is misplaced and misguided, and does not purport the proposition to which defendant's counsel relies. **Southerland,** asserted four separate claims against Defendant Woo. First, **Southerland,** brought an unlawful-search claim, asserting that Woo's entry into his home "without privilege, cause or justification" violated the Fourth Amendment. Second, **Southerland** brought a Fourth Amendment unlawful-search claim for Woo's remaining in his home even after discovering that the children listed on the Order Authorizing Entry were not there. Third, **Southerland** asserted a Fourteenth Amendment procedural due process claim for removal of the Southerland Children from his home without a court order and in the absence of an immediate threat of harm to their lives or health. Fourth, **Southerland,** asserted a substantive due process claim, also under the Fourteenth Amendment, for Woo's removal of the Southerland Children absent a reasonable basis for doing so. **Southerland v. City of N.Y.** 680 F. 3d 127, 142-143 (2nd Cir 2011).

The Southerland Court recognized both a substantive due process right in addition to a Fourth amendment right of action.  "A parent **may also bring suit under a theory of violation of his or her right to substantive due process. Southerland** ,does so here."  Parents have a "substantive right under the Due Process Clause to remain together [with their children] without the coercive interference of the awesome power of the state." (Southerland quoting Tenenbaum, 193 F.3d at 600 (internal quotation marks omitted); see also, e.g., **Anthony v. City of N.Y.,** 339 F.3d 129, 142–43 (2d Cir.2003); Kia P., 235 F.3d at 757–58. Such a claim can only be sustained if the removal of the child "would have been

10

prohibited by the Constitution even had the [parents] been given all the procedural protections to which they were entitled." Tenenbaum, 193 F.3d at 600 (emphasis deleted). In other words, while a procedural due process claim challenges the procedure by which a removal is effected, a substantive due process claim challenges the "fact of [the] removal" itself. **Bruker v. City of N.Y**., 92 F.Supp.2d 257, 266–67 (S.D.N.Y.2000). **"Where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process."** Kia P., 235 F.3d at 757–58 (quoting **Conn v. Gabbert**, 526 U.S. 286, 293, 119 S. Ct. 1292, 143 L.Ed.2d 399 (1999) (brackets and internal quotation marks omitted). **For child removal claims brought by the child, we have concluded that the Constitution provides an alternative, more specific source of protection than substantive due process...** The child may therefore assert a claim under the Fourth Amendment that the seizure of his or her person was "unreasonable." U.S. Const. amend." **Southerland v. City of N.Y.** 680 F. 3d 127, 142-143 (2nd Cir. 2011).   (Emphasis Added)   The court in Southerland invoked the Fourth amendment provision of the constitution rather than the Fourteenth Amendment only because of the fact that claims of child removal from a private residence and that the fact that there was a constitutional bases for removing the child from the parents' home ,the Fourth Amendment provided the bases of recovery for the Plaintiffs.

The **Southerland** Court did not preclude Plaintiffs from asserting both claims under the Fourth and Fourteenth Amendments. Thus, the notion that Salem has instituted an action against Defendants based on both a Fourth Amendment and Fourteenth Amendment due process claims are not prohibited by the holding rendered in **Southerland** as the Defendants in the instant matter asserts.

 Defendants also contend that Salem, failed to state any actionable due process claim arising from his detention in DOC custody. Moreover, counsel for the Defendants stated in its memorandum of law that " **courts routinely hold that a correctional officials conduct of detaining an inmate or detainee beyond their legally mandated release date constitutes a random and unauthorized act"** for

**purposes of procedural due process of law**". Citing **Moore v. Newton 1**4 CV 6473 , 2016 U. S. Dist. Lexis 121839 58-59, (E.D.N.Y. Sept 7, 2016).See  (**Def's Memo, at 20**).   Defendants' memorandum of law is flawed in several respects.   First, the decision in Moore is completely **void of a holding that** states that "**courts routinely hold that a correctional officials conduct of detaining an inmate or detainee beyond their legally mandated release date constitutes a random and unauthorized act**" **for purposes of procedural due process of law**". **Id. (Emphasis).**  The Second Circuit does however, distinguish between due process claims based on " established state procedures, and claims based on random and unauthorized acts by state employees." **Moore v. Newton** 14 CV 6473 , 2016 U. S. Dist. Lexis 121839 58-59, (E.D.N.Y. Sept 7, 2016)(quoting **Schultz v. Egan,** 103 F. App'x 437 440 (2nd Cir. 2004). "where a claim is based on such random, unauthorized acts, a prisoner's due process rights are not violated so long as the Government **provides a meaningful remedy subsequent to the deprivation**." **Id**. (quoting **Locurto v. Safir**, 264 F.3d 154, 172 (2nd Cir. 2001).   "[The] rationale behind this principle is plain. Because the challenged misconduct **is random and unauthorized it is impossible for the government to anticipate and prevent the wrongful loss of liberty** or property in advance, and it has no realistic alternative other than to adopt remedies capable of righting the wrong after the deprivation" **Id**.( quoting Schultz 103 F. App'x at 441.)(Emphasis added) See also **Hudson v. Palmer, 4**68 U.S 517, 534 (1984)("holding that only a post –deprivation remedy was required following the intentional destruction of an inmates' personal property by a prison guard because the state was not in a position to provide for pre deprivation process" **Id**.   Moreover, random and unauthorized acts was also found in **Parratt v. Taylor**, 451, U.S. 527 541 (1981) (" holding that the loss of prisoner's mail-order product was a negligent, random and unauthorized act aby a prison employee and a post-deprivation tort suit was sufficient to satisfy due process. Aitabdellah Salem's allegations throughout his amended complaint were based on established state procedures which the Defendant's failed to follow

