Index No. 17-CV-4799 (JGK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AITABDELLAH SALEM,

Plaintiff,

-against-

CITY OF NEW YORK, JOSEPH PONTE,
COMMISSIONER OF THE NEW YORK CITY
DEPARMTENT OF CORRECTION, IN HIS
INDIVIDUAL AND OFFICIAL CAPACITY, JOHN DOE
NO.1, WARDEN, NEW YORK CITY DEPARTMENT OF
CORRECTION, JOHN DOE NO. 2, ASSISTANT
WARDEN, OF THE NEW YORK CITY DEPARTMENT
OF CORRETION, IN HIS INDIVIDUAL AND OFFICIAL
CAPACITY, JOHN DOE NO.3, TOUR COMMANDER
NEW YORK CITY DEPARTMENT OF CORRECTION,
AMKC, RIKERS ISLAND, IN HIS INDIVIDUAL AND
OFFICIAL CAPACITY, JOHN DOE NO. 4, CAPTAIN,
NEW YORK CITY DEPARTMENT OF CORRECTION,
AMKC, RIKERS ISLAND, IN HIS INDIVIDUAL AND
OFFICIAL CAPACITY,

Defendants.

**REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED
COMPLAINT PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 12(B)(6)**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants City and Ponte*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Alexander Noble*
*Tel:  (212) 356-2357*
*Matter No. 2017-038663*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...........................................................................ii

PRELIMINARY STATEMENT .............................. **ERROR! BOOKMARK NOT DEFINED.**

ARGUMENT

      POINT I

            PLAINTIFF FAILS TO REBUT THAT HE HAS
            NOT PLAUSIBLY ALLEGED ANY
            ACTIONABLE SUBSTANTIVE OR
            PROCEDURAL DUE PROCESS VIOLATION ...................................... 1

         A.  No Actionable Substantive Due Process Claim.................................. 1

         B.  Plaintiff's Admitted Residency at Apartment
             9A Created Probable Cause to Arrest Her for
             Constructive Possession of the Contraband
             Found Therein....................................................................................... 3

             1.  Plaintiff Fails to State a Protectable
                  Liberty Interest Necessary For an
                  Actionable Procedural Due Process
                  Claim............................................................................... 3

             2.  Availability of Post-Deprivation Remedies
                  Is Sufficient Because the Alleged
                  Deprivation Was Random and
                  Unauthorized................................................................... 5

                  a.  The Alleged Deviation from
                      Established DOC Procedures is a
                      "Random and Unauthorized" Act.........................................5

                  b.  Plaintiff's Alleged Procedural Due
                      Process Violation Was  Not
                      Committed by a High-Ranking
                      Official With Final Policy-Making
                      Authority..............................................................................6

      POINT II

            PLAINTIFF FAILS TO REBUT THAT HE HAS
            NOT PLAUSIBLY ALLEGED ANY
            ACTIONABLE SECTION 1983 MUNICIPAL
            LIABILITY CLAIM ..................................................................... 9

POINT III

      PLAINTIFF FAILS TO REBUT THAT HE HAS
      NOT PLAUSIBLY ALLEGED ANY STRIP
      SEARCH CLAIM ........................................................................ 11

      A.  Plaintiff Was Not Entitled to Be Released From
           Custody Until His Bail Was Paid On April 15,
           2015 ................................................................................ 12

      B.  Plaintiff's False Imprisonment Claim is Barred
           Under Heck v. Humphrey. ................................................ 13

      C.  Judicial Estoppel Should Bar Plaintiff's False
           Imprisonment Claim ........................................................ 14

POINT IV

      PLAINTIFF FAILS TO REBUT THAT HE WAS
      NOT UNLAWFULLY SEIZED WHEN HE WAS
      REMANDED INTO DOC CUSTODY
      FOLLOWING COURT APPEARANCES ................................................ 14

CONCLUSION ........................................................ **ERROR! BOOKMARK NOT DEFINED.**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Anti-Monopoly, Inc., v. Hasbro, Inc.,
   958 F. Supp. 895 (S.D.N.Y. 1997)...................................................................................... 7

Bell Atlantic Corp. v. Twombly,
   127 S. Ct. 1955 (2007)................................................................................................... 14

Bolmer v. Oliveira,
   594, F. 3d 134, 142 (2d Cir. 2010)................................................................................... 6

Bynum v. District of Columbia,
   257 F. Supp. 2d 1 (D.D.C. 2002).................................................................................... 14

