USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 8/1/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AITABDELLAH SALEM,

                Plaintiff,

- against -

THE CITY OF NEW YORK, ET AL.,

                Defendants.

17 Civ. 4799 (JGK)

MEMORANDUM OPINION
& ORDER

JOHN G. KOELTL, District Judge:

    The plaintiff, Aitabedellah Salem, brings this action pursuant to 42 U.S.C. § 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978), alleging that his Fourth and Fourteenth Amendment rights were violated while he was held in pretrial detention by the New York City Department of Correction (the "DOC") at the Anna M. Kross Center (the "AMKC") at Rikers Island and when he was strip-searched upon exiting and entering the facility on his way to and from court appearances. Salem has named as defendants the City of New York, Joseph Ponte, the Commissioner of the New York City Department of Correction, and four John Doe defendants -- a Warden, Assistant Warden, Tour Commander, and Captain -- in their individual and official capacities. Salem alleges claims of false imprisonment, unreasonable searches, denials of substantive and procedural due process, respondeat superior, failure to train, and municipal liability.

Currently pending before the Court is the defendants' motion to dismiss Salem's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the motion to dismiss is **granted**. However, because this is the first motion to dismiss, Salem's claims are **dismissed without prejudice** to Salem's filing any amended complaint.

I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations

in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

A court may also consider documents incorporated by reference in the complaint as well as documents the plaintiff either had in the plaintiff's possession or had knowledge of and upon which the plaintiff relied in bringing suit. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991). "A court may [also] take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment." Evans v. N.Y. Botanical Garden, No. 02-cv-3591, 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002); see also Zapotocky v. CIT Bank, N.A., No. 17-cv-6377, 2018 WL 3104090, at *2 (S.D.N.Y. June 22, 2018).

## II.

The following facts are taken from Salem's Amended Complaint and are assumed to be true for the purposes of this motion to dismiss.

On November 21, 2014, Salem was arrested for stealing a coat. The following day, on November 22, 2014, Salem was arraigned in New York Criminal Court and charged with Assault in the Second Degree and Petit Larceny, under docket number 2014NY088542. Am. Compl. ¶¶ 46-49. At the arraignment, the court

also addressed two additional cases with charges pending against Salem under docket numbers 2014NY088543 and 2014NY017648. The court set bail at $25,000 each on docket numbers 2014NY088542 and 2014NY088543 for a total of $50,000. Am. Compl. ¶ 50.[1] The cases with docket numbers 2014NY088542 and 2014NY088543 were adjourned to November 26, 2014, and the court sentenced Salem to time served for the case with docket number 2014NY017648. Am. Compl. ¶¶ 51-52. Following the arraignment, Salem was transferred to the AMKC at Rikers Island for pretrial detention. Am. Compl. ¶ 48.

On November 26, 2014, Judge Gilbert Hong reduced Salem's bail under docket number 2014NY088542 to $1.00 and adjourned the case to Feburary 11, 2015. Judge Hong also adjourned Salem's case under docket number 2014NY088543 to November 28, 2014. Salem was not produced in court on November 26, 2014, and neither his defense attorney nor employees of the DOC informed him that his bail had been reduced. Am. Compl. ¶¶ 53-55.

On November 28, 2014, Judge Melissa Crane presided over the adjourned proceeding under docket number 2014NY088543. Judge Crane ordered Salem's immediate release on his own recognizance on the 2014NY088543 case because the district attorney's office

---

[1] The Amended Complaint at times refers to docket number 2014BX088542 but this is most likely a typographical error, and is referred to in this opinion as 2014NY088542 for purposes of clarity.

4

failed to convene a grand jury within one hundred and forty four hours, as required by New York Criminal Procedure Law § 180.80. Am. Compl. ¶¶ 56-59. Salem was not produced in court on November 28, 2014, and his attorney waived Salem's appearance without Salem's knowledge or consent. Am. Compl. ¶¶ 56, 60. The case under docket number 2014NY088543 was adjourned to February 11, 2015, which was the same as the date set for the next hearing in the 2014NY088542 case. Am. Compl. ¶ 62.

The DOC received notice of Judge Crane's order to release Salem under docket number 2014NY088543 by fax on November 28, 2014. Am. Compl. ¶ 65. The DOC has enacted procedures that its officers must follow to process court orders, as outlined in its General Office Manual. Am. Compl. ¶¶ 109, 92-93. However, Salem remained in custody because his $1.00 bail in 2014NY088542 had not been paid. Am. Compl. ¶¶ 65-67.

