Index No. 17-CV-4799 (JGK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AITABDELLAH SALEM,

Plaintiff,

-against-

CITY OF NEW YORK, JOSEPH PONTE,
COMMISSIONER OF THE NEW YORK CITY
DEPARMTENT OF CORRECTION, IN HIS
INDIVIDUAL AND OFFICIAL CAPACITY, JOHN DOE
NO.1, WARDEN, NEW YORK CITY DEPARTMENT OF
CORRECTION, JOHN DOE NO. 2, ASSISTANT
WARDEN, OF THE NEW YORK CITY DEPARTMENT
OF CORRETION, IN HIS INDIVIDUAL AND OFFICIAL
CAPACITY, JOHN DOE NO.3, TOUR COMMANDER
NEW YORK CITY DEPARTMENT OF CORRECTION,
AMKC, RIKERS ISLAND, IN HIS INDIVIDUAL AND
OFFICIAL CAPACITY, JOHN DOE NO. 4, CAPTAIN,
NEW YORK CITY DEPARTMENT OF CORRECTION,
AMKC, RIKERS ISLAND, IN HIS INDIVIDUAL AND
OFFICIAL CAPACITY,

Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF DEFENDANTS' MOTION TO
DISMISS THE SECOND AMENDED COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 12(B)(6)**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants City and Ponte*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Joseph Gutmann*
*Tel:  (212) 356-2659*
*Matter No. 2017-038663*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT

      POINT I

           PLAINTIFF DOES NOT REBUT DEFENDANTS'
           ARGUMENT THAT DEFENDANTS HAVE NO
           PERSONAL INVOLVEMENT IN THE
           PURPORTED POLICY OF HOLDING INMATES
           ON ONE DOLLAR BAIL ........................................................... 1

      POINT II

           PLAINTIFF FAILS TO REBUT THAT HE HAS
           NOT PLAUSIBLY ALLEGED ANY
           ACTIONABLE SUBSTANTIVE OR
           PROCEDURAL DUE PROCESS CLAIM ................................. 4

           A.  No Actionable Substantive Due Process Claim.................................. 4

           B.  No Actionable Procedural Due Process Claim. .................................. 7

                1.   Plaintiff Fails to State a Protectable
                      Liberty Interest Necessary For an
                      Actionable Procedural Due Process Claim. ................................7

                2.   Availability of Post-Deprivation Remedies
                      Is Sufficient Because the Alleged
                      Deprivation Was Random and
                      Unauthorized.................................................................................7

                    a.  The Alleged Deviation from
                        Established DOC Procedures is a
                        "Random and Unauthorized" Act. ...........................................8

                    b.  Plaintiff's Alleged Procedural Due
                        Process Violation Was Not Committed
                        by a High-Ranking Official With Final
                        Policy-Making Authority. ....................................................10

**Page**

POINT III

      PLAINTIFF FAILS TO REBUT THAT HE HAS
      NOT PLAUSIBLY ALLEGED ANY
      ACTIONABLE SECTION 1983 MUNICIPAL
      LIABILITY CLAIM ................................................................................ 12

POINT IV

      PLAINTIFF FAILS TO REBUT THAT HE WAS
      NOT UNLAWFULLY SEIZED WHEN HE WAS
      REMANDED INTO DOC CUSTODY
      FOLLOWING COURT APPEARANCES ................................................ 14

POINT V

      PLAINTIFF'S ASSERTION THAT
      DEFENDANTS MISCHARACTERIZED FACTS
      IN THEIR MEMORANDUM OF LAW IS
      INCORRECT AND IMPROPER ............................................................. 15

CONCLUSION ................................................................................................ 17

## <u>**TABLE OF AUTHORITIES**</u>

<u>**Cases**</u>                                                                                                    <u>**Pages**</u>

<u>Bolmer v. Oliveira</u>,
    594, F. 3d 134, 142 (2d Cir. 2010)......................................................................5

<u>Chase Group Alliance v. City of N.Y.</u>,
    620 F.3d 146 (2d Cir. 2010)..........................................................................8

<u>Connick v. Thompson</u>,
    563 U.S. 51 (2011)......................................................................................13

<u>DiBlasio v. Novello</u>,
    01-CV-4498 (WHP),
    2002 U.S. Dist. LEXIS 18424 (S.D.N.Y. Sep. 27, 2002)................................11, 12

<u>DiBlasio v. Novello</u>,
    344 F.3d 292 (2d Cir. 2003)........................................................................10, 11

