**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

──────────────────────────────

**AITABEDELLAH SALEM,**

                                 **Plaintiff,**                    **17-cv-4799 (JGK)**

         **- against -**                                  **MEMORANDUM OPINION**
                                                          **& ORDER**

**THE CITY OF NEW YORK, ET AL.,**

                                 **Defendants.**

──────────────────────────────

**JOHN G. KOELTL, District Judge:**

        The plaintiff, Aitabedellah Salem, was held in pretrial

detention by the New York City Department of Correction (the

"DOC") at the Anna M. Kross Center (the "AMKC") at Rikers Island

from November 22, 2014 until April 15, 2015. The plaintiff

brings this action pursuant to 42 U.S.C. § 1983 and <u>Monell v.</u>

<u>Department of Social Services</u>, 436 U.S. 658 (1978), challenging

the defendants'[1] alleged practice of holding pretrial detainees

on $1.00 bail without informing detainees of their bail status.

        By Memorandum Opinion and Order dated August 1, 2018, the

Court granted the defendants' motion to dismiss the plaintiff's

Amended Complaint. <u>Salem v. City of New York</u>, No. 17-cv-4799,

2018 WL 3650132 (S.D.N.Y. Aug. 1, 2018). The plaintiff filed a

Second Amended Complaint on September 6, 2018, raising claims

that are similar to those in his Amended Complaint. The

─────────────────
[1] The defendants are the City of New York and Joseph Ponte, the DOC
Commissioner, and four John Doe defendants -- a Warden, Assistant Warden,
Tour Commander, and Captain -- who are sued in their individual and official
capacities.

defendants now move to dismiss the plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, the motion to dismiss is **granted.**

**I.**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

2

A court may also consider documents incorporated by reference in the complaint as well as documents the plaintiff either had in the plaintiff's possession or had knowledge of and upon which the plaintiff relied in bringing suit. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991). "A court may [also] take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment." Evans v. N.Y. Botanical Garden, No. 02-cv-3591, 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002).

## II.

The following facts are taken from the plaintiff's Second Amended Complaint and court documents and are assumed to be true for the purposes of this motion to dismiss.

On November 21, 2014, Salem was arrested for stealing a coat from a clothing store. Second Am. Compl. ("SAC") ¶ 70. The following day, the plaintiff was arraigned in New York Criminal Court and charged with Assault in the Second Degree and Petit Larceny, under docket number 2014NY088542 ("the 8542 case"). Id. ¶ 71. Two additional cases were pending against the plaintiff at that time under docket numbers 2014NY088543 ("the 8543 case") and 2014NY017648 ("the 7648 case"). Id. ¶ 75. The court set bail at $25,000 each on the 8542 case and the 8543 case for a total of $50,000. Id. The 8542 case and the 8543 case were adjourned

to November 26, 2014, and the court sentenced the plaintiff to time served for the 7648 case. Id. ¶¶ 76-77. After his arraignment, the plaintiff was remanded to the AMKC at Rikers Island for pretrial detention. Id. ¶ 72.

On November 26, 2014, Judge Gilbert Hong reduced the plaintiff's bail in the 8542 case from $25,000 to $1.00 and adjourned the case to February 11, 2015. Id. ¶ 79. The plaintiff was not produced in court for the November 26, 2014 proceeding, and neither his defense attorney nor DOC employees told him that his bail had been reduced in the 8542 case. Id. ¶ 80.[2] Judge Hong continued the plaintiff's bail at $25,000 in the 8543 case and adjourned the 8543 case to November 28, 2014. Id. ¶ 79.

On November 28, 2014, Judge Melissa Crane presided over the adjourned proceeding regarding the 8543 case. Id. ¶ 81. The plaintiff was not produced in court and his appearance was waived by his attorney. Id. At the proceeding, Judge Crane ordered the plaintiff's immediate release on his own recognizance in the 8543 case because the district attorney's office failed to conduct a preliminary hearing or obtain a grand jury indictment within 144 hours of the commencement of the defendant's custody as required by New York Criminal Procedure

---

[2] The defendants point out that on each occasion the plaintiff was scheduled for a court appearance DOC officers produced the plaintiff from Rikers Island to the Criminal Court. SAC Ex. B.