which led to the deprivation of his liberty, not random acts. In addition, unlike the Plaintiff in Moore, Salem was not aware of courts orders requiring his release for him to have filed an article 78 or habeas corpus proceeding.   The Plaintiff in **Moore** brought claims in the Eastern District of New York under the Fourth, Eight and Fourteenth Amendment alleging that for purposes of a final hearing on the parole violation for which he was incarcerated in Rikers Island. **Moore** was held beyond his maximum release date pending his parole date and filed suit against Defendants Newton, Moore's parole officer , for false arrest, false imprisonment and violation of his rights under the due process clause of the Fourteenth Amendment. Plaintiff's Fourth Amendment claim was dismissed in part based on the fact that there was probable cause for his arrest.   The magistrate judge examined Plaintiff's claim that by failing to intervene to secure Plaintiff's release from Rikers Island by his maximum expiration date, Defendant Newton violated Plaintiff's due process rights in violation of the Fourteenth amendment and violated his Eight Amendment claim of cruel and unusual punishment.. "In examining Moore's due process claim, Judge Pollak concluded that Plaintiff possessed a liberty interest that entitled him to due process but that Plaintiff allegation the Defendant failed to secure his release by his ME date was a random, unauthorized act for which New York provided adequate post- deprivation remedies. "**Moore v. Newton 1**4 CV 6473, 2016 U. S. Dist. Lexis 121839 58-59, (E.D.N.Y. Sept 7, 2016).   Judge Pollak also ruled in her recommendation report that Moore be denied his request to amend his complaint to add claims against an unidentified Parole Commissioner and a supervisor and a parole specialist for violating his right to due process and subjected him to cruel and unusual punishment by maintaining **his confinement for thirty- nine days beyond his maximum expiration date**. **Id**.(Emphasis).

   The magistrate judge indicated in her decision that Moore had failed to articulate sufficient facts regarding the unidentified Parole Commissioner's involvement in the deprivation of Moore's rights. However Pollack's recommendation to dismiss Moore's clams was not accepted by the Court on

13

Moore's Eight and Fourteenth Amendment claims. The Court held that " at the pleading stage, **Plaintiff is entitled to the reasonable inference that the Parole Commissioner learned, as written on the DC/ME, that Plaintiff ha[d] not been afforded a Final Hearing and that his original maximum expiration date was 7-31-2014… Plaintiff has also alleged in substance , that the Parole Commissioner nevertheless failed to remedy the wrong"** (Quoting Grullon, 720 F 3d at 139. " **Flaws in the Complaint as to the Parole Commissioner's personal involvement do not, at this stage, appear fatal.** ( Emphasis added**).** The Court therefore grants Plaintiff leave to add an Eight Amendment claim against the Parole Commissioner if he believes that **he can demonstrate the required" deliberated indifference to support such a claim"**.    **Moore v. Newton 1**4 CV 6473 , 2016 U. S. Dist. Lexis 121839 58-59, (E.D.N.Y. Sept 7, 2016). (emphasis added).

   The Court allowed Moore to amend his complaint if he believed he could demonstrate deliberate indifference to support a claim against the parole commissioner based on the violation of due process under the Fourteenth Amendment. "In addition, Construing Plaintiff's proposed amendment to raise the strongest claims it suggests, Plaintiff **has set forth facts adequate to demonstrate a due process violation, as well**." **Id. (Emphasis)**

   In the instant matter, Mr. Salem claims against the Defendants are based on state established procedures found in the GOM, (**Am Compl**.¶¶ 92-206), not random acts. . Mr. Salem has alleged that the DOC's employees, knowingly and willfully violated his constitutional right to be free from incarceration without due process of law. Mr. Salem also alleges throughout his amended complaint that the Defendant's acts and omission were done with deliberate indifference to Plaintiff's constitutional rights. **Id**.  According to General office Manuel (GOM), the DOC staff members are required to " advise the Court that an inmate **is not available to be produced on a particular day** and the reasons for the non- production of the inmate. (**Am. Compl**.) ¶ 103.  Salem was not produce in the Court room on

14

November 26, 2014, November 28, 2014, January 21, 2014, nor February 11, 2015, See (**Am. Compl Exhibits B,C,F, G**). The correction officers of the DOC, failed to inform the Court the reasons why Salem was never produced as required in the GOM.  The DOC uses an "Undelivered Defendant Form " to advise the Court that an inmate will not be present in court. (**Am. Compl** ) at  ¶¶103-106.  " After the inmate returns from Court on the Order to Produce appearance, and once the order has been satisfied, DOC personnel are required to file the Order to Produce in the inmates' record envelop/legal folder and then enter' Void in the Disposition filed to close out the record." Id at ¶¶ 107-108.    The DOC was ordered to produce Salem in court on January 21, 2015, in civilian clothes. (**Am. Compl**. **Exhibit "E".** Salem was not produce in the court room. He was held in the court's holding cell. Mr. Noble, counsel for the Defendants **failed to mention to this Court** in the Defendants memorandum of law that Salem was not brought in civilian clothes in preparation for his immediate release from Rikers Island.  **(Def's memo** pg. 1-31). Defendant's silence throughout their memorandum of law as to the reasons the DOC failed to produce Salem in civilian clothes speaks to the fact that there is no legitimate reason or excuse the City of New York can make for their failure to have complied with court order directed to the Commissioner of the New York City Department of Correction and to the Warden at the AMKC, to produce Salem in civilian court on January 21,2015. (**Am.  Compl. Exhibit E**) . The DOC had notice of the court order to produce Salem in civilian clothes on January 21, 2015. ( **Am. Compl. Exhibit "E"**.  In fact, the Order to Produce was noted " **order satisfied**" by a DOC officer, Dfucco on 1-21-15. **Id.** This notation on the order to produce that the order was satisfied,  is a blatant, egregious and outrageous act on part of the Defendants' employees at the DOC in their continued defiance to release Mr. Salem from Rikers Island as order by the Court. Salem was brought back to Rikers Island from the court's holding cell on January 21, 2015, he remained until his next court appearance February 11, 2015, unaware that the DOC failed to produce him in court in civilian clothes for release.  On February 11, 2015, Salem was

produced to the criminal court but again was not produced in the court room. (**Am. Compl.) Exhibit "G"**. The Defendant's continued their defiance of the November 28, 2014, and January 15, 2015, court orders by refusing to comply with the court orders to release Salem and to produce him to court in civilian clothes for his release. Salem was returned to Rikers Island on February 11, 2015, where he remained until someone paid his dollar bail and secured his release.