Chase Group Alliance v. City of N.Y.,
   620 F.3d 146 (2d Cir. Sept. 14, 2010) ............................................................................. 8

Connick v. Thompson,
   563 U.S. 51 (2011)......................................................................................................... 12

Diblasio v. Novello,
   01-CV-4498 (WHP), 2002 U.S. Dist. LEXIS 18424 (S.D.N.Y. Sep. 27, 2002) ............. 10, 11

DiBlasio v. Novello,
   344 F.3d 292 (2d Cir. 2003)......................................................................................... 9, 10

Donohue v. Manetti,
   15-CV-636 (JFB) (GRB), 2016 U.S. Dist. LEXIS 22565 (E.D.N.Y. Feb. 24,
   2016) ............................................................................................................................ 13

Downing v. City of New York,
   13-CV-4247 (KBF), 2013 U.S. Dist. LEXIS 145483 (S.D.N.Y. Oct. 3, 2013) ................... 11

Dudek v. Nassau County Sheriff's Dep't,
   12-CV-1193 (PKC), 991 F. Supp. 2d 402 (E.D.N.Y. 2013)............................................... 7

Florence v. Bd. of Chosen Freeholders,
   566 U.S. 318 (2012)................................................................................................... 14, 15

Giano v. Selsky,
   238 F.3d 223 (2d Cir. 2001)............................................................................................. 6

Green v. McCall,
   822 F.2d 284 (2d Cir. 1987)............................................................................................. 6

Heck v. Humphrey,
   512 U.S. 477 (1994) ................................................................................. 15, 16

Henry v. City of N.Y.,
   638 F. App'x 113 (2d Cir. 2016) ................................................................. 8

Hunt-Watts v. Nassau Health Care Corp.,
   12-CV-1815 (PKC), 2014 U.S. Dist. LEXIS 116728 (E.D.N.Y. Aug. 21,
   2014) ................................................................................................................. 7

Hunter v. City of N.Y.,
   10-CV-3532 (RA), 2015 U.S. Dist. LEXIS 130432 (S.D.N.Y. Sep. 28, 2015) ...................... 6

Lipton v. Cnty. of Orange,
   NY, 315 F. Supp. 2d 434 (S.D.N.Y. 2004) ................................................. 7

Logan v. Shealy,
   660 F.2d 1007 (4th Cir. 1981) ................................................................... 14

Monell v. Dep't of Social Services,
   436 U.S. 658 (1978) ....................................................................................... 12

Moore v. Newton,
   220 F. Supp. 3d 275 (E.D.N.Y. 2016) ....................................................... 11

New Windsor Volunteer Ambulance Corps., Inc v. Meyers,
   442 F.3d 101 (2d Cir. 2006) ....................................................................... 11

Southerland v. City of N.Y.,
   680 F. 3d 127 (2nd Cir. 2011) ..................................................................... 5

Victory v. Pataki,
   814 F.3d 47 (2d Cir. 2016) ....................................................................... 6, 7

Viteritti v. Inc. Vill. of Bayville,
   918 F. Supp. 2d 126 (E.D.N.Y. 2013) ......................................................... 8

## PRELIMINARY STATEMENT

Plaintiff's opposition papers fail to set forth any grounds on which defendants'
motion to dismiss the Amended Complaint should be denied. The facts alleged in the Amended
Complaint, and established by related documents,[1] demonstrate that plaintiff fails to allege any
actionable claim arising from his detention in Department of Correction ("DOC") custody
between November 28, 2014 and April 15, 2015. Plaintiff has failed to rebut defendants' two
primary arguments that (i) the criminal court's November 28, 2014 Order did not require DOC
officials to release him from custody; and (ii) plaintiff's pending charges under Docket No.
2014NY088542 provided justification for his detention until he was released upon bail payment
on April 15, 2015. For the reasons set forth below, defendants' motion to dismiss should be
granted and the Amended Complaint should be dismissed in its entirety with prejudice.