On January 15, 2015, Judge Felicia A. Menin ordered that Salem be produced for a conference in New York Criminal Court on January 21, 2015, regarding the 2014NY088543 case. Am. Compl. ¶¶ 68-69; Am. Compl. Ex. E. Although the DOC received this order and marked it "Satisfied," Salem was not produced in New York Criminal Court on January 21, 2015. Am. Compl. ¶¶ 69-70; Am. Compl. Ex. E. Rather, on January 21, 2015, Salem's attorney -- Stephen Pokart of the Legal Aid Society -- appeared in court,

5

again waiving Salem's appearance without Salem's knowledge. Am. Compl. ¶ 74.

On February 11, 2015, Judge Lisa Sokoloff presided over a hearing in the case under docket number 2014NY088542. That day, Salem was brought from Rikers Island to the Criminal Court but held in the court's "holding pen," rather than being produced in front of Judge Sokoloff. Pokart appeared on Salem's behalf and, again, waived his appearance. Am. Compl. ¶¶ 75-79; Am. Compl. Ex. G, at 2. Judge Sokoloff adjourned the 2014NY088542 case to May 28, 2015, and continued the $1.00 bail condition. Am. Compl. ¶ 81. Salem returned to Rikers Island, where he was subject to a strip search. Am. Compl. ¶ 78. Salem was subject to a strip search each time he left Rikers Island to attend court and when he returned to Rikers Island after court. Am. Compl. ¶¶ 222-24.

During his detention at the AMKC, Salem requested information from corrections officers and defense attorneys as to the status of his cases. None informed him of the reduction in bail in the 2014NY088542 case or the order of release in the 2014NY088543 case. Am. Compl. ¶¶ 82-85.

On April 15, 2015 at 12:00 p.m., Salem's $1.00 bail under docket number 2014NY088542 was paid. Am. Compl. ¶¶ 86, 191. Salem was released from custody at 4:11 p.m. that same day. Am. Compl. ¶ 191.

On August 9, 2016, Salem was convicted of Assault in the Second Degree and Petit Larceny in the 2014NY088542 case following a trial. Salem was sentenced to a term of imprisonment of five years followed by a period of five years' post-release supervision. Noble Decl. Ex. 3. In calculating Salem's sentence, the DOC credited him the time he spent in pretrial detention from November 22, 2014, through April 15, 2015, when his $1.00 bail was paid. Noble Decl. Ex. 4, at 2-3. Salem has not challenged the validity of his convictions in the 2014NY088542 case.

Salem contends that the defendants willfully ignored multiple court orders and failed to ensure DOC employees properly followed the procedures required to comply with court orders, resulting in his alleged unlawful detention in violation of his constitutional rights. Am. Compl. ¶ 91.

### III.

#### A.

The defendants move to dismiss Salem's claims of false imprisonment in violation of his rights under the Fourth and Fourteenth Amendments. Salem contends that his detention after November 28, 2014 was unlawful because the DOC failed to release him or inform him of the reduction in his bail. Am. Compl. ¶¶ 28, 55-57, 235, 245. The defendants argue that they had probable cause and legal justification to detain Salem from November 28,

7

2014, through April 15, 2015 because Salem was lawfully indicted in the 2014NY088542 case on charges of assault and petit larceny and his $1.00 bail in that case remained unpaid.

Section 1983 claims for false arrest are based on the tort of false arrest under state law. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (finding that a § 1983 false arrest claim is "substantially the same" as a false arrest claim under New York State law in a case that arose in New York). In New York, false arrest and false imprisonment "are two names for the same tort." Holland v. City of Poughkeepsie, 935 N.Y.S.2d 583, 589 (2d Dep't 2011). To state a claim for false arrest or false imprisonment, the plaintiff must show that "(1) the defendants intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Id. (quoting Lee v. City of New York, 709 N.Y.S.2d 102, 102 (2d Dep't 2000)) (brackets and internal quotation marks omitted). For arrests by law enforcement officers, "[t]he existence of probable cause to arrest constitutes a 'complete defense' to an action for false arrest, whether that action is brought under Section 1983 or state law." Matthews v. City of New York, 889 F. Supp. 2d 418, 433 (E.D.N.Y. 2012) (citing Amore v. Novarro, 624 F.3d 522, 536 (2d Cir. 2010)); see Weyant, 101 F.3d at 852; see also Biswas v. City of New York, 973 F. Supp.

8

2d 504, 514-15 (S.D.N.Y. 2013). A valid conviction following an arrest establishes probable cause. See Jean-Laurent v. Cornelius, No. 15-cv-2217, 2017 WL 933100, at *4 (S.D.N.Y. Mar. 8, 2017) (citing Cameron v. Fogarty, 806 F.2d 380, 387 (2d Cir. 1986)).