<u>Donohue v. Manetti</u>,
    15-CV-636 (JFB) (GRB),
    2016 U.S. Dist. LEXIS 22565 (E.D.N.Y. Feb. 24, 2016).........................................13

<u>Downing v. City of New York</u>,
    13-CV-4247 (KBF),
    2013 U.S. Dist. LEXIS 145483 (S.D.N.Y. Oct. 3, 2013) ......................................12

<u>Gaylor v. Does</u>,
    105 F.3d 572 (10th Cir. 1997) .....................................................................2, 3

<u>Harlow v. Fitzgerald</u>,
    457 U.S. 800 (1982)......................................................................................2

<u>Henry v. City of N.Y.</u>,
    638 F. App'x 113 (2d Cir. 2016) ....................................................................8

<u>Kia P. v. McIntyre</u>,
    235 F.3d 749 (2d. Cir. 2000)..........................................................................4

<u>Monell v. Dep't of Social Services</u>,
    436 U.S. 658 (1978)....................................................................................12

<u>Moore v. Newton</u>,
    14-CV-6473 (MKB) (CLP),
    2016 U.S. Dist. LEXIS 121839 (E.D.N.Y. Sep. 7, 2016)........................................10

**Cases**                                                                                          **Pages**

New Page at 63 Main, LLC v. The Inc. Vill. of Sag Harbor,
   15-CV-2433 (ADS) (AKT),
   2016 U.S. Dist. LEXIS 189158 (E.D.N.Y. Mar. 19, 2016)........................................................8

New Windsor Volunteer Ambulance Corps., Inc v. Meyers,
   442 F.3d 101 (2d Cir. 2006)...........................................................................................12

Southerland v. City of N.Y.,
   680 F. 3d 127 (2nd Cir. 2011)......................................................................................4, 5

Sudler v. City of New York,
   08-CV-11389 (GEL),
   2009 U.S. Dist. LEXIS 67138 S.D.N.Y. July 31, 2009)..................................................6

Sudler v. City of New York,
   689 F.3d 159 (2d. Cir. 2012)...........................................................................................6

Victory v. Pataki,
   814 F.3d 47 (2d Cir. 2016)..............................................................................................7

Viteritti v. Inc. Vill. of Bayville,
   918 F. Supp. 2d 126 (E.D.N.Y. 2013) ............................................................................8

**Statutes**

§ 1983...................................................................................................................................12

State Criminal Procedure Law §§ 510 – 530 ........................................................................2

## PRELIMINARY STATEMENT

Plaintiff's opposition papers fail to set forth any grounds on which defendants' motion to dismiss the Second Amended Complaint should be denied. The facts alleged in the Second Amended Complaint, and established by related documents, demonstrate that plaintiff fails to allege any actionable claim arising from his detention in Department of Correction ("DOC") custody between November 28, 2014 and April 15, 2015. Plaintiff has failed to rebut defendants' two primary arguments that (i) the criminal court's November 28, 2014 Order did not require DOC officials to release him from custody; and (ii) plaintiff's pending charges under Docket No. 2014NY088542 provided justification for his detention until he was released upon bail payment on April 15, 2015. For the reasons set forth below, defendants' motion to dismiss should be granted and the Second Amended Complaint should be dismissed in its entirety with prejudice.

## ARGUMENT

### POINT I

#### PLAINTIFF DOES NOT REBUT DEFENDANTS' ARGUMENT THAT DEFENDANTS HAVE NO PERSONAL INVOLVEMENT IN THE PURPORTED POLICY OF HOLDING INMATES ON ONE DOLLAR BAIL

In his opposition, plaintiff argues in conclusory fashion that the New York City Department of Correction and the individual defendants created a pattern and practice of holding pretrial detainees in custody on one dollar bail without informing the detainees of the change in their bail status in violation of the due process clause. (See Pl.'s Opp. at 7-12). As an initial matter, plaintiff has not alleged any facts sufficient to establish that any such policy and practice was created or ever even existed. However, even assuming, *arguendo*, that plaintiff could

establish the existence of such a policy and practice, plaintiff has entirely failed to rebut defendants' argument that to the extent plaintiff is now arguing that the practice of holding inmates in custody on one dollar bail is itself a violation of substantive due process, defendants have no personal involvement in that purported violation.

As noted in defendants' original moving papers, the definition of bail and the procedures by which bail is fixed in New York are codified in New York State Criminal Procedure Law §§ 510 – 530.  The named defendants have no personal involvement in the defining and fixing of bail, and are merely charged with detaining individuals for whom bail has not yet been paid.  As such, defendants cannot be held liable for the generalized practice of holding inmates on one dollar bail.  At a minimum, defendants are entitled to qualified immunity on the grounds that there is no clearly established law stating that holding an inmate on an unpaid one dollar bail is unconstitutional.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (holding that officials may claim qualified immunity so long as they have not violated a "clearly established" right).