4

Law § 180.80. Id. ¶¶ 82-84, 87-88. The 8543 case was adjourned

to February 11, 2015, the same date to which the 8542 case had

been adjourned. Id. ¶¶ 79, 85.

The DOC received notice of Judge Crane's order to release

the plaintiff on his own recognizance in the 8543 case on

November 28, 2014. Id. ¶ 89. The DOC has enacted procedures that

its officers must follow to process court orders, as outlined in

its General Office Manual. Id. ¶¶ 137, 141. However, the

plaintiff remained in custody because his $1.00 bail in the 8542

case had not been paid. Id. ¶ 96.[3]

On January 15, 2015, Judge Felicia A. Menin ordered that

the plaintiff be produced in civilian clothes for a conference

in New York Criminal Court on the 8543 case on January 21, 2015,

so that bail could be set at $1.00 on that case. First Am.

Compl. Ex E.; SAC ¶ 99. Although the DOC received this order and

marked it "Satisfied," the plaintiff was not produced in New

York Criminal Court on January 21, 2015. SAC ¶¶ 100-01, 104.

Judge Crane presided over the January 21, 2015, conference.

Id. ¶ 107. Although Judge Crane had previously ordered that the

plaintiff be released on his own recognizance in the 8543 case,

---

[3] The plaintiff contends that the defendants knowingly and willfully ignored
Judge Crane's order to release him on the 8543 charges. Id. ¶¶ 93-95, 97.
However, the plaintiff does not dispute that his $1.00 bail in the other
pending matter, the 8542 case, had not been paid. Id. ¶ 96. Therefore, the
plaintiff could not have been released at that time without paying the $1.00
bail on the 8542 case.

at the conference, Judge Crane set bail in the amount of $1.00 on the 8543 case at the request of the plaintiff's attorney who alleged that it was a mistake to have ordered the plaintiff released on his own recognizance in that case because there was an immigration hold. Id. ¶ 109; First Am. Compl. Ex. F, at 2.[4] Nobody notified the plaintiff that he was being held on $1.00 bail in both cases. Id. ¶ 110. The plaintiff repeatedly asked the defendants and other officers at the AMKC, "What's happening with my case, what's happening with my case?" Id. ¶ 112. However, the defendants allegedly ignored and refused to acknowledge his concerns. Id. ¶ 113.

On February 11, 2015, Judge Lisa Sokoloff presided over a hearing in the 8542 case. Id. ¶ 114. The plaintiff was not produced in front of Judge Sokoloff. Id. ¶ 115. Rather, he was left standing in the Court's holding cell for the duration of the proceeding. Id. ¶ 111. After the proceeding, the plaintiff was returned to Rikers Island. Id. ¶ 117.

---

[4] The plaintiff's counsel in this case represented that there was in fact no "immigration hold" and that the defense attorney in the state court was mistaken. If there had been an immigration hold, and the plaintiff could not be released, presumably the purpose of some bail in the 8543 case would have been to assure that the plaintiff's time in custody would be credited toward the 8543 case.

On April 15, 2015, a person unknown to the plaintiff paid his $1.00 bail. Id. ¶ 118. The plaintiff was released from incarceration that day. Id.[5]

On August 9, 2016, the plaintiff was convicted of Assault in the Second Degree and Petit Larceny in the 8542 case following a trial. Gutmann Decl. Ex. 3. The plaintiff was sentenced to a five-year term of imprisonment followed by a period of five years' post-release supervision on the charge of assault in the second degree, and one year of imprisonment on the petit larceny charge, both sentences to run concurrently. Id. The plaintiff was credited with the time he spent in pretrial detention from November 22, 2014, through April 15, 2015, when his $1.00 bail was paid. Id. Ex. 4. This credit includes the time when the only bail that applied to the plaintiff was the $1.00 bail set on the 8542 case. The plaintiff has not challenged the validity of his convictions in the 8542 case.