The DOC, and the Defendant municipal employees, failed to enforce their state established procedures set forth in the GOM pertaining to Processing Orders that Change Detention Status. (**Am. Compl.)** ¶¶119-121. Section 6.5.1 of the GOM, states that " whenever a court issues a superseding court order that changes the detention status of an inmate in a way [that] could or will lead to the inmate's release, DOC personnel must act **with expediency to carry out the court's instructions**." **Id.** ¶¶ 119-121. (Emphasis). "Court orders must be faxed to the holding facility and the general office must begin to process the faxed order without waiting for the original order to arrive by interoffice mail. **Id**. The Defendants again, failed to comply with their clearly established state procedures found in the GOM Section 6.5. Salem's incarceration from November 28, 2014, through April 15, 2015, was no random and or unauthorized act as claimed by the Defendants 's attorney in his memorandum of law. (**Def's memo )** at pg. 21-23. However, it is clear that the DOC's continued incarceration of the Mr. Salem was done with deliberate indifference to his liberty interest without due process of law. There were no holds, or warrants on Salem which prevented him from being released on November 28, 2014, thorough April 15, 2015, other than $ 1 bail.

The DOC also failed to process Court Orders that Change Detention Status at the Housing Facility, a state established procedure found in the DOC's GOM. (**Am. Compl**.) ¶130. Under this provision, the DOC is required to confirm the validity of the fax received from the court. **Id** at 1. The officer s at the

DOC must then place their name and shield number of the holding facility  on the back of the court order including the date and time of confirmation. **Id,** at 2.  The DOC is then required to perform the necessary takes to release the inmate. (**Am. Compl**.) ¶ 130,at, 3-4.  The Defendant's however, failed to perform these procedures which would have resulted in Salam's release on November 28, 2014, and certainly on January 21, 2015 based on Judge Mennin's order to produce Salem in Civilian clothes.

Defendants also failed to perform form their duties in Processing the Court orders to Discharge Aitbdellah Salem.  The state established procedures for processing orders discharging defendants, are found in DOC's GOM, Chapt. 6.  as set forth in Plaintiff's amended complaint. ( **Am. Compl** )¶¶ **131- 152.**   See also Court Production –General Office Manual Chapt 7, **Id** at ¶¶153-177.    Staff members at the DOC are required to prepare form "44a" for the next day court appearance and to institute other

procedures to ensure compliance with the procedures in the GOM to produce inmates to court which is essential for ensuring inmates' **due process of law in providing inmates an opportunity to be heard and to challenge court decisions which involve the inmates' confinement**." (**Am. Compl.**at ¶¶ 157, 157. "Courts and attorneys rely on D.O.C. to deliver inmates on their scheduled court dates, when there is a problem, as when as an inmates misses court, it may not be the fault of GO. However, **unless the GO staff members have fully documented every step they took, they may take the blame**" (**Am. Compl**.)  ¶¶ 156, 157**. It is thus essential that GO Staff keep meticulous records on every aspect of court production. " .** GOM Chat 7 (**Am. Compl**) at 156).

It is patently clear that the Defendants, through the acts and omissions of the municipal employees at the DOC, violated the procedures in the GOM, in preparing records needed to process the discharge of Mr. Salem and to ensure that he was inside the court room not left sitting a court's jail cell.. The DOC repeatedly failed to comply with its own procedures which served as the affirmative link in Salem's incarceration for one hundred thirty eight days. The acts and omission were not random and unauthorized as claimed by the

Defendants in this case.   In addition, the random and unauthorized acts exception to the requirement of a pre- deprivation hearing does not apply to high ranking prison officials. " The" random and unauthorized exception to the requirement of a pre- deprivation hearing does not apply, however , where the government actor in question is a " high ranking official with final authority over significant matters." **Moore v. Newton 1**4 CV 6473 , 2016 U. S. Dist. Lexis 121839 58-59, (E.D.N.Y. Sept 7, 2016).(quoting **DiBlasio v. Novello**, 344 F.3d 292, , 302-03, (2nd Cir. 2003)(quoting **Burtnieks v. City of New York**, 716 F.2d 982, 988 92nd Cir. 1983). The rationale behind this principle is that "[w]hen the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of post-deprivation procedures **will not ipso facto  satisfy due process**," **Hellenic Am. Neighborhood Action Comm. v. City of New York** , 101 F.3d 877, 880(2nd Cir. 1996)(first citing **Hudson**, 468 U.S. at 532;and then citing **Logan v. Zimmerman Brush Co**., 455 U.S. 422, 435-36 (1892).

   Because Salem's claims against Defendants, Joseph Ponte, John Doe Warden, Assistants Warden, Tour Commanders and Captains  of the AMKC Facility in Rikers Island  occurred in a structured environment of established state procedures within the DOC, and because Joseph Ponte and the wardens, Tour Commanders, Assistant wardens and Captains are believed to be high- ranking officials with final authority over significant matters relating to processing courts orders leading to the release of inmates, Plaintiff was not required to seek relief through  an article 78, or habeas corpus proceeding. Moreover, Salem was not even aware that his incarceration was unlawful until he was set free on bail of $1 on April 15, 2015. Therefore Plaintiff's claims grounded under the Due Process Clause of the Fourteenth Amendment should not be dismissed.