## ARGUMENT

**I.      PLAINTIFF FAILS TO REBUT THAT HE HAS NOT PLAUSIBLY
ALLEGED ANY ACTIONABLE SUBSTANTIVE OR PROCEDURAL
DUE PROCESS CLAIM.**

### A.      No Actionable Substantive Due Process Claim.

Plaintiff fails to rebut defendants' argument that his substantive due process claim
must be dismissed because it is merely a restatement of his false imprisonment claim, for which
the Fourth Amendment provides an explicit source of constitutional protection. Plaintiff's
substantive due process claim is premised on the allegation that DOC officials unlawfully

---

[1] Plaintiff does not dispute that the Court may consider plaintiff's Exhibits A through J to the
Amended Complaint or defendants' Exhibits 1 through 5 in deciding the instant motion, and in
fact annexed these same documents to his opposition papers. See Plaintiff's Opposition, Dkt. No.
66-1 to 66-11; Defendants' Memorandum of Law, Dkt. No. 61-1, p. 7-9.

detained him after the criminal court allegedly ordered his release on November 28, 2014. See Plaintiff's Opposition, Dkt. No. 66-1, p. 6. However, plaintiff acknowledges that "[w]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." See Plaintiff's Opposition, Dkt. No. 66-1, p. 11. Here, there is no dispute that the Fourth Amendment provides an explicit textual source of protection against unlawful detention, and thus provides the proper framework to analyze plaintiff's allegations that he was unlawfully detained.

Plaintiff's citation to the child-removal case Southerland v. City of N.Y., 680 F. 3d 127 (2nd Cir. 2011) does not support the contention that his unlawful detention allegation is actionable under a substantive due process theory. In Southerland, the parent of children unlawfully removed by government officials was permitted to pursue a substantive due process claim even though the children were alleging their own unlawful seizure claim under the Fourth Amendment arising from the same removal. See Southerland, 680 F. 3d at 151-152. However, the substantive due process claim in Southerland belonged to the parent, and thus was not duplicative of the Fourth Amendment claim brought by the children, unlike the claims here which belong to a single plaintiff. Moreover, the court noted in Southerland that "parents have a constitutionally protected liberty interest in the care, custody and management of their children, and that the deprivation of this interest *is actionable on a substantive due process theory*." See Southerland, 680 F. 3d at 152 (emphasis added). Thus, Southerland's holding is specific to the

child-removal context, and lends no support whatsoever to plaintiff's argument that unlawful detention is actionable under a substantive due process theory.[2]

### B.   No Actionable Procedural Due Process Claim.

In a procedural due process claim, "a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendants deprived him of that interest as a result of insufficient process." Hunter v. City of N.Y., 10-CV-3532 (RA), 2015 U.S. Dist. LEXIS 130432, *30-*31 (S.D.N.Y. Sep. 28, 2015) (citing Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001)). "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property without due process of law, and those who seek to invoke its procedural protection *must establish that one of these interests is at stake*." Victory v. Pataki, 814 F.3d 47, (2d Cir. 2016) (emphasis added). "In order to have a protectable liberty interest, a prisoner must have more than a hope or a unilateral expectation of release. He must, instead, have a legitimate claim of entitlement to it." Id. (citing Green v. McCall, 822 F.2d 284 (2d Cir. 1987)).

### 1.   Plaintiff Fails to State a Protectable Liberty Interest Necessary For an Actionable Procedural Due Process Claim.

Plaintiff alleges that DOC officials violated his right to procedural due process by failing to release him from custody after the criminal court issued the November 28, 2014 Order, which plaintiff claims entitled him to be released. See Plaintiff's Opposition, Dkt. No. 66-1, p. 11; November 28, 2014 Order, Annexed to Amended Complaint as Exhibit "D." However,

---

[2] Even if plaintiff's allegedly unlawful detention were actionable as a substantive due process claim, plaintiff fails to show that DOC officials' conduct of detaining plaintiff until his bail was paid was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." See Bolmer v. Oliveira, 594, F. 3d 134, 142 (2d Cir. 2010).

plaintiff has entirely failed to respond to defendants' argument that the November 28, 2014 Order did not require plaintiff's release from custody because it only applied to the charges arising under Docket No. 2014NY088543. See Defendants' January 23, 2018 Memorandum, Dkt. No. 61, p. 11-12. As set forth at length in defendants' motion papers, the November 28, 2014 Order had no effect on the validity of plaintiff's continued detention on the charges under Docket No. 2014NY088542, which provided legal justification for plaintiff's continued detention until April 15, 2015 when his bail was paid in connection with  Docket No. 2014NY088542.