Salem's claim fails because Salem does not challenge that he was validly indicted on the charges under docket number 2014NY088542 during his detention. There was an order of release issued in the 2014NY088543 case but there was also a $1.00 bail condition set in the 2014NY088542 case. Without paying that bail, Salem was not entitled to be released from jail pending trial in the 2014NY088542 case. Thus, the defendants were justified in holding Salem until bail was paid.

Accordingly, because the defendants had legal justification to detain Salem, the defendants' motion to dismiss the false imprisonment claim must be granted.

**B.**

The defendants move to dismiss Salem's claim that strip searching Salem amounted to an unreasonable search and seizure on the basis that strip-search policies are discretionary and, in this case, tied to reasonable security concerns.

Correctional officers are permitted to develop search policies that are reasonably related to legitimate security concerns – a determination that is "peculiarly within the province and professional expertise of correctional officers."

9

Florence v. Bd. of Chosen Freeholders, 132 S. Ct. 1510, 1517 (2012)(quoting Bell v. Wolfish, 441 U.S. 520 (1979)). This includes visual strip searches. Walker v. Ponte, No. 14-cv-8507, 2016 WL 4411415, at *4 (S.D.N.Y. Aug. 18, 2016). Further, "given the interest in preventing contraband from being moved into or out of jail facilities," strip searches upon entry following court appearances are generally constitutional. Smith v. City of New York, No. 14-cv-5934, 2015 WL 3929621, at *2 (S.D.N.Y. June 17, 2015) (collecting cases).

Salem claims he was subject to unreasonable search and seizure when he was taken back into DOC custody on February 11, 2015, after Judge Sokoloff heard Salem's case under docket No. 2014NY088542 and confirmed his bail conditions, because Judge Menin had previously issued an order of release in the 2014NY088543 case. Am. Compl. ¶¶ 75-78, 296.[2] However, as stated above, the defendants had a sufficient legal justification to continue to detain Salem while his bail in the 2014NY088542 case remained unpaid.

Salem argues that a strip search upon each visit to and from court was unreasonable. Am. Compl. ¶¶ 226, 302. However, Walker and Smith establish that routine strip searches after

---

[2] Paragraph 296 of the Amended Complaint refers to February 11, 2014, but that is likely a typographical error considering that allegation in the context of the entire Amended Complaint.

10

court appearances are not per se unconstitutional, and Salem has not alleged sufficient facts to show that the defendant's response to concerns for security were "exaggerated" in any way or intended to harass. See Walker, 2016 WL 4411415, at *4-5.

Accordingly, because the defendant's search and seizure had legal justification and was not unreasonable, the defendant's motion to dismiss Salem's unreasonable search claims must be granted.

C.

The defendants move to dismiss Salem's claim that the defendants violated his substantive due process rights under the Fourteenth Amendment.

Graham v. Connor, 490 U.S. 386 (1989), "requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n.7 (1997). In this case, the Fourth Amendment covers Salem's complaints of false imprisonment and unreasonable searches. His substantive due process claims are therefore barred by Graham.

Moreover, to state a substantive due process claim, Salem must plead that the defendants' conduct was so egregious or outrageous that it "shock[ed] the conscience." See Cty. of

11

Sacramento v. Lewis, 523 U.S. 833, 846 (1998); Bolmer v. Oliveira, 594 F.3d 134, 142 (2d Cir. 2010). A state actor must act with sufficient culpability to shock the conscience; generally, recklessness or gross negligence is required. Bolmer, 594 F.3d at 142-43.

    Salem argues that the defendants deprived him of substantive due process by failing to produce him in court, that his continued detention on $1.00 bail was arbitrary when he had been ordered released on the 2014NY088543 case, and that his detention for a few hours after his bail was paid was unreasonable. Am. Compl. ¶¶ 310-34. None of these alleged acts constitutes conscience-shocking conduct. Salem does not allege well-pleaded facts that suggest that the defendants acted with sufficient culpability. Failure to produce Salem in court and failure to inform Salem that his bail had been reduced may amount to negligence, but in total, his detention under these circumstances does not meet the standard required to be considered outrageous.

    Salem relies on cases that hold that detaining a person for a substantial period of time after a court orders the person's release from pretrial detention violates due process. See Am. Compl. ¶ 315 (citing Berry v. Baca, 379 F.3d 764, 773 (9th Cir. 2004) (detention of twenty-six to twenty-nine hours after release was ordered); Davis v. Hall, 375 F.3d 703, 713 (8th Cir.