Furthermore, plaintiff fails to rebut defendants' argument that it was plaintiff's own attorney who requested that one dollar bail be set on at least one of his cases.  See Transcript of January 21, 2015 Proceeding, Exhibit F to First Am. Compl., p. 2:09-14 (wherein plaintiff's criminal attorney explicitly states "I need a dollar bail set on this case" regarding Docket #2014NY088543).  Defendants cannot reasonably be held liable in this case for a policy and practice of holding inmates on one dollar bail, when it was plaintiff's own attorney who requested that one dollar bail be set in this instance, and was therefore clearly aware of same.

Plaintiff cites extensively to the case of Gaylor v. Does, 105 F.3d 572 (10th Cir. 1997) in support of his claim that the City of New York is responsible for not informing plaintiff

2

of his change in bail status.  As an initial matter, plaintiff's assertion that Gaylor holds that a municipality can be held liable for holding pretrial detainees in custody on one dollar bail without informing detainees of the change in bail status is simply a misstatement of what the Court held in Gaylor.  In that case, the plaintiff, Duane Gaylor, was arrested by the Denver County Sheriff's Department and the following day his bail was set at $1,000.  Gaylor's roommates repeatedly contacted the Sherriff's jail to inquire about Gaylor's bail status and were falsely told that bail had not been set.  Moreover, Gaylor was repeatedly told that in order to pay his bail, he would have to see a judge.  Nevertheless, Gaylor was not taken to see a judge, despite repeated requests, until five days after his arrest at which time his bail was paid and he was released.  See id. at 573-74.

    As seen from the facts above, Gaylor is distinguishable from the instant matter in a number of ways. First, in Gaylor, the plaintiff alleged that, immediately following his arrest, the Denver County Sheriff's Department kept him in jail for a five-day period without a hearing before a magistrate while intentionally not informing him about his bail status following his arrest.  See id. at 574.  In the instant case, plaintiff was not prevented from having his case go forward following his arrest.  Moreover, it is undisputed that plaintiff's counsel asked for and was granted one dollar bail on behalf of plaintiff, whereas Gaylor did not even appear in Court to have the opportunity to post bail until five days after being taken into custody.

    Second, in Gaylor, the plaintiff was affirmatively prevented by jail officials from having an opportunity to pay his initial bail of $1,000 at any time during his incarceration. Gaylor's roommates inquired into his bail status and were falsely told that bail had not been set. In the instant matter, plaintiff's bail status was changed, not initially set, and he had multiple court appearances in which his attorney appeared on his behalf and bail was extensively

3

discussed.   Furthermore, there is no allegation in the instant matter that any defendant ever affirmatively lied about plaintiff's bail status as was done to Gaylor's roommates.   Plaintiff cannot make the claim in this matter that defendants misled him or his representatives regarding his bail status or even intentionally withheld plaintiff's bail information from him, when his own attorney requested the one dollar bail and was granted same.

**POINT II**

**PLAINTIFF FAILS TO REBUT THAT HE HAS NOT PLAUSIBLY ALLEGED ANY ACTIONABLE SUBSTANTIVE OR PROCEDURAL DUE PROCESS CLAIM**

**A.     No Actionable Substantive Due Process Claim.**

Plaintiff fails to rebut defendants' argument that his substantive due process claim must be dismissed because it is merely a restatement of his false imprisonment claim, for which the Fourth Amendment provides an explicit source of constitutional protection. Plaintiff's substantive due process claim is premised, at least in part, on the allegation that DOC officials unlawfully detained him after the criminal court allegedly ordered his release on November 28, 2014. See Second Am. Compl., Exhibit 1, ¶¶ 253-260. However, "[w]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." Kia P. v. McIntyre, 235 F.3d 749, 757-58 (2d. Cir. 2000). Here, there is no dispute that the Fourth Amendment provides an explicit textual source of protection against unlawful detention, and thus provides the proper framework to analyze plaintiff's allegations that he was unlawfully detained.