The plaintiff contends that (1) by holding pretrial detainees on $1.00 bail without informing the detainees that their bail status has changed to $1.00, the defendants violate substantive due process; (2) by failing to produce the plaintiff

---

[5] The plaintiff alleges that a DOC employee, Captain La Fleur, told the plaintiff that "if anybody asks you who paid your bail, tell them that Rev. Cato paid it." SAC ¶ 120.

in court for the January 21, 2015, hearing, and by failing to release him from incarceration on that date, the defendants violated his procedural due process right; and (3) by keeping the plaintiff in detention on $1.00 bail, the defendants violated the Fourth Amendment's proscription against unreasonable seizures. The plaintiff also asserts liability against the City of New York on the basis that the City's alleged failure to train, monitor, and supervise its employees caused the plaintiff's injuries.

## III.

The plaintiff's substantive due process claims fail because it is now well established that "[w]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under the explicit provision and not the more generalized notion of substantive due process." Hu v. City of New York, 927 F.3d 81, 104 (2d Cir. 2019) (internal citations omitted). In this case, the plaintiff claims that his detention on $1.00 bail violated his Fourth and Fourteenth Amendment right to be free from unreasonable seizures. That explicit constitutional protection forecloses the need to analyze the plaintiff's detention under the more general concept of substantive due process. See id. (collecting cases). The plaintiff's substantive due process claim that he was unreasonably detained on $1.00

bail arises from the same facts that he alleges supports his Fourth and Fourteenth Amendment claim for an unreasonable seizure. The plaintiff rests his Fourth and Fourteenth Amendment claim on the allegation that Judge Crane ordered that the plaintiff be produced in court in civilian clothes, at which point the plaintiff believes he was to be released on his own recognizance. But while it is true that Judge Crane ordered the plaintiff's release on the 8543 case, Judge Crane did not order the plaintiff's release on both of the cases that were pending against the plaintiff. The 8542 case provided an independent justification for the plaintiff's detention. Accordingly, the plaintiff's allegation that his detention was unreasonable or not otherwise privileged is not supported by the facts alleged and must be dismissed. Salem, 2018 WL 3650132, at *3-4. Therefore, the plaintiff has not sufficiently alleged that he was deprived of a constitutional right under the Fourth and Fourteenth Amendments. His claim for a violation of the Fourth and Fourteenth Amendments is therefore dismissed. That dismissal also disposes of the plaintiff's claim for an alleged violation of substantive due process. In any event, even on the

plaintiff's own terms, he has failed to allege a violation of substantive due process.

**A.**

The plaintiff's substantive due process claim rests on two theories: (1) that it is unlawful for the defendants to hold pretrial detainees in custody on $1.00 bail; and (2) that it was unlawful for the defendants not to inform the plaintiff that his bail status had changed. As explained below, neither theory is well founded. In addition, because the plaintiff can point to no authority from the Supreme Court or the Court of Appeals for the Second Circuit that would support his substantive due process claims, the individual defendants are entitled to qualified immunity.

**1.**

The defendants cannot be held liable for holding pretrial detainees on $1.00 bail because the defendants have no personal involvement in that alleged due process violation. The City of New York, Commissioner Ponte, and the John Doe defendants have no personal involvement in setting a pretrial detainee's bail. See N.Y. Crim. P. Law §§ 510-30 (explaining the procedures for setting bail under New York State law). Rather, the defendants are charged with detaining individuals for whom bail has been set by a New York State judge pursuant to New York State law when the bail has not been paid.