**PLAINTIFF HAS ADEQUATELY PLED CLAIMS AGAINST THE CITY OF NEW YORK BASED ON MUNICIPAL LIABILITY UNDER 42 U.S.C SECTION 1983, FOR FAILURE TO TRAIN, SUPERVISE OR DISCIPLINE ITS MUNICIPAL EMPLOYEES.**

A municipality may be liable under Section 1983, if a municipal " policy or custom" cause " deprivation of rights protected by the Constitution " **Monell v. Dep't of Soc. Servs, of N.Y.** , 436 U.S. 658, 690-91 (1978). See also **Jones v. Town of E. Haven**, 691 F. 3d 72, 80 (2nd Cir, 2012). In order to survive a motion to dismiss under Fed. Rule Civ. P 12(b)(6), a plaintiff must allege" **sufficient factual detail**" and not mere boilerplate allegations that the violation of the plaintiff's constitutional rights resulted from the municipality's custom or official policy." **Ying Li v. City of N.Y**. 246 F. Supp. 3d 578, (E.D.N.Y.2017) (quoting **Plair v. City of New York**, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011). " A policy or custom may be established by any of the following:1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision- making authority; (3) a practice so persistent and widespread that it constitutes a custom through which constructive notice is imposed upon policymakers; or (4) **a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised deliberate indifference to the rights of the plaintiff**". **Moran v. Cnty. of Suffolk**, No 11 Civ. 3704, 2015 WL 1321685(E.D.N.Y. Mar 24, 2015)(citing **Parker v. City of Long Beach** 563 App'x 39 (2nd Cir. 2014) (failure to rain) **Matusick v. Erie Cnty. Water Auth.**, 757 F 3d 31, 62 (2nd Cir. 2014)(widespread and persistent practice);**Hines v. Albany Police Dep't,** 520 F. App'x 5, 7 (2ndCir. 2013)(actions of policymakers); **Schnitter v, City of Rochester,** 556 F. App'x 5, 8 (2nd Cir. 2014)(failure to train or supervise)(emphasis). Mr. Salem's claims of municipal liability against the City of New York are based primarily on the allegations contained in Plaintiff's amended complaint that the DOC established a custom or a practice of failing to:

a. properly process court orders, (**Am. Compl**.) ¶¶ 92-102.

b. failure to process court orders to produce inmates to court appearances, (**Am. Compl**.) ¶¶ 103-118.

c. failure to process court orders that changed Salem's detention status, (**Am. Compl**.) ¶¶ 119-121,

d. failure to process court orders that change  detention status at the court house, (**Am. Compl**.) ¶¶ 122-129.

e. failure to Process Court Orders that Change Detention Status at the Housing Facility, AMKC, (**Am. Compl**.)¶¶ 130,

f. failure to Process an Oder to Discharge Defendants, (**Am. Compl**.) ¶¶ 131-139,

g. failure to Process  Criminal Court Discharge Orders, (**Am. Compl**.) (¶¶ 140-152,

h. failure to process Court Production procedures (**Am. Compl**.) ¶¶ 153-174.

i. failure to Process Bail Procedures which Delayed the Release of Salem. (**Am. Compl**) ¶¶ 191-206.

The DOC failed to train and supervise its municipal employees in excising the above procedures which led to Salem's overdetention.  The DOC was on notice that its hiring, training, and supervision of its employees was deliberate and inadequate. Incorporated and attached to Plaintiff's amended complaint is a report conducted by the City of New York Department of Investigation Commissioner Mark G. Peters dated January 15, 2015. (**Am. Compl.) Exhibit J.**), which demonstrated the DOC's deliberate indifference to the rights of inmates by hiring incompetent and unqualified correction officers during Salem's incarceration of 2014. ***History of The New York City Department of Correction of Hiring Incompetent and Unqualified Correction Officers***.  (**Am. Compl. Exhibit J**).  On January 15, 2015, The City of New York Department of if Investigation, (DOI) Commissioner Mark G. Peters Commissioner issued a stinging report entitled D.O.C. Report **Reveals Broken Recruitment System At Rikers Island and Deeply Flawed Application Process For Newly Hired Correction Officers.** The Commissioner's findings **covered  the period 2014**. " Over the past year, the Department of  Investigation (DOI) has conducted an

20

extensive investigation into systemic illegal conduct at the Department of Correction(DOC) Rikers Island Facility. **Id**, at 1(Emphasis added)   The DOI report found the following flaws in the system of hiring correction officers at Rikers Island.  "Department of Investigation (DOI) Commissioner Mark G. Peters today issued a comprehensive review of the Department of Correction's (D.O.C.) hiring process for correction officers at Rikers Island, uncovering a deeply flawed system in which more than **a third of officers were hired despite numerous corruption and safety hazards, including multiple prior arrests and convictions, prior associations with gang members or relationships with inmates. Id.**  Equally troubling, the Applicant Investigation Unit (AIU), responsible for screening potential recruits, relied on **antiquated and haphazardly filed paper personnel documents** and had little to no access to software necessary to perform basis background and credit checks. As a result, D.O.C. has already replaced both its Director and Deputy Commissioner responsible for oversight of the AIU and responsible for the hiring of applicants. "**New York City Department of Investigation Report on the Recruiting and Hiring Process for New York City Correction Officers. Mark G. Peters Commissioner, January 2015. "** (Am. Compl.) Exhibit" J". at 1.

The gravamen of Commissioner's Peters investigative report is that the investigation "exposes a shockingly inadequate screening system, which has led to the firing of many officers that are **underqualified and unfit for duty. Applicants with a history of violence or gang affiliations should not be patrolling our jails**. Position as **law enforcement officers demand better**. We are pleased D.O.C. has listened to our recommendations and is taking the necessary steps, **after a decade of neglect**..." **Id**. (emphasis added).  The Commissioner's report also stated that there was an **ongoing investigation in criminal activity and civil disorder at Rikers Island which began in early 2014**. Id.(**Emphasis**).   The report found that of the over 150 applicant's files of recently hired correction officer, "35% had significant red lags that should have either precluded their hiring or required significant follow up and monitoring by employees- neither of which was done." **Id**.   The report by the