In light of plaintiff's failure to provide any reasoned argument in response to defendants' argument that the charges under Docket No. 2014NY088542 provided justification for his continued detention, this issue should be deemed abandoned and plaintiff's procedural due process claim should be dismissed. See Dudek v. Nassau County Sheriff's Dep't, 12-CV-1193 (PKC), 991 F. Supp. 2d 402 (E.D.N.Y. 2013)(granting defendant's motion to dismiss § 1983 claim based on plaintiff's failure to address arguments in opposition) (citing Anti-Monopoly, Inc., v. Hasbro, Inc., 958 F. Supp. 895, 907 (S.D.N.Y. 1997)("The failure to provide argument on a point at issue constitutes abandonment of the issue."); Hunt-Watts v. Nassau Health Care Corp., 12-CV-1815 (PKC), 2014 U.S. Dist. LEXIS 116728, **11-12 (E.D.N.Y. Aug. 21, 2014); Lipton v. Cnty. of Orange, NY, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").

At best, plaintiff's telling failure to even address defendants' argument on this score reinforces the conclusion that the November 28, 2014 Order did not require plaintiff's release from custody, and therefore did not create a "legitimate claim of entitlement" to release

from custody. See Pataki, 814 F.3d 47, 59 (2d Cir. 2016). Plaintiff's failure to plausibly establish a protectable liberty interest in his release is fatal to his procedural due process claim. In light of the above, plaintiff's procedural due process claim must fail, and defendants' motion to dismiss should be granted as to this claim.

### 2. Availability of Post-Deprivation Remedies Is Sufficient Because the Alleged Deprivation Was Random and Unauthorized.

Even if plaintiff established a protectable liberty interest in being released on November 28, 2014, his procedural due process claim still fails due to the availability of adequate post-deprivation remedies. Plaintiff does not dispute that, as a matter of law, the availability of an adequate post-deprivation remedy is sufficient to vitiate a procedural due process claim where the alleged deprivation results from "random and unauthorized acts" by government officials. See Plaintiff's Opposition, Dkt. No. 66-1, p. 12. Plaintiff seeks to escape the import of this conclusion by arguing that: (i) the official acts resulting in his deprivation were not "random and unauthorized" because they were "based on" established DOC procedures; and (ii) acts by high-level officials cannot be characterized as "random and unauthorized." See Plaintiff's Opposition, Dkt. No. 66-1, p. 12-13, 17-18.

### a. The Alleged Deviation from Established DOC Procedures is a "Random and Unauthorized" Act.

The Second Circuit has held that, for purposes of procedural due process, it is the plaintiff's burden to plead and prove that the complained of acts are not "random and unauthorized," or else the availability of an adequate post-deprivation remedy will suffice. See, e.g., Henry v. City of N.Y., 638 F. App'x 113, 115-116 (2d Cir. 2016) (upholding dismissal of procedural due process claim on Rule 12 motion based in part on the plaintiff's failure to plead complained of acts were not "random and unauthorized"). Moreover, as the Second Circuit has

clarified, the complained of acts must be made "pursuant to a statute, code, regulation, or custom" in order to be considered the result of "established state procedures." See Chase Group Alliance v. City of N.Y., 620 F.3d 146, 152 n.3 (2d Cir. Sept. 14, 2010); Viteritti v. Inc. Vill. of Bayville, 918 F. Supp. 2d 126, 134 (E.D.N.Y. 2013) ("Simply put, there is no information before the Court to suggest that the challenged conduct was undertaken in accordance with established state procedures - that is, 'pursuant to a statute, code, regulation, or custom.'").

Plaintiff argues that DOC officials caused him to be unlawfully detained by failing to timely process criminal court orders that required his release from custody.[3] See Plaintiff's Opposition, Dkt. No. 66-1, p. 12. Plaintiff paradoxically argues that the alleged failure to process these orders was "based on established state procedures," even though DOC's established procedures at the time required DOC officials to timely process all criminal court orders.  Plaintiff not only fails to identify a single DOC procedure or regulation that authorized DOC officials engage in the misconduct alleged; he has specifically demonstrated that the complained of acts were not undertaken in accordance with established procedures, and were therefore "random and unauthorized" for purposes of procedural due process.