2003) (incarceration for fifty-seven days after order of release); Barnes v. Dist. of Columbia, 242 F.R.D. 113, 115 (D.D.C. 2007) (over-detention of four to twenty-nine days)). None of these cases supports the plaintiff's contention that failure to release him in the four-hour period after his bail was paid, without any other explanation of unreasonableness, constitutes a denial of due process.

Given the need to account for administrative steps incident to release, the Constitution does not require that release be immediate. Lewis v. O'Grady, 853 F.2d 1366, 1370 (7th Cir. 1988) ("We recognize that the administrative tasks incident to a release of a prisoner from custody may require some time to accomplish—in this case perhaps a number of hours."); Holder v. Town of Newton, 638 F. Supp. 2d 150, 156 (D.N.H. 2009) ("[T]he Constitution does not invariably require the immediate release of a prisoner pursuant to a bail or other judicial order for his release." (internal quotation marks omitted)). Salem has failed to allege any facts to show that he was unreasonably detained after his bail was paid. When courts have found a constitutional violation for over-detention for periods shorter than four hours, other egregious conduct has occurred. See, e.g., Young v. City of Little Rock, 249 F.3d 730, 736 (8th Cir. 2001).

In this case, Salem was not ordered removed from custody in all of his pending criminal cases until his bail was paid in the

13

2014NY088542 case. He was released about four hours after his bail was paid. There is no explanation why that period of time was an unreasonable processing time, and there were no aggravating circumstances alleged. Rather, Salem simply argued incorrectly that he should have been released after he was ordered released on the 2014NY088543 case, ignoring the fact that he continued to be held for failure to pay bail on the 2014NY088542 case.

Lastly, Salem argues that that a substantive due process claim "challenges the fact of the deprivation itself." Southerland v. City of New York, 680 F.3d 127, 142-43 (2d Cir. 2011). Southerland addressed a parent's substantive due process rights following removal of a child from the parent's home by a caseworker, and held that parents have certain constitutionally protected interests over the care of their children. Id. at 152. That case has no relevance to this case.

Accordingly, the defendant's motion to dismiss Salem's substantive due process claim must be granted.[3]

### D.

The defendants move to dismiss Salem's claim that the defendants violated his procedural due process rights. Salem

---

[3] The Court notes that the plaintiff has not argued in this version of the complaint that the practice of holding inmates in custody on $1.00 bail is itself a violation of substantive due process.

14

argues that the officers' actions violated established procedures. The defendants argue that the officers' conduct was random and unauthorized, and that the availability of post-deprivation remedies precludes Salem's claim.

Because random misconduct cannot be anticipated and prevented by the government, "unauthorized acts of government officials [do] not violate procedural due process so long as the government provides a meaningful remedy subsequent to the deprivation." Locurto v. Safir, 264 F.3d 154, 172 (2d Cir. 2001) (citing Hudson v. Palmer, 468 U.S. 517, 531-32 (1984)). Article 78 proceedings or a state habeas proceeding, where available, are adequate post deprivation remedies in a § 1983 action. See Peterson v. Tomaselli, 469 F. Supp. 2d 146, 166 (S.D.N.Y. 2007) (collecting cases).

Salem argues that in failing to adhere to internal guidelines for processing court orders and in failing to produce Salem for the hearing on January 21, 2015, the defendants deviated from established, authorized procedure, resulting in violation of rights for a pretrial detainee including deprivation of liberty without due process and cruel and unusual punishment.[4] Am. Compl. ¶¶ 316-29. Rather than support Salem's

---

[4] The Eighth Amendment protection against cruel and unusual punishments is inapplicable in this case because it applies only to those convicted of crimes. The Fifth and Fourteenth Amendments provide

15

claim for a violation of procedural due process, this argument shows that any harm caused to Salem was the product of unauthorized deviations by officers from official guidelines. A deprivation of rights that violates official policy is a random and unauthorized act that is not actionable as a matter of procedural due process so long as there is a meaningful post-deprivation remedy. See Ochoa v. Bratton, No. 16-cv-2852, 2017 WL 5900552, at *5 (S.D.N.Y. Nov. 28, 2017). Salem has not asserted that remedies through Article 78 or a habeas petition under New York state law are inadequate. Therefore, his claim of a procedural due process violation fails.

Accordingly, the defendant's motion to dismiss Salem's procedural due process claim must be granted.[5]

**E.**

The defendants also move to dismiss Salem's claim that the City is liable under the theory of respondeat superior.

---

protections for pre-trial detainees. Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017).