Plaintiff's citation to the child-removal case Southerland v. City of N.Y., 680 F. 3d 127 (2nd Cir. 2011) does not support the contention that his unlawful detention allegation is

4

actionable under a substantive due process theory. In <u>Southerland</u>, the parent of children unlawfully removed by government officials was permitted to pursue a substantive due process claim even though the children were alleging their own unlawful seizure claim under the Fourth Amendment arising from the same removal. <u>See Southerland</u>, 680 F. 3d at 151-152. However, the substantive due process claim in Southerland belonged to the parent, and thus was not duplicative of the Fourth Amendment claim brought by the children, unlike the claims here which belong to a single plaintiff. Moreover, the court noted in <u>Southerland</u> that "parents have a constitutionally protected liberty interest in the care, custody and management of their children, and that the deprivation of this interest *is actionable on a substantive due process theory*." <u>See Southerland</u>, 680 F. 3d at 152 (internal citations omitted) (emphasis added). Thus, <u>Southerland</u>'s holding is specific to the child-removal context, and lends no support to plaintiff's argument that his unlawful detention allegation is actionable under a substantive due process theory.

Even if plaintiff's allegedly unlawful detention was actionable as a substantive due process claim, plaintiff fails to show that DOC officials' conduct of detaining plaintiff until his bail was paid was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." <u>See Bolmer v. Oliveira</u>, 594, F. 3d 134, 142 (2d Cir. 2010). Indeed, plaintiff appears to argue a distinct substantive due process claim based upon the purported deliberate indifference on the part of one or more defendants. (<u>See</u> Pl.'s Opp. at 13-14). However, in doing so, plaintiff merely states generically that the defendants' purported actions "rises to the requirement of shock the conscious (sic) element for a constitutional violation of due process of law." (<u>See id.</u> at 14). Plaintiff has failed to address the argument set forth by the Court in its August 1, 2018 Opinion and Order in this matter, holding that in order to state a substantive due process claim, plaintiff "must plead that the defendants' conduct was so

egregious or outrageous that it 'shock[ed] the conscience.'" See Docket Entry No. 73, at 11-12 (internal citations omitted).   Plaintiff does not note what actions on the part of defendants specifically constitute egregious or outrageous behavior and fails to address the Court's holding that defendants' purported failure to produce plaintiff to Court and plaintiff's continued detention on one dollar bail "[did] not meet the standard required to be considered outrageous." Id. at 12.

   Instead, in his opposition, plaintiff appears to argue that the Department of Correction had an affirmative duty to determine plaintiff's bail amount and affirmatively inform him of same.   (See Pl.'s Opp. at 14-15).   Plaintiff largely bases his argument on the Court's holding in the case of Sudler v. City of New York, 689 F.3d 159 (2d. Cir. 2012)[1].   Plaintiff's argument fails because the Court's holding in Sudler is entirely inapplicable to the instant matter. In Sudler, plaintiff's criminal sentences were mistakenly determined to run consecutively rather than concurrently.   Id. at 163.   Moreover, the plaintiff in that case "twice objected in writing that his release date had been calculated incorrectly, but each time was assured that the release date was correct."   Id. at 164.   In that case, it is undisputed that once the plaintiff's correct release date had passed, there was no basis to retain custody of him after that time.

   In the instant case, however, plaintiff was properly held following the change in his bail status because he had not yet paid his bail.   Indeed, it is undisputed in the instant case that once plaintiff's bail was paid he was released on the same day.   As such, plaintiff's comparison of a duty to release plaintiff in a case where an inmate was being wrongfully held is entirely inapplicable to plaintiff's argument that there was an affirmative duty to inform plaintiff

---

[1] Although plaintiff cites to the District Court's decision in Sudler rather than that of the Circuit Court, it appears that this citation is in error, both because the quotation cited by plaintiff does not come from the cited decision and because the District Court's holding that "the City Defendants did not violate Sudler's rights, or illegally detain him, in any way" is in conflict with what plaintiff appears to be arguing in support of his opposition.   See Sudler v. City of New York, 08-CV-11389 (GEL), 2009 U.S. Dist. LEXIS 67138 at *5 (S.D.N.Y. July 31, 2009).

of his current bail status in a case where plaintiff was being lawfully and properly held. Therefore, plaintiff's arguments regarding substantive due process fail.

**B.      No Actionable Procedural Due Process Claim.**

      **1.      Plaintiff Fails to State a Protectable Liberty Interest Necessary For an Actionable Procedural Due Process Claim.**

Plaintiff, in his opposition, appears to argue that DOC officials violated his right to procedural due process by failing to inform him that he was being held on one dollar bail. (See Pl.'s Opp. at 15-17).  However, plaintiff does not assert the basis for his belief that DOC officials have an affirmative duty to keep inmates apprised of their own individual bail status, nor does plaintiff address defendants' argument that it was plaintiff's own attorney who requested that one dollar bail be set and therefore plaintiff could be presumed to have awareness of same, as plaintiff's attorney is his agent.