The plaintiff claims that the defendants should be held liable because the defendants did not release the plaintiff from detention on November 28, 2014 -- the date that Judge Crane ordered that the plaintiff be released on his own recognizance on the 8543 charges. That argument, however, ignores that the plaintiff remained in custody on the 8542 case. Without paying bail on the 8542 case, the plaintiff was not entitled to be released from jail -- even if his bail in that case was only $1.00. Therefore, the defendants were justified in holding the plaintiff until his bail was paid.[6] See Salem, 2018 WL 3650132, at *4.

**2.**

The plaintiff also contends that by failing to inform him that his bail had been reduced to $1.00 on November 26, 2014 in that 8542 case, the defendants deprived him of liberty in violation of substantive due process.

The plaintiff analogizes the failure to advise him about his bail to a prison conditions case. Even under that framework, the plaintiff has no claim. "In evaluating the constitutionality

---

[6] The plaintiff also brings a procedural due process claim, alleging that the reason he was not released from detention on November 28, 2014 was because the defendants failed to process Judge Crane's order. But it is plain that the reason that the plaintiff remained in custody was because he had not posted bail in his other pending case, the 8542 case in which the plaintiff was convicted eventually. To the extent the plaintiff bases his procedural due process claim on the defendants' alleged failure to process Judge Crane's order, that claim is **dismissed.**

11

of conditions or restrictions of pretrial detention that
implicate only the protection against deprivation of liberty
without due process of law, . . . the proper inquiry is whether
those conditions amount to punishment of the detainee." Bell v.
Wolfish, 441 U.S. 520, 535 (1979). This is because a detainee
"may not be punished prior to an adjudication of guilt in
accordance with due process of law." Id. To determine whether a
restraint is punitive, courts analyze "whether the disability is
imposed for the purpose of punishment or whether it is but an
incident of some other legitimate governmental purpose." Id. at
538. Without a showing of the defendants' intent to punish the
plaintiff, this inquiry turns on "whether an alternative purpose
to which the restriction may rationally be connected is
assignable for it, and whether it appears excessive in relation
to the alternative purpose assigned to it." Id. (quotation marks
and alterations omitted).

The plaintiff argues that holding him on $1.00 bail was a
punitive measure because $1.00 bail is not related to any
legitimate goal. The plaintiff's argument against the individual
corrections officials and the City of New York fails because
they were not responsible for setting the plaintiff's bail.
Individual New York Criminal Court judges set the plaintiff's
bail at a hearing in the presence of the plaintiff's lawyer and
in accordance with New York State law. And in at least one

appearance, the plaintiff's lawyer requested that bail be set in the amount of $1.00 in the 8543 case. First Am. Compl. Ex. F, at 2.[7] The plaintiff's argument against the bail that was set is not properly directed against the City and the corrections officials who are charged with carrying out the court orders. Moreover, there is no basis to conclude that the corrections officials were attempting to punish the plaintiff by carrying out court orders. The plaintiff's arguments against the operation of the bail system are more properly addressed to the Legislature, which can evaluate the purpose, advantages, and disadvantages of the bail system. There is no valid substantive due process claim alleged against the defendants who implemented the bail orders of New York Criminal Court judges.

Relying primarily on Gaylor v. Does, 105 F.3d 572 (10th Cir. 1997), the plaintiff argues that pretrial detainees have a fundamental right to be informed of their bail status by prison officials, and that the defendants' failure to inform the plaintiff of the reduction in his bail was punitive. However, Gaylor does not stand for that proposition. The plaintiff in

_____

[7] The defendants advise, on the basis of advice from the New York County District Attorney's Office, that $1.00 bail will typically be set in instances where a defendant has multiple cases before the court. Reasonable bail will be set on the charge carrying the highest penalty and $1.00 bail will be set in a lesser case. That assures that the defendant will receive credited jail time on the lesser case. If no bail were set on the lesser case, the defendant would not receive jail credit on the lesser case. Defs.' Opp. Mem. at 11 n.4. The same rationale would apply if the defendant were required to be held for some other reason, such as an immigration detainer.