DOI is indicative of the failures of the DOC policy makers to property hire, train and supervises employees within the Department of Correction. The DOC had a custom and practice of deliberately hiring incompetent correction officers within the DOC that violated the constitutional rights of inmates. Plaintiff Salem has alleged that DOC supervisors placed incompetent municipal employees throughout the General Office.  The failure to train, supervise, and discipline, and failure to investigate its municipal employees misconduct, demonstrated a deliberate indifference on behalf of the City of New York towards the Plaintiff and other inmates similarly situation in Rikers Island, and throughout the Department of Correction. (**Am. Compl. ¶ 177**)

   That upon information, and belief, the New York City Department of Correction allowed correction officers that **were injured on duty, and prohibited from working with or near inmates, to work in the General office where they received no substantive training in the General Office Manual regarding the production of inmates to court, securing orders, changes in inmates status, or processing the release of inmates upon court** order. (Am. Compl.) ¶ 178. The practice by the D.O.C. of allowing unqualified correction officers to work in the general office without formal training was widespread to the extent that it constituted a custom or practice at Rikers Island which was known and tolerated by the administrators, policy makers, supervisors, and the Defendants. **Id.** ¶179.   The need for better training, and better supervision was so obvious to the Defendants who knew or should have known that without sufficient and adequate training it was likely to result in the violation of inmates constitutional rights that the policymakers of the City of New York can reasonably be said to have been deliberately indifferent to the need. **Id** ¶180.

   The Plaintiff also alleges a direct causal link between Salem's deprivation of liberty and the inadequate training, supervision, and failure to discipline the D.O.C. employees in failing to comply with D.O.C. procedures set forth in the General Office Manuel. **Id.**  ¶181. The City of New York, acting through its Department of Correction, developed , implemented , enforced, encouraged, and sanctioned de facto policies, practices, and or customs exhibiting deliberate indifference to the Plaintiff's constitutional right to be free

from capricious and arbitrary restrictions on his liberty. **Id.**  ¶182.  That the Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights under the Fourth and Fourteenth Amendments to the Constitution of the United States. **Id**.¶ 182.  Plaintiff alleged that  upon information and belief, the City of New York acting through its Department of Correction, has developed, implemented, enforced, encouraged and sanctioned a de facto policy, practice, and or custody of unlawfully holding inmates such as the Plaintiff past their Court ordered release dates, and failing to produce inmates such as the Plaintiff to Court as Order, and unlawfully holding inmates on $ 1 bail without the inmates' knowledge. **Id**. ¶ 183.

Thus, due to that failure of the New York City Department of Correction to comply with Court orders pertaining to the release of inmates without legal justification, or probable cause, such unlawful detention of Salem was done willfully, knowingly and with deliberate indifference to Plaintiff's constitutional rights.  The City administrators, policymakers, supervisors, and employees caused the unjustified over detention of Mr. Salam by their deliberate indifference to the risk of constitutional injury from over detention arising from *inter alia* : The Department of Correction refusal to honor Court orders on November 28, 2104, calling for Salem's immediate release from custody and again on January 15, 2014, demanding that the Warden at the AMKC correctional facility in Rikers Island produce Salam to Court on January 21, 2015, in civilian clothes for Plaintiff's release.is significant to deny dismissal of Plaintiff's amended complaint.

### PLAINTIFF WAS SUBJECTED TO UNLAWFUL POST RELEASE STRIP SEARCHES AT RIKERS ISLAND.

Plaintiff alleged in his amended complaint that he was subjected to a custom and practice of the DOC's blanket strip searches without individualized reasonable suspicion on the Plaintiff and on all other inmates going and coming to and from their court ordered court appearances. The practice of conducting blanket cavity searches of inmates including Salem, violated his Fourth Amendment right to be free from unreasonable searches of over detained inmates without the articulated individual suspicion required. Courts have previously decided that it does indeed violate the releasee's constitutional rights. **Bynum v. District of**

**Columbia**, 257 F. Supp 2d 1(D.D.C 2002)(motion to dismiss complaint on ground of strip searching released court returnees denied). **Logan v. Shealy**, 660 F. 2d  1007, 1013 (4ᵗʰ Cir. 1981)(no qualified immunity for strip search of person ordered released on personal recognizance).   Mr. Salem was a pretrial detainee. He was subjected to a body and cavity strip search each time he was ordered to appear in court and upon his return. Mr. Salem was ordered released on his own recognizance and was subjected to several incidents of being forced to an unconstitutional body cavity strip search similar to the conduct found in **Logan.**

   On November 28, 2014, Salem was ordered released on his own recognizance under P. L. Section 180.80. His bail under docket number 2014 NY 088543 was reduced from $ 25,000 to -0- because the grand jury was not convened. (**Am. Compl**.) Exhibit "C". Moreover, on January 15, 2015,  Judge Mennin ordered the DOC to produce Salem to court in civilian clothes. (**Id.** Exhibit " E".  Salem was brought to court, not in civilian clothes but in his prison uniform. Instead of releasing Salem, he was returned to Rikers Island where he was subjected to a body cavity search upon leaving the court house jail and returning to Rikers. The search was unconstitutional. There was no reasonable or individualized suspicion for Salem to have been subjected to a  body cavity strip search.

   There were no other holds or warrants in place on Salem on November 28, 2014, and on January 21, 2014. (**Am. Compl**.) Exhibit " H". "No hold, No warrants" **Id**..   Defendant's suggestion that there were holds or warrants is patently false an unreasonable attempt to influence this Court. (**Def's memo**) . Moreover, there was no penal justification for subjected Salem to a strip search once he was entitled to be released on November 28, 2014, and on January 21, 2015. The policy of the DOC served no reasonable penological interest in conducting a cavity search on a inmates ordered released from incarceration. Mr. Salem, as a pre-trial detainee and as a court return ordered released from custody, was not posing a threat to the jail officials and inmates in Rikers Island. Leaving the building at Rikers Island to go to court and returning did not by itself constitute a justification for imposing a blanket strip search those inmates including Salem.