> **b.    Plaintiff's Alleged Procedural Due Process Violation Was Not Committed by a High-Ranking Official With Final Policy-Making Authority.**

Plaintiff additionally argues that the complained of acts resulting in the deprivation of his right to procedural due process cannot be considered "random and

---

[3] Defendants maintain that, as set forth above and in defendants' January 23, 2018 memorandum, plaintiff fails to establish as a factual matter that any of the criminal court's orders entitled him to be released prior to April 15, 2015 when he bail was paid in connection with Docket No. 2014NY088542.

unauthorized" because they were undertaken by high ranking prison officials. See Plaintiff's Opposition, Dkt. No. 66-1, p. 18. Plaintiff cites a line of cases based on DiBlasio v. Novello, 344 F.3d 292 (2d Cir. 2003), in which the Second Circuit held "that the 'random and unauthorized' exception to the requirement of a pre-deprivation hearing does not apply where the government actor in question is a high-ranking official with 'final authority over significant matters.'" DiBlasio, 344 F.3d at 302. However, the limited exception recognized in DiBlasio is inapplicable here. In Deblasio, the plaintiff radiologist alleged that the defendant, then the Commissioner of the New York State Department of Health, violated his right to procedural due process by making false and defamatory statements at a press conference accusing the plaintiff of medical malpractice. See DiBlasio, 344 F.3d at 302-303. The district court held that the defendant commissioner's public statements were "random and unauthorized" because the New York State statute governing the release of information by the New York State Department of Health did not specifically authorize the defamatory statements to be made. Diblasio v. Novello, 01-CV-4498 (WHP), 2002 U.S. Dist. LEXIS 18424, *60 (S.D.N.Y. Sep. 27, 2002). In reversing, the Second Circuit held that, even though not specifically authorized by statute, established state procedures gave the defendant commissioner "final authority on many department matters, including the content of press releases and her own statements in press conferences." See DiBlasio, 344 F.3d at 303. Thus, the Second Circuit reasoned that, "categorizing acts of high-level officials as 'random and unauthorized' makes little sense because the state acts through its high-level officials." See DiBlasio, 344 F.3d at 302-303.

Here, unlike Diblasio, there is no showing that a DOC official with final policy-making authority authorized plaintiff's detention in violation of court orders and established DOC procedures. Plaintiff argues that "Joseph Ponte and the wardens, Tour Commanders,

Assistant wardens, and Captains are believed to be high ranking officials with final authority." See Plaintiff's Opposition, Dkt. No. 66-1, p. 18. The only DOC official who can be considered to have "final authority" over DOC policy is defendant Commissioner Ponte, and plaintiff has offered only conclusory allegations that defendant Ponte was even aware that plaintiff's detention, let alone that Ponte made an individualized decision to continue or authorize the continuation of plaintiff's detention in defiance of court orders and established DOC procedures. See Amended Complaint, Exhibit 1, ¶¶ 26-29. This is distinguishable from Diblasio, where the defendant commissioner made the allegedly defamatory statements herself at a press conference she conducted. See Diblasio, 2002 U.S. Dist. LEXIS 18424, *6 (S.D.N.Y. Sep. 27, 2002).[4] Subsequent cases have confirmed that the exception in Diblasio for high-ranking officials requires a showing that the official in question exercised their final authority to effectuate the complained of acts. See, e.g., New Windsor Volunteer Ambulance Corps., Inc v. Meyers, 442 F.3d 101, 116 (2d Cir. 2006) (town mayor's direct order to effectuate an unlawful seizure of property was not "random and unauthorized"); Moore v. Newton, 220 F. Supp. 3d 275, (E.D.N.Y. 2016) (parole commissioner's acts were not "random and unauthorized" because he authorized an interpretation of state statutes that permitted excessive incarceration of parolees).

Unlike Diblasio, Meyers, and Moore, plaintiff fails to plausibly establish that defendant Ponte exercised his final policy-making authority to continue or authorize the continuation of plaintiff's allegedly unlawful detention. Therefore, the acts that allegedly caused

---

[4] Plaintiff's failure to plausibly allege defendant Ponte's personal involvement in the decision to continue his detention also demonstrates a lack of personal involvement necessary to state an actionable § 1983 claim against Ponte. See Downing v. City of New York, 13-CV-4247 (KBF), 2013 U.S. Dist. LEXIS 145483, at *6 (S.D.N.Y. Oct. 3, 2013).

the deprivation of plaintiff's procedural due process right were "random and unauthorized" and not based on established state procedures. Plaintiff's procedural due process claim must fail due to the availability of post-deprivation remedies of an Article 78 proceeding or habeas petition.