[5] The Court will not consider the defendants' arguments, raised for the first time in reply, that the Amended Complaint lacks sufficient allegations of a deprivation of a liberty interest. However, the Court notes that because Salem was given credit towards his post-conviction sentence for the time he spent in jail as a pretrial detainee, it is unclear whether he was deprived of any liberty interest. Cf. Hassell v. Fischer, 879 F.3d 41, 51 (2d Cir. 2018) (holding that even where post-release supervision was wrongfully imposed on a prisoner for the period between his release from custody and the date his sentence was completed, the prisoner did not suffer a denial of liberty without due process of law because the conditions of his release were not more onerous than a term of conditional release, which could have been imposed).

Section 1983 "rejects the imposition of vicarious liability on a municipality for the torts of its employees." Reynolds v. Giuliani, 506 F.3d 183, 190 (2d Cir. 2007). As such, liability under the doctrine of respondeat superior is unavailable for any alleged violation of § 1983. A municipality may be liable only under Monell liability. See Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125 (2d Cir. 2004) (Sotomayor, J.).

Accordingly, defendant's motion to dismiss Salem's claim of liability under respondeat superior must be granted.[6]

### F.

Finally, the defendants move to dismiss Salem's municipal liability and failure to train claims.

Under Monell, municipalities may be liable for damages under § 1983 for injuries inflicted pursuant to a government policy or custom. See Oklahoma City v. Tuttle, 471 U.S. 808, 810 (1985). Because "neither Monell . . . nor any other . . . case[] authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm," the threshold issue for these claims is whether the plaintiff suffered the deprivation of constitutional rights that he alleges. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam);

---

[6] The plaintiff has not alleged any state law claims against the individual officers for which the City could be liable.

see also Vaughns v. City of New York, No. 17-cv-3448, 2018 WL 1325758, at *2 (S.D.N.Y. Mar. 13, 2018).

Salem has not sufficiently alleged any constitutional violations including false imprisonment, unreasonable search and seizure, or due process violations. Therefore, for that reason alone, the City of New York is not liable under Monell.

Moreover, Salem has failed to allege sufficiently that the City caused such an alleged violation by adopting a policy or custom that caused an injury or demonstrating a causal link between the policy and the alleged injury. See City of Canton v. Harris, 489 U.S. 378, 385 (1989); Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985). A plaintiff may establish the existence of a municipal policy or custom by showing the municipality failed to train its employees properly such that "'the failure to train amounts to deliberate indifference to the rights' of those with whom municipal employees will come into contact." Walker v. City of New York, 974 F.2d 293, 297 (2d Cir. 1992) (quoting Harris, 489 U.S. at 388 (1989)). To plead a Monell claim based on a failure to train, a plaintiff must plead (1) that "a [municipality] knows 'to a moral certainty' that her employees will confront a given situation," (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees

18

mishandling the situation," and (3) "that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." Id. at 297-98. As the Supreme Court explained in Connick, a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of a failure to train." Connick v. Thompson, 563 U.S. 51, 62 (2011); see also O'Neal v. City of New York, 196 F. Supp. 3d 421, 435 (S.D.N.Y. 2016), aff'd, 679 F. App'x 16, 19 (2d Cir. 2017).

Salem's allegations that the defendant's practices were so widespread as to amount to a custom of deliberately failing to supervise court order or bail management procedures are conclusory. Am. Compl. ¶¶ 179-82, 231-33, 269-70. Salem asserts that the defendants do have policies to ensure compliance with court orders. His allegation is that the officers responsible deviated from or otherwise did not follow these lawful polices. But the allegations on the face of Salem's Amended Complaint preclude a finding that the defendants followed a policy that deliberately deprived Salem of his rights.

Salem further alleges that the need for additional training and discipline was so "obvious" as to amount to deliberate indifference. Am. Compl. ¶¶ 266-81. But he does not cite examples of similar alleged violations. Salem also fails to allege sufficiently that additional training would make it

19

easier for officers to make choices that would reduce constitutional violations and fails to allege sufficient facts that this occurrence is actually widespread. The facts pleaded are not sufficiently similar to the allegations of Salem's case to establish a pattern of violations necessary to put the policymaker on notice. See O'Neal, 196 F. Supp. 3d at 436.

Accordingly, the defendant's motion to dismiss Salem's Monell claim and failure to train must be granted.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. As explained above, the defendant's motion to dismiss is **granted**. However, because this is the first dismissal of the Amended Complaint and it cannot be concluded that Salem cannot cure deficiencies in the Amended Complaint, the Amended Complaint is **dismissed without prejudice** to the filing of a second amended complaint by **September 7, 2018**. The Clerk is directed to close all pending motions.

SO ORDERED.

Dated:   New York, New York
         August 1, 2018

                                    _____
                                    John G. Koeltl
                                    **United States District Judge**