Moreover, in his opposition, plaintiff does not appear to oppose defendants' argument that the charges under Docket No. 2014NY088542 provided justification for plaintiff's continued detention.  Plaintiff's failure to even address defendants' argument on this score reinforces the conclusion that the November 28, 2014 Order did not require plaintiff's release from custody, and therefore did not create a "legitimate claim of entitlement" to release from custody. See Victory v. Pataki, 814 F.3d 47, 59 (2d Cir. 2016).  Plaintiff's failure to plausibly establish a protectable liberty interest in his release is fatal to his procedural due process claim. In light of the above, plaintiff's procedural due process claim fails as well.

      **2.      Availability of Post-Deprivation Remedies Is Sufficient Because the Alleged Deprivation Was Random and Unauthorized.**

Even if plaintiff established a protectable liberty interest in being released on November 28, 2014, his procedural due process claim still fails due to the availability of adequate post-deprivation remedies.  Plaintiff, in his opposition, does not appear to dispute that,

as a matter of law, the availability of an adequate post-deprivation remedy is sufficient to vitiate a procedural due process claim where the alleged deprivation results from "random and unauthorized acts" by government officials.  New Page at 63 Main, LLC v. The Inc. Vill. of Sag Harbor, 15-CV-2433 (ADS) (AKT), 2016 U.S. Dist. LEXIS 189158, *49 (E.D.N.Y. Mar. 19, 2016).  Plaintiff seeks to escape the import of this conclusion by arguing that: (i) the official acts resulting in his deprivation were not "random and unauthorized" because they were "based on" established DOC procedures; and (ii) acts by high-level officials cannot be characterized as "random and unauthorized." (See Pl's Opp. at 23-25).  Both arguments are without merit for the reasons set forth below.

### a. The Alleged Deviation from Established DOC Procedures is a "Random and Unauthorized" Act.

The Second Circuit has held that, for purposes of procedural due process, it is the plaintiff's burden to plead and prove that the complained of acts are not "random and unauthorized," or else the availability of an adequate post-deprivation remedy will suffice. See e.g., Henry v. City of N.Y., 638 F. App'x 113, 115-116 (2d Cir. 2016) (upholding dismissal of procedural due process claim on Rule 12 motion based in part on the plaintiff's failure to plead complained of acts were not "random and unauthorized").  Moreover, as the Second Circuit has clarified, the complained of acts must be made "pursuant to a statute, code, regulation, or custom" in order to be considered the result of "established state procedures." See Chase Group Alliance v. City of N.Y., 620 F.3d 146, 152 n.3 (2d Cir. 2010); Viteritti v. Inc. Vill. of Bayville, 918 F. Supp. 2d 126, 134 (E.D.N.Y. 2013) ("Simply put, there is no information before the Court to suggest that the challenged conduct was undertaken in accordance with established state procedures - that is, 'pursuant to a statute, code, regulation, or custom.'").

Plaintiff appears to argue in opposition that DOC officials caused him to be unlawfully detained by failing to inform him that he was being held on one dollar bail.  Plaintiff states for the first time that "[t]he issues presented in the instant case are not why $1 bail was set, but whether this Court determines that holding pretrial detainees on one dollar bail without informing the detainees of the change in bail status, is excessive and serves no Defendants intentionally held Salem in spite of the lack of a legitimate interest."  (See Pl.'s Opp. at 23). Plaintiff argues that the alleged failure to process these orders was "based on established state procedures."  (Id.).  However, plaintiff fails to identify a single DOC procedure or regulation that authorized DOC officials to engage in the misconduct alleged.

Moreover, plaintiff's argument in his opposition that the instant case is centered around whether or not plaintiff was informed of his bail status as opposed to whether plaintiff should have been released following the criminal court's November 28, 2014 Order is contrary to what is alleged in plaintiff's Second Amended Complaint.   In the Second Amended Complaint, plaintiff alleges that DOC has enacted extensive procedures to ensure that criminal court orders regarding the detention status of inmates are processed and satisfied in a timely manner. See Second Am. Compl., Exhibit 1, ¶¶ 162-217. Plaintiff further alleges that, in violation of these established procedures, DOC officials "knowingly and willfully, ignored Judge Crane's Order to release Salem from incarceration on November 28, 2014" and "knowingly and willfully with the specific intent to deprive Salem of his freedom, ignored Judge Mennin's order to produce Salem in civilian clothes for the purpose of being released from custody on January 21, 2015." See Second Am. Compl., Exhibit 1, ¶¶ 94, 103.