Gaylor alleged that jail officials deliberately lied to the plaintiff and his friends about his bail status. 105 F.3d at 573-74. Although the jail officials knew that Gaylor's bail had been set, when asked, they told Gaylor and his roommates that bail would not be set for Gaylor until Gaylor saw a magistrate judge. Gaylor only found out about his bail status when he appeared before a magistrate judge five days later. Because the jail officials lied to Gaylor, Gaylor remained in jail for five days without knowing that he could have posted bail. Id. at 574. It was under these circumstances that Gaylor claimed that the City and County and the jail officials violated his due process rights by holding him incommunicado for five days. Id. at 574.

The facts of Gaylor are plainly distinguishable from this case. In Gaylor, the defendants affirmatively lied about the plaintiff's bail status. Gaylor repeatedly asked to see a judge for a bail hearing, but he was not taken to see a judge for five days. Id. at 573-74. There is no indication in the Gaylor opinion that Gaylor was represented by counsel who was independently aware of his bail status. In this case, there is no allegation that the defendants lied to the plaintiff about his bail status or otherwise took actions to prevent him from posting bail, and the plaintiff was represented by an attorney who was aware of his bail status. Indeed, the plaintiff alleges in this case that the correction officials refused to respond to

his inquiries. When a detainee is represented by a lawyer, it is reasonable that the detainee should obtain information about the detainee's case from the detainee's lawyer and not from conversations with correction officials. Although the Court of Appeals found that the conduct alleged in Gaylor could amount to a violation of due process, id. at 577-78, the circumstances in Gaylor are not present in this case.

**3.**

In any event, the plaintiff points to no authority in this Circuit that would support his substantive due process claims. Because of the lack of precedent on this issue, the individual defendants are entitled to qualified immunity.

Qualified immunity generally protects government officials when performing discretionary functions "from liability for civil damages" if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Plumhoff v. Rickard, 572 U.S. 765, 778-79 (2014); Ashcroft v. Iqbal, 556 U.S. 662, 672 (2009); Malley v. Briggs, 475 U.S. 335, 341 (1986) ("As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law."); Heard v. City of N.Y., 319 F. Supp. 3d 687, 696 (S.D.N.Y. 2018).

A right is clearly established when "existing precedent place[s] the conclusion that [the defendant] acted unreasonably in the[] circumstances beyond debate." <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 309 (2015) (per curiam) (internal quotation marks omitted). "[T]he salient question . . . is whether the state of the law" at the time of the defendants' conduct "gave [the defendants] fair warning that [their] alleged treatment of [the plaintiff] was unconstitutional." <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002). If the state of the law at the time of the defendants' conduct did not give fair warning that such conduct was unlawful, then the defendant is entitled to qualified immunity.

Out-of-circuit cases are not relevant to the qualified immunity inquiry. <u>Moore v. Vega</u>, 371 F.3d 110, 114 (2d Cir. 2004) ("Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." (citation omitted)); see <u>Disito v. Cook</u>, 691 F.3d 226, 247 (2d Cir. 2012); <u>Okin v. Village of Cornwall-on-Hudson Police Dept.</u>, 577 F.3d 415, 433 (2d Cir. 2009). There are no cases from the Supreme Court or the Second Circuit Court of Appeals that clearly establish that pretrial detainees have a right to be informed by jail officials of their bail status. Accordingly, the individual defendants are entitled to qualified immunity because there was no clear

precedent that they were constitutionally required to inform the plaintiff of his bail status.

In the absence of clearly established law, the defendants lacked notice that their conduct could lead to civil liability. Indeed, it would have been reasonable for the defendants to assume that the plaintiff's attorney would communicate with the plaintiff about his bail status. It was the plaintiff's attorney who requested that the plaintiff's bail be set in one of the cases at $1.00, and it was the plaintiff's attorney who waived the plaintiff's appearances in court. The plaintiff has provided no explanation why the responsibility to inform him of his bail status would lie with the defendants rather than with his defense attorney, who was aware of the plaintiff's bail status and knew that the plaintiff had not been in court when the bail amount was set.[8]

### B.

The plaintiff also seeks to hold the City of New York liable under Monell. The plaintiff alleges that the City inadequately trained the individual defendants (1) to process court orders and (2) to inform pretrial detainees of their bail status.