24

The reason that suspicionless strip searches of court- ordered releasees are so abhorrent is that courts appreciate the **difference in status between a release and a typical in –custody inmate**. Releasees' rights are expanded and are **deserving of greater protection than other inmates** because of their fundamentally different status. **Barnes v. Government of the District of Columbia**,  793 F. Supp. 2d 260 (2011). The Supreme Court in **Bell v. Wolfish**, 441 U.S. at 520 (1979), articulated a test for constitutionality of strip searches as a balance between the necessity for the particular search against the invasion of personal privacy rights that the search entailed.  **Id**. at 559. This test requires the court to weigh the scope of the particular intrusion m the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. **Id.**   Defendants, in their motion to dismiss fail to cite any such case that there existed a penological interest in a cavity search of an inmate that was ordered release from incarceration. (**Def's memo**) pg. 19). Mr. Noble's response regarding Plaintiff's strip search violation, stated that " Plaintiff fails to allege any facts from which the Court may plausibly infer that the strip searches alleged in the Amended Complaint violated plaintiff's right against unreasonable searches and seizures. Thus, plaintiff's alleged unreasonable search and seizure claim regarding strip searches is not actionable" (**Def's memo at pg. 20**.)   Defendant's totally disregard the fact the two separate court orders were directed at **the Commissioner of Correction of the City of New York** ordering Salem's release from custody in connection with docket no. 2014NY088543 on November 28, 2014. **(Am. Compl. Exhibit "D".** The Commissioner, Joseph Ponte failed to comply with this court order.   In addition, Commissioner, Joseph Ponte was also order to" receive the said defendant from the said Warden **and produce in Part F, on January 21, 2015 at 9;a**.m. of that day at the Courthouse located at 100 Centre street." **(Am. Compl.) Exhibit "E" ).** This order was also directed at the Warden of the Anna M. Kross Center. **Id.**  Both the Warden and the Commissioner ignored the Court order to produce Salem in civilian clothes for his release. The Defendants continued their unlawful confinement of the Plaintiff and subjected him unlawful cavity searches. The Defendants memorandum in opposition fails to even mention these facts in their haste to dismiss Plaintiff's complaint.   Salem has

sufficiently pled in this Amended complaint that the cavity strip searches he was forced to endure were unconstitutional and should not be dismissed. (**Am. Compl**). ¶¶ 219-228.

Proof of deliberate indifference " is not generally required for entity liability in a Fourth Amendment claim such as the Plaintiff's **post- release strip search claim**. This Court citing Supreme Court District of Columbia Circuit Court of Appeals precedent, has held that the **inefficient implementation** of the District's release procedures which is the result of **official acquiescence in a longstanding practice or custom** which constitutes the standard operation procedure of the local government entity, **is a basis for entity liability** under section 1983 without a separate deliberate indifference analysis." **Barnes v. District of Columbia**, 242 F.R.D. 113,118 (D.D.C.2007)(over detention of inmates and post release strip searches). Plaintiff has alleged that the strip search policy and practice of inmates going and coming from court were all subjected to cavity body searches at Rikers Island. These practices are unconstitutional and should allow plaintiff to proceed with his claims against the City of New York and the named Defendants.

**PLAINTIFF WAS FALSELY IMPRISONED BY THE NEW YORK CITY DEPARTMENT OF CORRECTION FOR ITS FAILURE TO RELEASE PLAINTIFF FROM CUSTODY UPON COURT ORDER ON NOVEMBER 28, 2014, AND AGAIN ON JANUARY 21, 2015, WHEN THE DOC FAILED TO PRODUCE SALEM TO COURT IN CIVILIAN CLOTHES**

Plaintiff's amended complaint contains allegations of false imprisonment stemming from his unlawful incarceration from November 28, 2014, through April 15, 2015. See factual allegations (**Am. Compl**. ¶¶ 46-91. See also ¶¶282-294. Defendants contend that Plaintiff's false arrest and false imprisonment claims are not viable and should be dismissed because the Plaintiff has failed to invalidate the length of the prison sentence his is currently serving under docket number 2014NY088542.(**Def's memo**) at pg14.   Defendants' argument is flawed. Mr. Salem is not attempting to overturn his conviction. Salem however is challenging the fact that from November 28, 2014, through April 15, 2015, he was ordered released from incarceration. Salem was a pre- trial detainee throughout this period.

He was ordered released from Rikers Island. The DOC refused to release him without legal justification, notwithstanding the fact that he had a dollar bail for which he was not made aware. For one hundred thirty eight days, the officials and correction officers at the AMKC facility willfully and deliberately failed to inform Salem of his right to be released from the excruciating conditions commonly found in Rikers Island. Salem has adequately demonstrated that the Defendants intentionally confined him without the required justification. Again, Mr. Salem was not released upon court order on January 21, 2015, when the court ordered him produced in civilian clothes. The Defendants knew Salem was scheduled to be released on January 21, 2015, and chose not to comply with a court order that would have freed the Plaintiff. Salem was detained until April 15, 2015, is spite of court orders to release him notwithstanding $ 1 bail. Salem was intentionally confined without justification. He was aware of his confinement and did not give consent. Therefore Salem's claim under the Fourth Amendment for false imprisonment and false arrest should not be dismissed.

## PLAINTIFF IS NOT JUDICIALLY ESTOPPED FROM PURSUING HIS FALSE ARREST/FALSE IMPRISONMENT CLAIM.

Defendants argue that Salem's claim grounded under the Fourth Amendment for False Imprisonment is should be judicially estopped. (**Def's memo**) at pg. 15). Defendants rely on **DeRosa v. Nat'l Envelope Corp.**, 595 F. 3d 99, 103 (2nd Cir. 2010.) for the proposition that " Typically, judicial estoppel will apply if: 1) a party's later position is "clearly inconsistent with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel. Id.(**Def's memo pg**. 16.). The application of judicial estoppel is not relevant to the instant matter and Defendants reliance on DeRosa is misguided and misplaced. First, Salem, although he filed an appeal which is currently pending, is not disputing his conviction based on his arrest on November 21, 2014 under docket number 2014088542. Salem however is claiming that his imprisonment on $ 1 bail from