To the extent plaintiff argues that post-deprivation remedies were insufficient to provide a remedy for his unlawful detention because he did not know he was being unlawfully detained, such an argument fails to support an actionable procedural due process claim against defendants. Plaintiff has not cited any authority for the proposition that DOC officials had a constitutional duty to inform plaintiff of the status of his criminal cases or his bail amount. There is no dispute that plaintiff's criminal defense attorneys, whom plaintiff has acknowledged owed him both a constitutional duty and ethical obligation as his counsel, failed to inform plaintiff about his detentions status. See Amended Complaint, Exhibit 1, ¶¶ 83-84. Moreover, plaintiff incorrectly frames the issue as whether or not "plaintiff was required to seek relief through an article 78, or habeas proceeding." See Plaintiff's Opposition, Dkt. No. 66-1, p. 18. For "random and unauthorized acts," the relevant question is whether any procedural mechanism existed for plaintiff to challenge his detention after the deprivation occurred. Plaintiff has failed to rebut that, at any time he was detained in DOC custody, he could have filed an Article 78 proceeding and habeas petition that would have required defendants to either release him or set forth the factual and legal bases for his continued detention.

## II. PLAINTIFF FAILS TO REBUT THAT HE HAS NOT PLAUSIBLY ALLEGED ANY ACTIONABLE SECTION 1983 MUNICIPAL LIABILITY CLAIM.

Plaintiff fails to rebut defendants' argument that because his alleged constitutional violation arises from a single incident, it is insufficient to support a failure-to-train claim pursuant to Monell v. Dep't of Social Services, 436 U.S. 658, 694–95 (1978). In particular, plaintiff has failed to respond to defendants' argument that the Amended Complaint and annexed

exhibits do not establish the existence of "[a] pattern of similar constitutional violations by untrained employees," as required for failure to train liability under Connick v. Thompson, 563 U.S. 51, 62 (2011). Plaintiff conclusorily alleges that DOC has a custom or practice of failing to train DOC employees in nine areas of detention-related procedures. See Plaintiff's Opposition, Dkt. No. 66-1, p. 19-20. However, plaintiff's opposition papers cite only to his own conclusory allegations in the Amended Complaint to show the existence of the alleged deficiencies in these areas without citation to any other source of information. See Plaintiff's Opposition, Dkt. No. 66-1, p. 20. Plaintiff's failure to plausibly allege any other instances of DOC unconstitutionally overdetaining criminal defendants in a manner similar to his own incident is fatal to his alleged failure to train claim. See Donohue v. Manetti, 15-CV-636 (JFB) (GRB), 2016 U.S. Dist. LEXIS 22565, *18 (E.D.N.Y. Feb. 24, 2016).

Additionally, plaintiff fails to meaningfully address defendants' argument that the two reports regarding DOC practices annexed to the Amended Complaint lack any plausible connection to his alleged overdetention. Plaintiff's opposition devotes considerable space to restating the findings of the Department of Investigation regarding DOC hiring practices set forth in a 2015 report ("DOI Report") annexed to the Amended Complaint as Exhibit J. However, plaintiff fails to rebut defendants' argument that, even assuming the truth of DOI's opinion that DOC employs underqualified correction officers, there is no averment of fact showing that such a practice has resulted in a widespread pattern of criminal defendants being unconstitutionally overdetained. Without such a pattern of similar constitutional violations, plaintiff cannot establish that defendant City had notice of any particular deficiency in its training of DOC employees required for failure to train liability to attach here.

## III.   PLAINTIFF FAILS TO REBUT THAT HE HAS NOT PLAUSIBLY ALLEGED ANY ACTIONABLE STRIP SEARCH CLAIM.

Plaintiff opposition does not address any of the authorities cited by defendants for the proposition that DOC's practice of conducting visual strip searches of detainees upon departure and return from court appearance do not violate the Fourth Amendment. See Defendants' January 23, 2018 Memorandum, Dkt. No. 61, p. 19-20 (collecting cases). Plaintiff instead flatly asserts that such a practice is unconstitutional, citing two cases from outside the Second Circuit that do not squarely address the relevant issue and predate the U.S. Supreme Court's precedential rulings in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007) and Florence v. Bd. of Chosen Freeholders, 566 U.S. 318, 328 (2012).

In Bynum v. District of Columbia, 257 F. Supp. 2d 1 (D.D.C. 2002), the U.S. District Court for the District of Columbia denied prison officials' motion to dismiss a complaint alleging that the District of Columbia's practice of strip searching all inmates returning from court to awaiting discharge from jail violated the Fourth Amendment. See Bynum, 257 F. Supp. at 1. The court determined that, based on the pre-Twombley standard governing Fed. R. Civ. P. 12 motions in effect at the time, it was "possible" for plaintiffs to prove a set of facts under which the alleged strip searches violated the Fourth Amendment. See Bynum, 257 F. Supp. 2d at 2. In Logan v. Shealy, 660 F.2d 1007 (4th Cir. 1981), the Fourth Circuit Court of Appeals reversed dismissal of a plaintiff's claim that she was unconstitutionally strip searched following an arrest for drunk driving. Logan, 660 F.2d at 1013. In finding the Fourth Amendment claim actionable, the court reasoned that the plaintiff's detention period following arrest was only a few hours long, she was not intermingled with the general prison population, and there was no cause to believe she had secreted contraband. Logan, 660 F.2d at 1013.