Thus, according to the allegations made in plaintiff's Second Amended Complaint, it is clear that DOC officials' alleged deviation from established procedures

constitutes "a random and unauthorized" act for procedural due process purposes. <u>See</u> <u>Moore v.</u> <u>Newton</u>, 14-CV-6473 (MKB) (CLP), 2016 U.S. Dist. LEXIS 121839, *58-*59 (E.D.N.Y. Sep. 7, 2016).   Thus, the availability of an adequate post-deprivation remedy will defeat plaintiff's alleged procedural due process claim.

> **b.      Plaintiff's Alleged Procedural Due Process Violation Was Not Committed by a High-Ranking Official With Final Policy-Making Authority.**

Plaintiff additionally argues in his opposition that the complained of acts resulting in the deprivation of his right to procedural due process cannot be considered "random and unauthorized" because they were undertaken by high ranking prison officials. (<u>See</u> Pl.'s Opp. at 24-25).   In purported support of this argument, plaintiff cites to <u>Moore v. Newton</u>, 14-CV-6473 (MKB) (CLP), 2016 U.S. Dist. LEXIS 121839, *58-*59 (E.D.N.Y. Sep. 7, 2016).   However, the quotation that plaintiff attributes to <u>Moore</u> cannot be found anywhere in that decision.   In fact, the citation pointed to by plaintiff is a case where a plaintiff alleged that an officer had a duty to act under established state procedures and failed to do so.   In that case, the Court held that the officer's "failure to intervene to secure plaintiff's release from prison after the maximum expiration date of his sentence would arguably be a 'random, unauthorized act' for which the availability of a post-deprivation remedy such as an Article 78 or habeas proceeding under state law would be sufficient to satisfy due process requirements."

It appears that the quotation cited by plaintiff is instead based on the Court's holding in <u>DiBlasio v. Novello</u>, 344 F.3d 292 (2d Cir. 2003), in which the Second Circuit held "that the 'random and unauthorized' exception to the requirement of a pre-deprivation hearing does not apply where the government actor in question is a high-ranking official with 'final authority over significant matters.'" <u>DiBlasio</u>, 344 F.3d at 302. However, the limited exception recognized in <u>DiBlasio</u> is inapplicable here. In <u>DiBlasio</u>, the plaintiff radiologist alleged that the

defendant, then the Commissioner of the New York State Department of Health, violated his right to procedural due process by making false and defamatory statements at a press conference accusing the plaintiff of medical malpractice. See DiBlasio, 344 F.3d at 302-303. The district court held that the defendant commissioner's public statements were "random and unauthorized" because the New York State statute governing the release of information by the New York State Department of Health did not specifically authorize the defamatory statements to be made. DiBlasio v. Novello, 01-CV-4498 (WHP), 2002 U.S. Dist. LEXIS 18424, *60 (S.D.N.Y. Sep. 27, 2002).  In reversing, the Second Circuit held that, even though not specifically authorized by statute, established state procedures gave the defendant commissioner "final authority on many department matters, including the content of press releases and her own statements in press conferences." See DiBlasio, 344 F.3d at 303. Thus, the Second Circuit reasoned that "categorizing acts of high-level officials as 'random and unauthorized' makes little sense because the state acts through its high-level officials." See DiBlasio, 344 F.3d at 302-303.

Here, unlike DiBlasio, there is no showing that a DOC official with final policy-making authority authorized plaintiff's detention in violation of court orders and established DOC procedures or ordered any official to specifically not inform plaintiff of any change in his bail status.  Plaintiff argues that "Defendants Ponte, Tour Commanders, and Captains at AMKC" constitute high ranking officials with final policy-making authority.  (See Pl.'s Opp. at 25).  The only DOC official who can be considered to have "final authority" over DOC policy is defendant Commissioner Ponte, and plaintiff has offered only conclusory allegations that defendant Ponte was even aware of plaintiff's detention or changed bail status, let alone that Ponte made an individualized decision to continue or authorize the continuation of plaintiff's detention in defiance of court orders and established DOC procedures.  See Second Am. Compl., Exhibit 1,

¶¶ 39-43.  Indeed, plaintiff's failure to plausibly allege defendant Ponte's personal involvement in the decision to continue his detention also demonstrates a lack of personal involvement necessary to state an actionable § 1983 claim against Ponte.  See Downing v. City of New York, 13-CV-4247 (KBF), 2013 U.S. Dist. LEXIS 145483, at *6 (S.D.N.Y. Oct. 3, 2013).  This is distinguishable from DiBlasio, where the defendant commissioner made the allegedly defamatory statements herself at a press conference she conducted.  See DiBlasio, 2002 U.S. Dist. LEXIS 18424, *6 (S.D.N.Y. Sep. 27, 2002).  Subsequent cases have confirmed that the exception in DiBlasio for high-ranking officials requires a showing that the official in question exercised their final authority to effectuate the complained of acts.  See, e.g., New Windsor Volunteer Ambulance Corps., Inc v. Meyers, 442 F.3d 101, 116 (2d Cir. 2006) (town mayor's direct order to effectuate an unlawful seizure of property was not "random and unauthorized").