---

[8] The plaintiff's counsel represented at the argument of the current motion that the plaintiff has sued his criminal defense attorney and that lawsuit is currently pending in state court.

To bring a claim against a municipality under § 1983, the plaintiff must allege that the challenged conduct was "performed pursuant to a municipal policy or custom." Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 226 (2d Cir. 2004); Sorlucco v. N.Y.C. Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992); see generally Monell, 436 U.S. at 669. To identify a "policy or custom," the plaintiff must demonstrate that the municipality, through its deliberate conduct, was the "moving force" behind the injuries alleged. Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997). The alleged policy does not need to be contained in an explicitly adopted rule so long as the unlawful practices of city officials are so "persistent and widespread . . . as to constitute a custom or usage with the force of law." Sorlucco, 971 F.2d at 870 (quotation marks omitted); see Connick v. Thompson, 563 U.S. 51, 61 (2011) (stating that the acts of city officials must be "so persistent and widespread as to practically have the force of law"); see also Viruet v. City of New York, No. 16cv8327, 2019 WL 1979325, at *8 (S.D.N.Y. May 3, 2019).

The plaintiff can satisfy the "policy or custom" requirement by alleging

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies that caused the particular

deprivation in question; (3) a practice so
consistent and widespread that, although not
expressly authorized, constitutes a custom or
usage of which a supervising policy-maker must
have been aware; or (4) a failure by
policymakers to provide adequate training or
supervision to subordinates to such an extent
that it amounts to deliberate indifference to
the rights of those who come into contact with
the municipal employees.

Tieman v. City of Newburgh, No. 13cv4178, 2015 WL 1379652, at

*13 (S.D.N.Y. Mar. 26, 2015) (quotation marks omitted).

### 1.

Initially, the plaintiff bases his Monell claim on the

City's alleged failure to train its employees to process court

orders. The plaintiff claims that he was not released from

detention on November 28, 2014, when Judge Crane ordered that he

be released on his own recognizance on the 8543 case. However,

as explained above, the plaintiff remained detained on the 8542

case, not the 8543 case, and Judge Crane did not order the

plaintiff's release on the 8542 case. Thus, the plaintiff was

not detained because of a failure to process Judge Crane's

order. There was no failure to process court orders.

Accordingly, the plaintiff's Monell claim based on the alleged

failure to train employees to process court orders is **dismissed.**

See Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir.

1985) (explaining that for a Monell claim to survive there must

be a causal connection between the policy and the deprivation of constitutional rights).

**2.**

The plaintiff also claims that the City failed to train its employees to inform pretrial detainees about their bail status.[9] "A failure to act, train, or supervise can constitute a municipal custom 'only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need.'" Tieman, 2015 WL 1379652, at *18 (quoting Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007)). To demonstrate deliberate indifference for purposes of a failure to train claim, the plaintiff must show a "pattern of similar constitutional violations by untrained employees." Connick, 563 U.S. at 62. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Id.

---

[9] The plaintiff supports this allegation with a report from a January 2015 investigation by the City of New York Department of Investigation Commissioner Mark G. Peters, which found that the DOC's hiring practices have a number of deficiencies that result in the hiring of unqualified officers. For example, the report found that a number of DOC officers had multiple prior arrests. SAC ¶ 234. This report, however, has no relation to the alleged policy that the DOC employees need not inform pretrial detainees of their bail status.