November 28, 2014, through April 15, 2015 was unreasonable and unjustified. In essence Salem was falsely imprisoned when he was order brought to court on January 21, 2015, in civilian clothes in preparation for his release but returned to Rikers Island.   Defendants' reliance on DeRosa is not controlling in the instant matter. **DeRosa** sued National Corp, his former employer, alleging discrimination on account of a medical disability, in violation of the American with Disabilities Act. DeRosa argued that the district court was incorrect in its conclusion that as a consequence of statement he made in application forms for disability benefits, he was judicially estopped from arguing that he was capable of performing the essential functions of his job. The Court of Appeals disagreed and reversed and remanded back to the district court for further proceedings.   **DeRosa v. Nat'l Envelope Corp.**, 595 F. 3d 99, 103 (2nd Cir. 2010).   "[U]nder proper circumstances, a criminal conviction may be used for purposes of collateral estoppel in later civil proceedings."   **Gossage v. Roberts**, 904 S.W.2d 246, 248 (Ky.Ct.App.1995) (citing **Roberts v. Wilcox**, 805 S.W.2d 152 (Ky.Ct.App.1991)).   The Gossage court summarized Kentucky law on issue preclusion: The general rule is that a judgment in a former **action operates as an estoppel only as to matters which were necessarily involved and determined in the former action, a**nd is not conclusive as to matters which were immaterial or unessential to the determination of the prior action or which **were not necessary to uphold the judgment**." **Id**.(emphasis) The Supreme Court has held that issues decided in a state-court criminal proceeding may preclude **relitigation of the same issues in a subsequent § 1983 action in federal court**.   **Allen v. McCurry**, 449 U.S. 90, 102, 101 S. Ct. 411, 419, 66 L.Ed.2d 308 (1980). (Emphasis added) The Court has recognized that "those circuits that have developed the doctrine agree that its purpose is to protect judicial integrity. **New Hampshire v. Maine**,  532, U.S 742, 749 (2001). In addition, several courts have justified the doctrine by reference to the **need to protect the sanctity of a litigant's oath.**  Jurists have described the threat to courts' integrity as occurring when litigants "'play[ ] fast and loose with the courts

to suit the exigencies of self-interest'- **In Re Coastal Plains, Inc**. 179 F.3d 197, 205 (5th Cir. 1999)(quoting **Brandon v. Interfirst Corp**., 558 F2d. 266, 268 (5th Cir. 1988),  or "'abus[e] the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment.' ". **Warda v. Comm'r,** 15 F.3d 533, 538, (6th Cir. 1994).  Courts maintain this rationale despite the windfall benefits accruing to some parties who successfully assert judicial estoppel. The Supreme Court has stated that "[b]ecause the rule is intended to prevent 'improper use of judicial machinery,' . . . judicial estoppel 'is an equitable doctrine invoked by a court at its discretion." **New Hampshire v. Maine**, 532, U.S 742, at 752 (2001). Salem's claim of false imprisonment during the period he was ordered released in civilian clothes and brought back to Rikers Island constitutes a distinct cause of action from his November 21, 2014, arrest. Salem's second arrest and imprisonment, on January 21, 2015, was unreasonable and lack a constitutional basis for his continued confinement. There is no abuse of the judicial proves by a former inmate unaware of his legal right to be free from incarceration upon court order was held and returned to prison for 138 days. Is attempting to enforce the provisions found in 42 U.S. C. 1983, in the instant case, an improper use of the judicial machinery that invokes estoppel?    The Defendants in the instant matter **never mentioned in their memorandum of law that Salem was entitled to be released from incarceration on January 21, 2015 when he was ordered produced to court in civilian clothes. (emphasis)** ( **Def's memo** Pg. 1-31). Moreover, the Defendants' attempt to influence this Court by dismissing Salem's amended complaint, failed to mention in their argument of judicial estoppel that the DOC disobeyed Judge Mennin Court order to Produce Salem to court in civilian clothes. Defendant's failure to mention this significant fact, nor did the Defendants take time to describe to this Court the reasons for the DOC's failure to comply with the January 15, 2015, order. Mr. Salem was unreasonably seized and taken back to Rikers Island in defiance of a court order. Defendants argument for judicial estoppel is misplace and

misguided, thus Defendant's request to dismiss Plaintiff claim for false imprisonment should therefore be dismissed.

**PLAINTIFF'S  RETURN TO RIKERS ISLAND ON JANAURY 21, 2015, AND ON FEBRUARY 11, 2015 , WAS AN UNLAWFUL SEIZURE UNDER THE FOURTH AMENDMENT.**

The Defendants argue that Salem return to Rikers Island from criminal court on January 21, 2015 and on February 11, 2015, following criminal court was not an unconstitutional seizure.(**Def's memo pg. 17, 18**, ) . According to the Defendants, Plaintiff failed to state a Fourth Amendment claim because the pending criminal charges under docket no. 2014NY088542, provided justification for his continued detention until bail was paid on April 15, 2015. **Id**. at 17. Defendants also state that there was legal justification following the February 11, 2015, proceeding because there was no indication plaintiff was supposed to have been released from custody on that date. **Id**  at 18. Defendants rely in part on **Exhibit G a**ttached to amended complaint.  The Defendants memoranda of law is flawed and misleading.

First, **Defendants again fails to properly inform the court of the January 15, 2015, order to the DOC to produce Salem in civilian clothes which is undisputable.** (**Am. Compl**.) Exhibit "E". Defendants offer no explanation as to why the DOC, its warden and commissioner failed to comply with the explicit court order. See (Def's memo) pg. 11-12. Salem was entitled to be released from incarceration on January 21, 2015.  In fact, in reviewing the Defendants memorandum of law in its entirety, I find **no mention to Judge Mennin's order to produce Salem in court in civilian clothes**. (Def's memo) pg. 1-31.  Defendant's stated that the January 15, 2015,  court order which required the Warden at the AMKC facility and Commissioner to produced Salem in court on January 21, 2015, that this orders " is **implausible that the criminal court would issue a subsequent order in the same matter ordering that bail be set.**  In fact the transcript of the January 14, 2015, proceeding confirms that the criminal court set plaintiff's bail at $ 1 in Docket No. 2014NY088543, demonstrating that , prior

30

to January 15, 2015, plaintiff was nor entitled to release from custody even solely in connection with Docket No.2014NY088543."**Id** ( Def's memo) pg. 12.