Both Bynum and Logan were decided before the Supreme Court's ruling in Florence v. Bd. of Chosen Freeholders, 566 U.S. 318, 328 (2012), which upheld the constitutionality of suspicionless visual strip searches of detainees in correctional facilities. Thus, the decisions in Bynum and Logan were decided according to a standard of Fourth Amendment law that has been superseded by the Supreme Court's ruling in Florence. Under the applicable standard in Florence, the alleged visual strip searches that plaintiff allegedly underwent before and after each court appearance were justified by DOC's legitimate interest promoting safety and preventing smuggling of prison contraband. See Florence, 566 U.S. at 328. Thus, plaintiff's alleged Fourth Amendment claim regarding strip searches fails as a matter of law, and defendants' motion to dismiss should be granted as to this claim.

## IV.  PLAINTIFF FAILS TO REBUT THAT HE HAS NOT PLAUSIBLY ALLEGED ANY ACTIONABLE FALSE ARREST/IMPRISONMENT CLAIM.

Plaintiff's opposition fails to rebut that his alleged false imprisonment claim is not actionable and should be dismissed on any of the following grounds: (i) plaintiff was not entitled to be released from custody until his bail was paid on April 15, 2015; (ii) plaintiff's false imprisonment claim is barred under Heck v. Humphrey; and (iii) plaintiff should be judicially estopped from pursuing a claim based on time counted toward his current criminal sentence.

### A.  Plaintiff Was Not Entitled to be Released From Custody Until His Bail Was Paid on April 15, 2015.

Plaintiff's opposition provides no meaningful response to defendants' argument that DOC officials had justification to detain him until his bail was paid in Docket No. 2014NY088542. Plaintiff repeatedly asserts "Salem has adequately demonstrated that the Defendants' intentionally confined him without the required justification." See, e.g., Plaintiff's Opposition, Dkt. No. 66-1, p. 27. However, plaintiff has not supported this assertion with any

averments of fact from which the Court may plausibly infer that he was entitled to be released from custody before his bail was paid on April 15, 2015. Most strikingly, as set forth above in Point I(B)(1), plaintiff's opposition provides no response whatsoever to defendants' argument that the criminal charges under Docket No. 2014NY088542 provided legal justification for his continued detention until his bail was paid in connection with that matter. Given plaintiff's failure to provide any reasoned response to this argument, this issue should be deemed abandoned and plaintiff's alleged false imprisonment claim should be dismissed.

**B.   Plaintiff's False Imprisonment Claim is Barred under <u>Heck v. Humphrey</u>.**

Plaintiff's perfunctory response to defendants' argument that his false imprisonment claim should be precluded under the favorable-termination requirement set forth in <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87 (1994) is unpersuasive. According to plaintiff, <u>Heck</u> does not bar plaintiff's false imprisonment claim because "Salem is not challenging the conviction under this civil rights lawsuit." <u>See</u> Plaintiff's Opposition, Dkt. No. 66-1, p. 29. Plaintiff overly narrow interpretation of <u>Heck</u> ignores the fact that the <u>Heck</u>-bar applies if success of a § 1983 claim would render a conviction invalid, or if it would render a criminal sentence invalid. <u>See</u> <u>Heck</u>, 512 U.S. at 486 ("whose unlawfulness would render a conviction *or sentence* invalid") (emphasis added).

Plaintiff does not dispute that he was credited with time served for the days he was allegedly unlawfully detained in DOC custody between November 28, 2014 and April 15, 2015. Plaintiff has failed to rebut that, if he succeeds in showing that his detention between November 28, 2014 and April 15, 2015 was invalid, that period of time comprising his criminal sentence would also necessarily be considered invalid. Thus, plaintiff cannot state an actionable false imprisonment claim under <u>Heck</u> without first showing that the length of his criminal

sentence has been adjusted to reflect that his time in custody between November 28, 2014 and April 15, 2015 was unlawful. Plaintiff's failure to show that the length of his criminal sentence has been challenged, overturned, or otherwise called into question is fatal to his alleged false imprisonment claim under <u>Heck</u>.