Unlike DiBlasio and Meyers, plaintiff fails to plausibly establish that defendant Ponte exercised his final policy-making authority to continue or authorize the continuation of plaintiff's allegedly unlawful detention.  Therefore, the acts that allegedly caused the deprivation of plaintiff's procedural due process right were "random and unauthorized" and not based on established state procedures.  Plaintiff's procedural due process claim must fail due to the availability of post-deprivation remedies of an Article 78 proceeding or habeas petition.

### POINT III

### PLAINTIFF FAILS TO REBUT THAT HE HAS NOT PLAUSIBLY ALLEGED ANY ACTIONABLE SECTION 1983 MUNICIPAL LIABILITY CLAIM

Plaintiff fails to rebut in his opposition defendants' argument that because his alleged constitutional violation arises from a single incident, it is insufficient to support a failure-to-train claim pursuant to Monell v. Dep't of Social Services, 436 U.S. 658, 694–95 (1978).  In

particular, plaintiff has failed to respond to defendants' argument that the Second Amended Complaint and annexed exhibits do not establish the existence of "[a] pattern of similar constitutional violations by untrained employees," as required for failure to train liability under Connick v. Thompson, 563 U.S. 51, 62 (2011).  Plaintiff's failure to plausibly allege any other instances of DOC unconstitutionally overdetaining criminal defendants or failing to keep criminal defendants apprised on their updated bail amounts in a manner similar to his own incident is fatal to his alleged failure to train claim.  See Donohue v. Manetti, 15-CV-636 (JFB) (GRB), 2016 U.S. Dist. LEXIS 22565, *18 (E.D.N.Y. Feb. 24, 2016).

Additionally, plaintiff fails to meaningfully address defendants' argument that the Department of Investigation's 2015 report on DOC's hiring practices (hereinafter "DOI Report") cited in the Second Amended Complaint lacks any plausible connection to his alleged overdetention.  Plaintiff fails to rebut defendants' argument that, even assuming the truth of DOI's opinion that DOC employs underqualified correction officers, there is no averment of fact showing that such a practice has resulted in a widespread pattern of criminal defendants being unconstitutionally overdetained. Without such a pattern of similar constitutional violations, plaintiff cannot establish that defendant City had notice of any particular deficiency in its training of DOC employees required for failure to train liability to attach here.

Instead plaintiff argues that he can maintain a claim under Monell based on the argument that "[a]n unconstitutional policy may exist if an isolated act of a government employee is dictated by a final policymaker." (See Pl.'s Opp at 19).  Plaintiff in a conclusory fashion alleges that "[t]he practice of holding pretrial detainees on one dollar bail without informing them of the change in bail status was dictated by the Commissioner and Wardens." (See Pl.'s Opp at 20).  In addition, plaintiff argues in a conclusory manner that tour commanders

and captains can be found similarly liable because they had final policy making authority.  (See Pl.'s Opp. at 20).  As noted above, the only DOC official who can be considered to have "final authority" over DOC policy is defendant Commissioner Ponte, and plaintiff has offered only conclusory allegations that defendant Ponte was even aware of plaintiff's detention or changed bail status, let alone that he made an individualized decision to dictate the alleged isolated act.  As such, plaintiff's claim for municipal liability fails and should be dismissed.

**POINT IV**

**PLAINTIFF FAILS TO REBUT THAT HE WAS NOT UNLAWFULLY SEIZED WHEN HE WAS REMANDED INTO DOC CUSTODY FOLLOWING COURT APPEARANCES**

In his opposition, plaintiff argues, in conclusory fashion, that DOC officials violated the Fourth Amendment by taking plaintiff back into custody following his criminal court appearances on January 21, 2015 and February 11, 2015.  (See Pl.'s Opp. at 20).  Plaintiff fails to support this contention with any averments of fact in the Second Amended Complaint or annexed exhibits.  In particular, plaintiff fails to address the authorities cited by defendants holding that the physical transfer of an inmate or detainee to a different location, without more, does not implicate the Fourth Amendment.