The plaintiff's allegations do not show that the City's alleged policy -- that its employees need not inform pretrial detainees of their bail status -- was inadequate or likely to result in a deprivation of federal rights. Because there was no constitutional right to have corrections officials inform pretrial detainees of their bail status, there can be no Monell claim for a failure to train to implement such a practice. Moreover, it would have been reasonable for the defendants to expect that the plaintiff's defense lawyer would communicate with the plaintiff regarding his bail status. The fact that the defendants did not also communicate with the plaintiff regarding his bail status does not plausibly support the conclusion that the defendants were deliberately indifferent to the plaintiff's constitutional rights. Indeed, the plaintiff has not alleged any other instances where a detainee was held without knowledge that the detainee's bail was set to $1.00, nor are there any other cases in this Circuit raising such allegations. Therefore, the plaintiff's Monell claim is **dismissed.**

## C.

The plaintiff also argues that the defendants' failure to inform him of the reduction in his bail violated his procedural due process rights. The plaintiff alleges that the defendants "intentionally prevented [him] from being released from custody for five months." SAC ¶ 257.

The defendants argue that the challenged conduct was "random and unauthorized" because courts routinely hold that a correctional official's conduct of holding a detainee beyond his legally mandated release date is random and unauthorized for purposes of procedural due process. However, the issue is not whether the defendants held the plaintiff beyond a legally mandated release date. They did not. The allegations in the SAC demonstrate that the plaintiff was detained because he had not posted the bail that was required by court orders. The issue is whether the defendants' failure to inform the plaintiff of his bail status violated due process. The plaintiff argues that this failure was not "random and unauthorized" but rather was based on a failure to train, and accordingly could have been anticipated and prevented.

While the plaintiff's arguments are not wholly clear, to the extent he argues that he was denied procedural due process because he was held in violation of court orders to release him, and this violated DOC procedures enacted to assure compliance with court orders, this argument fails because DOC officials did not fail to comply with any court orders to release the plaintiff. At all times he was subject to a court order requiring him to post bail which he failed to do until the day the bail was paid and he was released. Moreover, the officials' alleged conduct, by the plaintiff's own allegations, would be

contrary to DOC policies, and therefore unauthorized and random acts which do not constitute a violation of due process.

To the extent that the plaintiff is arguing that there is a procedural due process requirement to have DOC officials inform him of his bail status, the plaintiff points to no basis for creating such a right. The adequacy of procedures to afford due process are generally analyzed under the three-part framework set forth in Mathews v. Eldrige, 424 U.S. 319 (1976). Under Mathews v. Eldrige, courts consider

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 335.

In this case, the plaintiff was afforded adequate due process. He was given a hearing before a judge where his bail was set and where he was represented by counsel as required by New York Criminal Procedure Law §§ 510-30. His bail was set in two separate cases and modified over time. At each proceeding he was represented by counsel. It was his defense attorney who waived the plaintiff's presence at various hearings. On one occasion, the plaintiff's defense counsel affirmatively asked

that bail of $1.00 be set on the 8543 case. There is no showing that the procedures provided for in the criminal court process are insufficient to set reasonable bail amounts. While the plaintiff has a liberty interest, and an interest in accurate information about his bail conditions, the plaintiff has failed to allege plausibly that these interests should be protected by placing the burden on DOC officers in addition to his own lawyer. Detainees have a right to expect DOC official to carry out court orders. The DOC officials did so in this case. But detainees should rely for advice about their legal status on their lawyers rather than DOC officials.

Moreover, for the same reasons that the defendants are entitled to qualified immunity on the plaintiff's substantive due process claim, they are entitled to qualified immunity on the plaintiff's procedural due process claim. The plaintiff can point to no law clearly establishing a right of a pretrial detainee to be informed by correction officials of the detainee's bail status.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. The defendants' motion to dismiss is **granted.** The Clerk is directed to enter judgment

dismissing this case **with prejudice**. The Clerk is also directed to close this case and to close all pending motions.

**SO ORDERED.**

Dated:     New York, New York
           September 5, 2019            _____/s/_____
                                              John G. Koeltl
                                        **United States District Judge**