Nothing could be more further from the truth. It is clear that bail was not required when an inmate in custody charged with a felony and grand jury fails to indict within 144 hours, must be released on his own recognizance. (**Am. Compl.**) ¶¶ 58-59. See also criminal court transcript recognizing Salem's release under P.L. Section 180.80 Id. **Exhibit " C".** See also (**Am. Compl**). **Exhibit D"** court order to release Salem under docket no. 2014NY088543. Thus, Salem was entitled to be released on November 28, 2014. Now comes the Defendant, City of New York claiming the that November 28, 2014, order to release Salem was not valid because no bail had been set. This argument defies logic. Second, Defendants deliberately failed to include in their argument against Mr. Salem, the actual language in the January 15, 2015, court order. The Defendants failed to include that part of Judge Mennin's order under docket no. 2014NY088543, which stated in part "**ORDERED** , that he Warden of said facility or whoever shall have the supervision and control of a defendant shall deliver the said defendant in civilian clothes into the custody of the Commissioner of Correction of the City of New York, and it is further **ORDERED** that the Commissioner of Correction receive this said defendant from the said Warden and produce in Part F on January 21, 2015, at 9:a.m of that day at the Courthouse located at 100 Centre Street. **SO ORDERED HON Felicia A. Mennin (** Am. Compl.) **Exhibit "E".**

Defendant's memorandum of law stated that "Prior to January 15, 2015, plaintiff was not entitled to release from custody even solely in connection with Docket No. 2014NY088543.( **Def's memo**) pg. 12.) Defendant's argument is absurd. Mr. Noble now claims that Judge Mennin's order on January 15, 2015, is invalid and that Salem was not entitled to his constitutional right to be released upon court order.  Based on the Defendants' application to this Court, the City of New York is exempt from

complying with judicial orders releasing inmates from custody of the DOC.  Defendants motion to dismiss the Plaintiff's amended complaint should be denied.

## PLAINTIFF'S FALSE ARREST, FALSE IMPRISONMENT CLAIM IS NOT BARRED UNDER HECK V. HUMPHREY.

The Defendants' argue that Salem claim of false arrest/false imprisonment is barred by **Heck v. Humphrey**, 512 U.S. 477, 486-87 (1994), based on the fact that Salem was convicted and sentenced under docket no. 2014NY088542. Again Salem is not challenging the conviction under this civil rights lawsuit.  Although Salem was found guilty, his case is currently under appeal.

The gravamen of this cause of action stems not on the charges under the above docket number which is based on Salem's November 21, 2014, but under the fact that two court orders *were ignored by the DOC*, once on November 28, 2014, and then again on January 21, 2015, when Salem was not brought to court as ordered in civilian clothes and not released as anticipated by Judge Mennin when she issued the order to produce Salem in civilian clothes. Thus **Heck** is not controlling under Salem's unreasonable seizure which occurred November 28, 2014, January 21, 2015, and again on February 15, 2015 when judge Mennin's order was still in effect but ignored by the DOC.

The Defendants argue that it is constitutional to not  inform inmates of the fact that their bail had been reduce to one dollar and that it's not unconstitutional to continue to hold inmates on dollar bail. The DOC is responsible for the inmate's custody, and welfare. Part of the DOC responsibility is to ensure that inmates are produced in court and that the information which changes the status of the inmate's incarceration must be conveyed to the inmates. The DOC has procedures in place which changes the status of the inmate's incarceration. Yet, the DOC is currently holding hundreds of inmates on one dollar bail, an unconstitutional practice, policy and custom.

## CONCLUSION

Plaintiff's amended complaint has alleged sufficient factual matter set forth in paragraphs 46-228, which accepted as true, such claims are stated with the required facial plausibility allowing this Court to draw reasonable inferences that the Defendants in the instate matter are liable for their misconduct which deprived Mr. Salem of his liberty interest for one hundred thirty eight days, in Rikers Island. Plaintiff's amended complaint contains the "**how, when and where**" Plaintiff suffered his deprivation of freedom and as a result has "nudged his claims across the line from conceivable to plausible "thus satisfying the pleading standard detailed in **Iqbal**. Moreover, Mr. Salem has met the threshold requirement which calls for Plaintiff to state enough facts to raise a reasonable expectation that discovery will reveal evidence of the of necessary elements stated in his claims.    Therefore Plaintiff respectfully requests this Court to deny Defendant's motion to dismiss under Rule 12 (b)(6) as inappropriate at the present time and allow Mr. Salem the opportunity to obtain discovery. **Phillips v. County of Allegheny**, 515 F. 3d at 234 (quoting **Twombly**,  550 U.S. at 556.(Emphasis added) "A Court may not dismiss a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." **Conley v. Gibson**, 355 U.S. 41, 45-46 (1957). Plaintiff can, given the opportunity, prove those essential facts in support of his allegations against the City of New York, the New York City Department of Correction and it employees through discovery. Defendants' motion to dismiss purposely omits material facts in this case that Salem was not produced in court civilian clothes, January 21, 2015, for his release. There is no legitimate reason for the continued incarceration. Plaintiff respectfully requests this Court to deny Defendants motion in its entirety.

Respectfully submitted,

By /s/_____

Welton K. Wisham, Esq, (WW8674)
The Law Office of Welton K. Wisham
43 West 43rd Street, Suite 95
New York, New York 10036:7424
(212) 709-8183 Office
(718) 678-8062 Fax
Attorney for the Plaintiff

Dated: February 25, 2018


To: via ECF and First Class Mail
Alexander Noble
Assistant Corporation Counsel
Special Federal Litigation Division
100 Church Street
New York, New York 10007
(212)356-2357