### C.   Judicial Estoppel Should Bar Plaintiff's False Imprisonment Claim.

Plaintiff fails to rebut defendants' argument that plaintiff should be judicially estopped from seeking money damages for the same detention period he used to reduce the length of his criminal sentence. Even if plaintiff's false imprisonment claim is not <u>Heck</u>-barred plaintiff should not be permitted to seek money damages for his detention between November 28, 2014 and April 15, 2015. Plaintiff's opposition to defendants' judicial estoppel argument asserts – for the first time – that his false imprisonment began on January 21, 2015 instead of November 28, 2014. <u>See</u> Plaintiff's Opposition, Dkt. No. 66-1, p. 28. However, as plaintiff's DOC Jail Time Certification demonstrates, Plaintiff was credited with a total of 470 days spent in DOC custody, including the 145 days he spent in DOC custody between November 22, 2014 and April 15, 2015. <u>See</u> DOC Jail Time Certification, Exhibit 4, p. 2-3. Plaintiff's conclusory assertion that he is not attempting to abuse the judicial process does not rebut that his current position challenging the lawfulness of his detention period to obtain money damages is clearly inconsistent with his earlier position conceding the lawfulness of the same period to obtain a shorter criminal sentence. Thus, plaintiff's false imprisonment claim should be barred under judicial estoppel, and defendants' motion to dismiss should be granted as to this claim.

## IV.   PLAINTIFF FAILS TO REBUT THAT HE WAS NOT UNLAWFULLY SEIZED WHEN HE WAS REMANDED INTO DOC CUSTODY FOLLOWING COURT APPEARANCES.

Plaintiff argues, in conclusory fashion, that DOC officials violated the Fourth Amendment by taking plaintiff back into custody following his criminal court appearances on

January 21, 2015 and February 11, 2015. See Plaintiff's Opposition, Dkt. No. 66-1, p. 30. Plaintiff fails to support this contention with any averments of fact in the Amended Complaint or annexed exhibits. In particular, plaintiff fails to address the authorities cited by defendants holding that the physical transfer of an inmate or detainee to a different location, without more, does not implicate the Fourth Amendment.

Plaintiff's opposition focuses heavily on his allegation that, on January 15, 2015, DOC officials were ordered to produce plaintiff to the courthouse "in civilian clothes" for a January 21, 2015 appearance and allegedly did not comply with the order. See, e.g., Plaintiff's Opposition, Dkt. No. 66-1, p. 30. As an initial matter, plaintiff has entirely failed to respond to defendants' argument that plaintiff's DOC Prisoner Movement Log shows DOC transported plaintiff from Rikers Island to the criminal court on each date he was scheduled for an appearance, including January 15, 2015. See DOC Prisoner Movement Log, Exhibit 2. Relatedly, plaintiff has not responded in any way to defendants' argument that the New York State Office of Court Administration, a New York State agency, bore responsibility for bringing plaintiff into the courtroom once DOC transported him to the courthouse. See Defendants' January 23, 2018 Memorandum, Dkt. No. 61, p. 26. Furthermore, even assuming the truth of plaintiff's allegation that DOC failed to produce plaintiff "in civilian clothes," plaintiff fails to demonstrate how this supports an actionable false imprisonment claim. Nothing in the text of the Court's January 15, 2015 Order states that plaintiff was entitled to be released from custody, and the transcripts of the January 21, 2015 and February 11, 2015 proceedings make no mention that plaintiff was supposed to be released on those dates. In light of plaintiff's failure to demonstrate that DOC officials detained him without justification at any point before he was released from custody on April 15, 2015, plaintiff fails to state an actionable false imprisonment claim.

## CONCLUSION

For the foregoing reasons, defendants City of New York and Commissioner Ponte

respectfully request that the Amended Complaint be dismissed with prejudice in its entirety, that

the relief requested therein be denied, and that they be awarded such other and further relief as

the Court deems just and proper.

Dated: New York, New York
  March 14, 2018

      ZACHARY W. CARTER
      Corporation Counsel for the  City of New York
      *Attorney for Defendants City and Ponte*
      100 Church Street, Room 3-168
      New York, New York  10007
      (212) 356-2357


      By:  /s/             
       Alexander Noble
       Assistant Corporation Counsel
       Special Federal Litigation Division


   **VIA ECF & FIRST CLASS MAIL**
TO: Welton K. Wisham, Esq.
  *Counsel for Plaintiff*

16