As defendants noted in their original moving papers, nothing in the text of the Court's January 15, 2015 Order states that plaintiff was entitled to be released from custody, and the transcripts of the January 21, 2015 and February 11, 2015 proceedings make no mention that plaintiff was supposed to be released on those dates.  In light of plaintiff's failure to demonstrate that DOC officials detained him without justification at any point before he was released from custody on April 15, 2015, plaintiff fails to state an actionable false imprisonment claim.

## POINT V

## PLAINTIFF'S ASSERTION THAT DEFENDANTS MISCHARACTERIZED FACTS IN THEIR MEMORANDUM OF LAW IS INCORRECT AND IMPROPER

In his opposition, plaintiff states that defendants' memorandum of law "grossly mischaracterizes the essential facts for which the Plaintiff now complains." (See Pl.'s Opp. at 20). This assertion is both incorrect and improper for the reasons set forth below.

Plaintiff first states that defendants' omitted the purported fact that plaintiff was not produced to court in civilian clothes as ordered by the court on multiple occasions. First, defendants do not concede the accuracy of this purported fact. Second, defendants would not have included this fact in their memorandum regardless of its accuracy because it has no bearing on plaintiff's claims in the instant matter as it does not relate in any way to the reasons for which plaintiff was held on one dollar bail. Plaintiff's assertion that that defendants' failure to include this irrelevant fact in their memorandum constitutes "a blatant attempt to mislead this Court" is wrong and plaintiff's counsel's willingness to throw such accusations around carelessly is unbecoming of an officer of the Court.

Similarly, plaintiff accuses defendants of misrepresenting facts to the Court by stating that the criminal court did not make any changes to plaintiff's bail under Docket No. 2014NY088543 on November 28, 2014. Plaintiff claims that this statement is misleading because the Court ordered plaintiff released under that docket number on the same date and that this release changed plaintiff's bail status to zero dollars. (See Pl.'s Opp. at 21). First, defendants cannot be reasonably be said to have misled the Court regarding the existence of the November 28, 2014 Order when defendants' memorandum quoted the text of said Order one sentence before making the statement that plaintiff has deemed an intentional misrepresentation.

15

(See Defs.' Mem. at 3).   Second, plaintiff's assertion that plaintiff's bail was lowered to zero

dollars under Docket No. 2014NY088543 by virtue of the court's November 28, 2014 Order is

incorrect as indicated by the fact that the court later lowered plaintiff's bail under that docket

number to one dollar on January 21, 2015.   See Transcript of January 21, 2015 Proceeding,

Exhibit F to First Am. Compl., p. 2:15.   Were plaintiff's assertion to be correct, there would be

no bail in place to lower on that date.   This was not the case, and therefore plaintiff's assertion

and accusation are both incorrect and irresponsible.

Finally, plaintiff states that defendants' citation to a transcript in which plaintiff's

criminal defense attorney suggested that there was an immigration hold which prevented

plaintiff's release constitutes a "misapplication of the facts in this case."   (See Pl.'s Opp. at 21).

Defendants stated a fact which is supported by the record and defendants' specifically quoted the

record in support of this fact.   (See Defs.' Mem. at 4).   This is not a mischaracterization nor is it

inappropriate.   Once again, plaintiff's allegation is both incorrect and improper and should be

disregarded.

## CONCLUSION

For the foregoing reasons, defendants City of New York and Commissioner Ponte respectfully request that the Second Amended Complaint be dismissed with prejudice in its entirety, that the relief requested therein be denied, and that they be awarded such other and further relief as the Court deems just and proper.

Dated:      New York, New York
             February 12, 2019

                                ZACHARY W. CARTER
                                Corporation Counsel for the City of New York
                                *Attorney for Defendants City and Ponte*
                                100 Church Street, Room 3-163
                                New York, New York  10007
                                (212) 356-2659

                                By:    */s/*
                                    Joseph Gutmann
                                    Senior Counsel
                                    Special Federal Litigation Division

**VIA ECF & FIRST CLASS MAIL**
TO:    Welton K. Wisham, Esq.
       *Counsel for Plaintiff*

The undersigned hereby certifies that the above memorandum of law contains 4,879 words. Although the above does not comply with the formatting requirements set forth in Your Honor's Individual Rules, on February 12, 2019, defendants submitted a letter motion requesting leave to file the above memorandum with approximately 2,000 excess words. Should the Court choose not to grant this request, defendants will endeavor to re-file the above memorandum in compliance with Your Honor's Individual Rules.

*/s/*
_____
Joseph Gutmann
Senior Counsel
Special Federal Litigation Division